MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail:  rplatt@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
E-mail:  dbrown@manatt.com
ALEXANDRA N. HILL (Bar No. CA 313249)
E-mail:  ahill@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER A. RHEINHEIMER
(Bar No. CA 253890)
E-mail:  crheinheimer@manatt.com
One Embarcadero Center, 30th Fl.
San Francisco, CA 94111
Telephone:  (415) 291-7400
Facsimile:  (415) 291-7474

Attorneys for *Defendants*
TINDER, INC., MATCH GROUP, LLC,
and MATCH GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA KIM, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them, <br><br> Defendants. | Case No. CV 18-03093 JFW (AS) <br><br> Hon. John F. Walter <br><br> **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR STAY UNDER *COLORADO RIVER* ABSTENTION;** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Filed concurrently with <br> 1.  Declaration of Jonathan Badeen; <br> 2.  Declaration of Donald R. Brown; <br> 3.  Request for Judicial Notice; <br> 4.  [Proposed] Order] <br><br> Hearing Date:    July 16, 2018 <br> Hearing Time:    1:30 p.m. <br> Courtroom:        7A |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2

MOTION TO COMPEL ARBITRATION OR
STAY ACTION

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 16, 2018, at 1:30 p.m. in Courtroom 7A, at 350 West First Street, Los Angeles, CA 90012, defendants Tinder, Inc., Match Group, LLC, and Match Group, Inc. will and hereby do move this Court for an order dismissing or staying this putative class action lawsuit. *First*, Defendants move under the Federal Arbitration Act, 9 U.S.C. § 3, to compel plaintiff Lisa Kim to pursue her claim, if at all, in arbitration and on an individual basis only, on the grounds that the claim is subject to a mandatory arbitration agreement and class waiver in the Terms of Use for the mobile app at issue in this case. *Second*, Defendants move, in the alternative, for a stay under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), based on a previously filed state court action, *Candelore v. Tinder, Inc.*, Superior Court of California, County of Los Angeles, Case No. BC583162, that involves the same claim on behalf of the same putative class.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Declarations of Jonathan Badeen and Donald R. Brown, the concurrently-filed Request for Judicial Notice, all papers on file with the Court, and all evidence and argument presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 on June 1, 2018.

Dated:    June 11, 2018                      MANATT, PHELPS & PHILLIPS, LLP


By:/s/ Robert H. Platt
    Robert H. Platt
    Attorneys for *Defendants*
    TINDER, INC., MATCH GROUP,
    LLC, and MATCH GROUP, INC.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   PLAINTIFF MUST ARBITRATE HER CLAIM .................................... 2

    A.    Legal Standard .................................................................................. 2

    B.    The Tinder App .................................................................................. 2

    C.    Tinder's TOU Includes a Valid Arbitration Agreement ...................... 3

    D.    Plaintiff Assented to the TOU ............................................................ 4

    E.    Plaintiff's Assent to the TOU Is Enforceable ..................................... 6

    F.    The Court Need Not Determine Arbitrability ...................................... 7

    G.    Nonetheless, This Case Is Subject to the Arbitration Agreement ........ 8

    H.    The Court Should Dismiss or Stay This Lawsuit ............................... 10

III.  ALTERNATIVELY, THIS ACTION SHOULD BE STAYED ON
    ABSTENTION GROUNDS .................................................................. 10

    A.    The *Candelore* Action ...................................................................... 10

    B.    The Court May Defer to Parallel State Proceedings under the
        *Colorado River* Doctrine ................................................................. 11

        1.    The Desire to Avoid Piecemeal Litigation ............................... 12

        2.    The Order in Which the Forums Obtained Jurisdiction ........... 13

        3.    Whether Federal or State Law Governs the Claim .................... 13

        4.    Whether the State Court Proceedings Can Adequately
            Protect the Rights of the Federal Litigants ............................... 13

        5.    The Desire to Avoid Forum Shopping ..................................... 13

        6.    Whether the State Court Proceedings Will Resolve All
            Issues Before the Federal Court .............................................. 14

IV.   CONCLUSION ..................................................................................... 14

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

MOTION TO COMPEL ARBITRATION OR
STAY ACTION

# TABLE OF AUTHORITIES

Page

## CASES

*American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*,
   843 F.2d 1253 (9th Cir. 1988) ............................................................................. 12

*Arriaga v. Cross Country Bank*,
   163 F. Supp. 2d 1189 (S.D. Cal. 2001) ................................................................. 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................. 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ............................................................................................. 8

*Bassett v. Elec. Arts, Inc.*,
   93 F. Supp. 3d 95 (E.D.N.Y. 2015) ...................................................................... 7

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) .......................................................................... 2, 8

*Candelore v. Tinder, Inc.*,
   Case No. BC583162 ................................................................................... passim

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .............................................................................. 2

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ................................................................................... passim

*Cordas v. Uber Techs, Inc.*,
   228 F. Supp. 3d 985 (N.D. Cal. 2017) .................................................................. 8

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................. 2

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) ............................................................... 10, 13, 14

*Epic Sys. Corp. v. Lewis*,
   No. 16-285, __ U.S. __, 2018 WL 2292444 (May 21, 2018) ............................ 10

*Friedman v. Guthy-Renker LLC*,
   2015 WL 857800 (C.D. Cal. Feb. 27, 2015) ...................................................... 14

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) .................................................................. 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2                          ii                    MOTION TO COMPEL ARBITRATION OR
                                                                          STAY ACTION

TABLE OF AUTHORITIES
(continued)

Page

*Graf v. Match.com, LLC,*
    2015 WL 4263957 (C.D. Cal. July 10, 2015) ........................................................ 6

*Guadagno v. E\*Trade Bank,*
    592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................................. 7

*Hines v. Overstock.com, Inc.,*
    668 F. Supp. 2d 362 (E.D.N.Y. 2009) ............................................................. 6

*Hubbert v. Dell Corp.,*
    359 Ill. App. 3d 976 (2005) ............................................................................ 6

*In re Verisign, Inc., Derivative Litig.,*
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........................................................... 9

*Jones v. Deja Vu, Inc.,*
    419 F. Supp. 2d 1146 (N.D. Cal. 2005) ........................................................... 9

*Major v. McCallister,*
    302 S.W.3d 227 (Mo. Ct. App. 2009) ............................................................. 7

*Montanore Minerals Corp. v. Bakie,*
    867 F.3d 1160 (9th Cir. 2017) .................................................... 11, 12, 13, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ......................................................................................... 11

*Nakash v. Marciano,*
    882 F.2d 1411 (9th Cir. 1989) ................................................................. 11, 14

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ..................................................................... 6, 7

*R.R. Street & Co. v. Transport Ins. Co.,*
    656 F.3d 966 (9th Cir. 2011) ....................................................................... 12

*Rice v. Downs,*
    247 Cal. App. 4th 1213 (2016) ...................................................................... 8

*ScripsAmerica, Inc. v. Ironridge Global LLC,*
    56 F. Supp. 3d 1121 (C.D. Cal. 2014) ........................................................... 11

*Selden v. Airbnb, Inc.,*
    2016 WL 6476934 (D.D.C. Nov. 1, 2016) ...................................................... 8

*Seneca Ins. Co. v. Strange Land, Inc.,*
    862 F.3d 835 (9th Cir. 2017) ....................................................................... 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2

iii

MOTION TO COMPEL ARBITRATION OR
STAY ACTION

TABLE OF AUTHORITIES
(continued)

Page

*Southland Corp. v. Keating,*
    546 U.S. 1 (1984) ........................................................................... 7

*Ting v. AT&T,*
    319 F.3d 1126 (9th Cir. 2003) ....................................................... 9

*Torres v. Carescope, LLC,*
    2016 WL 2743479 (E.D. Cal. May 11, 2016) ........................ 10, 14

*Trujillo v. Gomez,*
    2015 WL 1757870 (S.D. Cal. Apr. 17, 2015) ................................ 9

*Van Tassell v. United Mktg. Grp., LLC,*
    795 F. Supp. 2d 770 (N.D. Ill. 2011) ............................................. 6

**STATUTES**

9 U.S.C. § 2 ..................................................................................... 2

9 U.S.C. § 3 ................................................................................... 10

9 U.S.C. § 4 ..................................................................................... 2

Unruh Civil Rights Act ................................................... 1, 8, 10, 13

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

320504290.2                                    iv                    MOTION TO COMPEL ARBITRATION OR
                                                                    STAY ACTION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Lisa Kim asserts a single claim under California's Unruh Civil Rights Act for age discrimination on the grounds that users of the Tinder dating app over the age of 30 are charged a higher price than the discounted price charged to younger users for access to premium features of the app.  Plaintiff, on behalf of a putative class, has sued Tinder, Inc., Match Group, LLC, and Match Group, Inc. (collectively, "Tinder").[1]

Tinder moves to compel arbitration because Plaintiff agreed to Tinder's Terms of Use ("TOU"), and the arbitration agreement that is part of the TOU requires arbitration of this dispute.  Plaintiff agreed to the TOU by tapping a "Log In" button on her phone next to a disclosure—which contained a hyperlink to the TOU—stating that tapping the button would constitute assent to the TOU.  That is all Tinder need demonstrate for purposes of this motion.  The secondary question of whether the claim itself is arbitrable need not be reached because the arbitration agreement delegates that question to the arbitrator.  In any event, the claim is, in fact, arbitrable because the arbitration agreement covers any claim regarding Tinder's services.

As an alternative to compelling arbitration, the Court may, and should, stay this action under the *Colorado River* abstention doctrine.  A parallel putative class action—*Candelore v. Tinder, Inc.*—has been pending in state court since 2015 and involves the same claim on behalf of the same putative class under the same theory of liability.  The *Colorado River* factors heavily favor abstention under these circumstances.

---

[1]     Match Group, LLC, which is owned by Match Group, Inc., now owns all of Tinder Inc.'s assets, including Tinder.  (Declaration of Jonathan Badeen, ¶ 3.) There is no need for purposes of this motion to distinguish among these three defendants.

## II.   PLAINTIFF MUST ARBITRATE HER CLAIM

### A.   Legal Standard

Tinder's arbitration agreement—addressed in detail below—provides that it is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). (Declaration of Jonathan Badeen ("Badeen Decl."), Ex. 1, ¶ 18, Ex. 2, ¶ 19.)  An FAA choice-of-law provision in an arbitration agreement is enforceable.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir. 2015).  Moreover, the FAA would govern here even without a choice-of-law provision because Tinder's TOU "evidenc[es] a transaction involving commerce." 9 U.S.C. § 2; *see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The FAA provides that any arbitration agreement within its scope 'shall be valid, irrevocable, and enforceable.'" *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. § 4).  On a motion to compel arbitration, a district court's role is limited to determining whether a valid agreement to arbitrate exists and—unless the question is contractually delegated to the arbitrator instead—determining whether the agreement encompasses the parties' dispute. *See id.*; *Brennan*, 796 F.3d at 1132 ("a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator").  The FAA "leaves no place for the exercise of discretion by the district court." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  Rather, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130.

As discussed below, Tinder's arbitration agreement is enforceable, and the agreement delegates the question of arbitrability to the arbitrator.

### B.   The Tinder App

Tinder is a free, smartphone-based dating app. (Badeen Decl., ¶¶ 2-3.)  The app displays profiles of other users and allows a user to swipe right on another user's profile to express interest or left to express disinterest. (*Id.*, ¶ 2.)  If two users express mutual interest, they can then communicate within the app. (*Id.*)  In

1   March 2015, Tinder released a suite of premium features called Tinder Plus that is

2   available for a monthly fee.  (*Id*.)

3         **C.**     **Tinder's TOU Includes a Valid Arbitration Agreement**

4         Tinder has always required a user to create an account before accessing any

5   feature of the app.  (Badeen Decl., ¶ 4.)  Permission to create an account and use

6   the app has, in turn, always been conditioned on the user's agreement to the TOU.

7   (*Id*.)  The TOU has always been available for review any time within the app.  (*Id*.)

8         Since 2014, the TOU has included an arbitration agreement that requires all

9   disputes (except small-claims matters) arising out of or relating to the TOU or

10  Tinder's services to be resolved through binding arbitration, and waives any right to

11  participate in a class or representative action:

12                  **Arbitration Agreement.**  The exclusive means of

13                  resolving any dispute or claim arising out of or relating to

14                  this Agreement (including any alleged breach thereof) or

15                  the   Service   shall   be   BINDING   ARBITRATION

16                  administered by the American Arbitration Association.

17                  The one exception to the exclusivity of arbitration is that

18                  you have the right to bring an individual claim against the

19                  Company   in   a   small-claims   court   of   competent

20                  jurisdiction.  But whether you choose arbitration or small-

21                  claims   court,   you   may   not   under   any   circumstances

22                  commence or maintain against the Company any class

23                  action, class arbitration, or other representative action or

24                  proceeding.

25  (Badeen Decl., ¶ 5 and Ex. 1, ¶ 18, Ex. 2, ¶ 19 (emphasis in original).)

26        The TOU also explains, in plain language, the implications of the arbitration

27  agreement and class waiver:

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

320504290.2

3

MOTION TO COMPEL ARBITRATION OR
STAY ACTION

1
2
3
4
5
6
7
8
9

> By using the Service in any manner, you agree to the above arbitration agreement.  In doing so, YOU GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend any claims between you and the Company (except for matters that may be taken to small-claims court).  YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION OR OTHER CLASS PROCEEDING.  Your rights will be determined by a NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY.

10 (*Id.* (emphasis in original).)

11     **D.**   **Plaintiff Assented to the TOU**

12     Plaintiff created a Tinder account on October 10, 2013.  (Badeen Decl., ¶ 7.)
13 On April 13, 2015, Plaintiff created a second account, which appears to be the
14 account at issue in this case.  (*Id.*)  On July 31, 2015, Tinder added a disclosure to
15 its login screen that informed users that by continuing to use the service, they were
16 agreeing to Tinder's TOU.  (*Id.*, ¶ 6.)  The screen, an image of which is displayed
17 below, stated that by tapping Log In, the user agrees to the TOU.  The disclosure
18 was directly above the Log In button and provided a clear hyperlink in the
19 disclosure to the then-current TOU.

20
21
22
23
24
25
26
27
28

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

320504290.2

4

MOTION TO COMPEL ARBITRATION OR
STAY ACTION



(*Id.*, ¶ 6 and Ex. 3.)  Thus, since July 31, 2015 and up until she filed her lawsuit on April 12, 2018, every time Plaintiff logged in to her Tinder account, her login constituted assent to the TOU, including the arbitration agreement.

On February 21, 2017, Plaintiff purchased a subscription to Tinder Plus. (*Id.*, ¶ 7.)  Two days later, Plaintiff tapped to log in to her account, and thereby agreed to the TOU.  (*Id.*)   Two weeks after that, on March 4, 2017, Plaintiff tapped the Log In button again and thus agreed again to the TOU.  (*Id.*)[2]  As discussed below, Plaintiff thereby assented to and is bound by the TOU.

---

[2]     The arbitration provisions, quoted *supra* at II.C, were identical at the time Plaintiff created her account in 2015 and logged in and agreed to the TOU in 2017. (Badeen Decl., Ex. 1, ¶ 18, Ex. 2, ¶ 19.)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

320504290.2                                5                    MOTION TO COMPEL ARBITRATION OR
                                                                                STAY ACTION

1       **E.**      <u>**Plaintiff's Assent to the TOU Is Enforceable**</u>

2           There are three generally recognized methods of obtaining consent to terms

3  of use: clickwrap, browsewrap, and a hybrid known as "browsewrap-that-

4  resembles-clickwrap" or "sign-up wrap." In a clickwrap agreement, "users are

5  required to click on an 'I agree' box after being presented with the list of terms and

6  conditions of use." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th

7  Cir. 2014). In a browsewrap agreement, by contrast, a user is "not require[d] [] to

8  manifest assent to the terms and conditions expressly . . . A party instead gives his

9  assent simply by using the website." *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d

10  362, 366-67 (E.D.N.Y. 2009).[3]

11           Tinder uses the hybrid method known as sign-up wrap. In a sign-up wrap

12  agreement, the consumer must click an "I agree" box or otherwise clearly manifest

13  consent to the terms of use, while the terms themselves are accessible via hyperlink.

14  *Nguyen*, 763 F.3d at 1176-77. Plaintiff manifested consent by tapping the Tinder

15  Log In button directly below a disclosure clearly explaining that doing so

16  constituted agreement to the TOU, which itself was accessible via a hyperlink in the

17  disclosure. (Badeen Decl., ¶ 6.)

18           This method of assent is fully enforceable. *See Nguyen*, 763 F.3d at 1177;

19  *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015)

20  (compelling arbitration where user registered for account by clicking "Continue"

21  button adjacent to hyperlink to terms of use that contained arbitration provision);

22  *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984 (2005) (compelling arbitration

23  based on arbitration provision in terms of use accessible via hyperlink on order

24  pages—applying Texas law); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841

25  _____

26  [3]      A browsewrap agreement is enforceable if the user "has actual or constructive knowledge of a website's terms and conditions." *Nguyen*, 763 F.3d at

27  1176 (quoting *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)).

28

(S.D.N.Y. 2012) (plaintiff bound by terms of use accessible via hyperlink above "Sign Up" button); *Major v. McCallister*, 302 S.W.3d 227, 231 (Mo. Ct. App. 2009) (plaintiff bound by terms of use accessible via hyperlink next to registration button); *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (compelling arbitration where registration page contained "a highlighted, underlined link to the [terms of use including an arbitration] Agreement . . . directly above the acknowledgment box"); *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (plaintiff bound by terms of use accessible via hyperlink when registering for online account—applying California law).[4]

The agreement at issue is not a browsewrap agreement; Plaintiff was not told she assented to the TOU simply by passively using the Tinder app. Instead, she affirmatively assented to the TOU by tapping the "Log In" button to continue using the app on a page clearly displaying the notice: "By tapping Log In, you agree to our Terms of Use and Privacy Policy."  Only by tapping "Log In" does the user assent.  Therefore, Plaintiff is bound by the TOU, including its arbitration and class-action waiver provisions.

## F.   The Court Need Not Determine Arbitrability

The arbitration agreement states that claims or disputes between the parties shall be determined in arbitration administered by the American Arbitration Association ("AAA").  (Badeen Decl., Ex. 1, ¶ 18, Ex. 2, ¶ 19.)  The agreement contains a hyperlink, labeled "Arbitration Procedures," to the AAA Consumer

---

[4]   The TOU contains a Texas choice-of-law provision. (Badeen Decl., Ex. 1, ¶ 18(d), Ex. 2 ¶ 19.)  That said, both Texas and California law, as well as federal law, support enforcement of the TOU's arbitration agreement.  The Court therefore need not undertake a choice-of-law analysis—an analysis that can be a circular exercise under these circumstances with no clear answer.  *See Nguyen*, 763 F.3d at 1175.  In any case, however, the class-action waiver is enforceable regardless of any conflicting state laws.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011); *Southland Corp. v. Keating*, 546 U.S. 1, 12 (1984).

1    Arbitration Rules that govern any such arbitration.  (*Id.*)  Those Rules state that the

2    question of arbitrability is for the arbitrator—and, thus, not for the court.  (*See*

3    Request for Judicial Notice ("RJN"), Ex. 1, R-14(a).)  A provision delegating the

4    question of arbitrability to the arbitrator is enforceable.  *Brennan*, 796 F.3d at 1130

5    ("[I]ncorporation of the AAA rules constitutes 'clear and unmistakable' evidence

6    that the parties intended to delegate the arbitrability question to an arbitrator[.]")

7    (quoting standard from *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S.

8    643, 649 (1986)); *see also Cordas v. Uber Techs, Inc.*, 228 F. Supp. 3d 985, 991-92

9    (N.D. Cal. 2017) (same).

10           Accordingly, the Court need not, and should not, determine whether this case

11   is within the scope of the parties' arbitration agreement, as that determination has

12   been delegated to the arbitrator instead.  But as discussed below, even if the

13   question of arbitrability were properly before the Court, it is clear that the

14   arbitration agreement encompasses the claim at issue in this case.

15       **G.    Nonetheless, This Case Is Subject to the Arbitration Agreement**

16           Plaintiff agreed to arbitrate "any dispute or claim arising out of or relating to

17   this Agreement (including any breach thereof) or the Service . . . . "  (Badeen Decl.,

18   ¶ 5 and Ex. 1 at ¶ 19.)  In this case, she claims that Tinder violated the Unruh Act

19   by charging her a higher fee for Tinder Plus based on her age.  (Compl., ¶ 28.)

20           Plaintiff's claim is subject to the arbitration agreement because it "arise[s]

21   out of or relate[s] to" the "Service."  The TOU defines "Service" broadly to include

22   almost any user interaction with Tinder.  (Exs. 1-2 at Recitals.)  Courts, in turn,

23   broadly interpret the phrase "arising out of or relating to."  *See Selden v. Airbnb,*

24   *Inc.*, 2016 WL 6476934, at *6 (D.D.C. Nov. 1, 2016) (compelling arbitration

25   pursuant to website's sign-in wrap agreement, noting that "[c]ourts applying

26   California law interpret the language 'arising out of or relating to' very broadly");

27   *see also Rice v. Downs*, 247 Cal. App. 4th 1213, 1224 (2016) ("To require

28   arbitration, the factual matters need only touch matters covered by the contract

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2                    8                    MOTION TO COMPEL ARBITRATION OR
                                                    STAY ACTION

1  containing the arbitration clause and all doubts are to be resolved in favor of

2  arbitrability.").

3         Furthermore, Plaintiff's claim is subject to the arbitration agreement even if

4  one assumes that she purchased her subscription to Tinder Plus two days before she

5  agreed to the TOU for the first time.[5]  Courts regularly apply broadly worded

6  arbitration agreements like this one to claims based on events that preceded the

7  plaintiff's assent to the agreement.  *See, e.g.*, *Arriaga v. Cross Country Bank,* 163

8  F. Supp. 2d 1189, 1192 (S.D. Cal. 2001), *disapproved on other grounds by Ting v.*

9  *AT&T*, 319 F.3d 1126 (9th Cir. 2003) (compelling arbitration and holding that

10  "[t]he fact that some of Arriaga's claims may stem from events that occurred before

11  the arbitration clause took effect does not foreclose the possibility that those claims

12  *relate to* the Agreement, and thus fall under the arbitration clause's broad scope"

13  (emphasis in original)); *Jones v. Deja Vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D.

14  Cal. 2005) ("Where an arbitration provision does not contain a temporal limitation,

15  the parties may be compelled to arbitrate despite the fact that the challenged

16  conduct predates the signing of the agreement."); *In re Verisign, Inc., Derivative*

17  *Litig.*, 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (enforcing application of

18  arbitration agreement to services performed during prior years); *Trujillo v. Gomez,*

19  2015 WL 1757870, at *8 (S.D. Cal. Apr. 17, 2015) ("Without citing any authority,

20  Plaintiffs argue that the current dispute does not fall within the scope of the

21  arbitration clause because the underlying events took place before the Shareholder

22  Agreement was executed.  Plaintiffs are incorrect.").

23

24

25

---

26  [5]     Plaintiff doubtlessly logged in to her Tinder account on many occasions
during the period from July 31, 2015 to her purchase of a Tinder Plus subscription

27  on February 21, 2017, regardless of whether such logins were captured in Tinder's

28  database.  (*See* Badeen Decl., ¶ 8.)

### H.    The Court Should Dismiss or Stay This Lawsuit

The FAA permits a court to stay a lawsuit in deference to an arbitration agreement "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement." 9 U.S.C. § 3.  "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, No. 16-285, __ U.S. __, 2018 WL 2292444, at *3 (May 21, 2018).  Because Tinder's arbitration agreement is binding and enforceable, this action should be stayed or dismissed in favor of arbitration.

## III.    ALTERNATIVELY, THIS ACTION SHOULD BE STAYED ON ABSTENTION GROUNDS

In the event the Court does not compel arbitration, it should instead stay this case (*Kim*) pursuant to the *Colorado River* abstention doctrine, pending resolution of a pre-existing, and parallel, case in state court (*Candelore*).

### A.    The *Candelore* Action

In May 2015, another Tinder user, Allan Candelore, filed a purported class action against Tinder, Inc. in California state court.[6]  (*See* RJN, Ex. 2 [Complaint in *Candelore v. Tinder, Inc.*, Superior Court of California, County of Los Angeles, Case No. BC583162].)[7]  Like Plaintiff, Candelore claims that Tinder violated the Unruh Act by charging a higher fee to users over 30 for Tinder Plus.  (*Id.*, ¶¶ 1-2.)  And as in *Kim*, the putative class in *Candelore* consists of California consumers who subscribed to Tinder Plus at the higher fee for older users.  (*Id.*, ¶ 23.)

---

[6]    *Candelore* was filed before Tinder, Inc. merged into Match Group, LLC and therefore does not name the Match Group companies as defendants.

[7]    The records of the Superior Court are subject to judicial notice.  *See, e.g., Torres v. Carescope, LLC*, 2016 WL 2743479, *1 n.1 (E.D. Cal. May 11, 2016) (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988)).

**B.     The Court May Defer to Parallel State Proceedings under the *Colorado River* Doctrine**

In certain circumstances, "a federal court may decline to exercise its 'virtually unflagging obligation' to exercise federal jurisdiction, in deference to pending, parallel state proceedings." *Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1165 (9th Cir. 2017) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).   Granting a stay under the *Colorado River* doctrine "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817 (internal quotations marks omitted). The doctrine "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

The threshold issue for invoking *Colorado River* abstention is whether there is a parallel proceeding in state court. *E.g., ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1147 (C.D. Cal. 2014).   "[E]xact parallelism [between the two suits] . . . is not required.   It is enough if the two proceedings are 'substantially similar.'" *Id.* (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). *Candelore* is parallel, indeed virtually identical, to *Kim* because it involves the same purported class and the same alleged age discrimination claim under the same state statute. (*See* RJN, Ex. 2, ¶¶ 1-2, 23.)

Where, as here, there is a parallel state court proceeding, the Ninth Circuit applies an eight-factor balancing test to determine whether *Colorado River* abstention applies:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the

order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Montanore*, 867 F.3d at 1166 (quoting *R.R. Street & Co. v. Transport Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011)).

The first two factors are inapplicable here and need not be considered.[8]  *See Montanore*, 867 F.3d at 1166 ("Some factors may not apply in some cases . . . ."). The remaining factors, however, demonstrate that a stay is warranted.

### 1.   The Desire to Avoid Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).  In order to favor a stay, "the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding [and which] the court could [not] have avoided by other means." *R.R. Street*, 656 F.3d at 979 (internal quotation marks and citation omitted).

Here, both courts would need to review the same facts and determine the same issues in order to resolve their respective cases.  Staying *Kim* until *Candelore* is resolved would therefore avoid duplicative and potentially divergent determinations on identical issues in parallel proceedings.  This factor strongly favors a stay.

---

[8]   The first factor is irrelevant because there is no specific property at issue. The second factor is irrelevant because both the federal and state forums are located in Los Angeles. *See R.R. Street*, 656 F.3d at 979.

### 2.  The Order in Which the Forums Obtained Jurisdiction

Next, the court "consider[s] not only the order [in which the forums gained jurisdiction], but also the relative progress of the state and federal proceedings." *Montanore*, 867 F.3d at 1168.  *Candelore* has been pending for three years and has undergone significant motion and appellate practice.  (RJN, Ex. 3.)  On the other hand, due to the appellate proceedings, there has been no discovery.  On balance, this factor weighs in favor of a stay, but not heavily in favor, due to the much longer pendency of *Candelore*.

### 3.  Whether Federal or State Law Governs the Claim

This factor favors a stay where there are state-law questions and "the state law questions are themselves complex and difficult issues better resolved by a state court . . . ."  *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 844 (9th Cir. 2017).  Both cases concern whether Tinder's age-based pricing violates the Unruh Act and what standard applies for making that determination.  These issues depend entirely on the application of a California statute that has received conflicting judicial interpretations, and thus this factor weighs heavily in favor of a stay.

### 4.  Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants

"When it is clear that the state court has authority to address the rights and remedies at issue, this factor may weigh in favor of a stay."  *Montanore*, 867 F.3d at 1169.  The state court in *Candelore* clearly has authority to fully address the Unruh Act claim, and therefore this factor weighs heavily in favor of a stay.

### 5.  The Desire to Avoid Forum Shopping

Next, the Court considers whether a plaintiff has engaged in forum shopping. The fact that this case was filed in this Court even though a substantially identical case was already pending in state court—a case in which the named plaintiff here already is a member of the putative class—suggests that the filing of this case is the result of forum shopping.  *See Ross*, 542 F. Supp. 2d at 1022 ("This Court will not

1   encourage forum shopping by allowing a substantially similar federal action to
2   proceed."). Although there may be no reason to "assume an insidious motive," this
3   factor nonetheless militates in favor of a stay. *See Torres*, 2016 WL 2743479, at
4   *4.

5   6. **Whether the State Court Proceedings Will Resolve All Issues Before the Federal Court**

7   The final factor in the *Colorado River* analysis is "whether the state court
8   proceeding sufficiently parallels the federal proceeding in order to ensure
9   comprehensive disposition of litigation." *Montanore*, 867 F.3d at 1170 (internal
10  quotation marks omitted). This factor is satisfied so long as "the proceedings are
11  'substantially similar'"—"exact parallelism" is not necessary. *Id.* (quoting *Nakash*,
12  882 F.2d at 1416). The Ninth Circuit has held that suits were "sufficiently parallel
13  because they concerned the same relevant conduct and named the same pertinent
14  parties." *Id.* (citing *Nakash*, 882 F.2d at 1416-17).

15  Although exact parallelism is not required, it exists here nonetheless. Both
16  cases assert the same state statutory claim for age discrimination on behalf of the
17  same putative class. (*Compare* Compl., ¶ 32 *with* RJN, Ex. 2, ¶ 28.) The only
18  difference between the two cases is the named plaintiff, but that is a distinction
19  without a difference—Plaintiff here would be a member of the *Candelore* class and
20  vice versa (subject to any obligation to arbitrate the dispute instead). *See Ross*, 542
21  F. Supp. 2d at 1022 (federal class action sufficiently parallel to state-court class
22  action with same class but different named plaintiffs). Resolution of *Candelore*
23  would comprehensively dispose of this case.

24  **IV.  CONCLUSION**

25  Defendants respectfully request that the Court dismiss or, in the alternative,
26  stay this action (*see Friedman v. Guthy-Renker LLC,* 2015 WL 857800, at *3 (C.D.
27  Cal. Feb. 27, 2015)), and order that Plaintiff pursue her claims, if at all, in

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2                    14         MOTION TO COMPEL ARBITRATION OR
                                                     STAY ACTION

arbitration and on an individual basis only.  In the alternative, Defendants request that the Court stay this action pursuant to its discretion under *Colorado River*.


Dated:    June 11, 2018                    MANATT, PHELPS & PHILLIPS, LLP


                                           By:/s/ Robert H. Platt
                                              Robert H. Platt
                                              Attorneys for *Defendants*
                                              TINDER, INC., MATCH GROUP,
                                              LLC, and MATCH GROUP, INC.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

320504290.2                          15                MOTION TO COMPEL ARBITRATION OR
                                                                STAY ACTION