1  John P. Kristensen (SBN 224132)
   David L. Weisberg (SBN 211675)
2  Christina M. Le (SBN 237697)
3  **KRISTENSEN WEISBERG, LLP**
   12450 Beatrice St., Suite 200
4  Los Angeles, California 90066
5  Telephone:  310-507-7924
   Fax:  310-507-7906
6  john@kristensenlaw.com
7  david@kristensenlaw.com
   christina@kristensenlaw.com
8
9  Todd M. Friedman (SBN 216752)
   Adrian R. Bacon (SBN 280332)
10 **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
   21550 Oxnard Street, Suite 780
11 Woodland Hills, CA 91367
12 Telephone: (216) 220-6496
   Facsimile: (866) 633-0028
13 tfriedman@attorneysforconsumers.com
14 abacon@attorneysforconsumers.com

15 **Attorneys for Plaintiff and all others
   similarly situated**
16

17          THE UNITED STATES DISTRICT COURT
         CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
18
   LISA KIM, individually on behalf of      ) Case No.: 2-18-cv-03093
19 herself and all others similarly         )
   situated,                                )
20                                          ) **CLASS ACTION**
                                            )
21         Plaintiff,                       ) **FIRST AMENDED COMPLAINT
                                            ) FOR VIOLATIONS OF:**
22   vs.                                    )
                                            )
23                                          )
   TINDER, INC., a Delaware                 ) **(1) Unruh Civil Rights Act, Cal.
24 corporation; MATCH GROUP, LLC,           )     *Civ. Code* §§ 51, *et seq*.; and
   a Delaware limited liability company;    ) **(2) Unfair Competition Law, Cal.
25 MATCH GROUP, INC., a Delaware            )     *Bus. & Prof. Code* §§ 17200, *et
26 corporation; and DOES 1 through 10,      )     seq.*
   inclusive, and each of them,             )
27                                          )
                                            ) **DEMAND FOR JURY TRIAL**
28         Defendants.                      )

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
-1-

# INTRODUCTION

1. LISA KIM ("Plaintiff"), by Plaintiff's attorneys, brings this Class Action Complaint, for herself and others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the illegal actions of defendants TINDER, INC. (hereinafter "Defendant"[1] or "Tinder"), MATCH GROUP, LLC and MATCH GROUP, INC. (both Match entities shall be referred to collectively as ""Match"), and DOES 1 through 10 (collectively "Defendants"), with regard to Tinder's misleading and illegal business practices, specifically the age discrimination in its pricing plans in violation of the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51, *et seq.*, that caused Plaintiff and other consumers damages.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a Plaintiff, or to a Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

4. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violation.

5. Unless otherwise indicated, the use of any Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendants' name.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of the State of California, seeks relief on behalf of a Nationwide class,

---

[1] Only Tinder is referenced as Defendant when used in this Complaint. The other defendants are mentioned by name, or all defendants are referenced collectively as "Defendants".

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
-2-

which will result in at least one class member belonging to a different state than that of Defendants.  In addition, the matter in controversy exceeds $5,000,000 exclusive of interest and costs.  Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii)) Defendants conducted business within this judicial district at all times relevant.

8. Because Defendants conducted business within the State of California at all time relevant, personal jurisdiction is established.

## PARTIES

9. Plaintiff is an individual who resides in the County of Los Angeles, State of California and a "person" as defined by Cal. *Bus. & Prof. Code* § 17201. Plaintiff is a member of the putative class defined herein.

10. Plaintiff is informed and believes, and thereon alleges, that Defendant Tinder, Inc. is a corporation incorporated under the laws of Delaware, with its principal place of business in Dallas, Texas.  From October 12, 2015 to the August 7, 2017, Tinder had the right and authority to transact intrastate business in the State of California, with the Tinder's principal place of business located in West Hollywood, California, during this time frame.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant Match Group, LLC is a limited liability company formed under the laws of Delaware, with its principal place of business in Dallas, Texas.  Plaintiff is further informed and believes that this Match entity operates, owns, and/or is doing business as Tinder, which is one of its subsidiaries.  Upon information and belief, Match Group, LLC is commonly owned and controlled with Match Group, Inc.

///

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
-3-

12. Plaintiff is informed and believes, and thereon alleges, that Defendant Match Group, Inc. is a corporation incorporated under the laws of Delaware, with its principal place of business in Dallas, Texas. Plaintiff is further informed and believes that this Match entity operates, owns, and/or is doing business as Tinder, which is one of its subsidiaries. Upon information and belief, Match Group, Inc. is commonly owned and controlled with Match Group, LLC.

13. The above named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

14. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, each and every defendant was acting as an agent and/or employee of each of the other Defendants, and was the owner, agent, servant, joint venturer and employee, each of the other and each was acting within the course and scope of its ownership, agency, service, joint venture and employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes, and thereon alleges, that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

15. At all times mentioned herein, each and every defendant was the successor of the other and each assumes the responsibility for each other's acts and omissions.

/ / /

/ / /

/ / /

## FACTUAL ALLEGATIONS

### *General Background*

16. In or around early 2015, Plaintiff downloaded an application ("app") called Tinder from Defendant onto her iPhone mobile device. Tinder is an online version of a nightclub where single people meet. Tinder markets itself as a dating application for mobile phones[2].

17. Tinder utilizes a user's location using the GPS built into their phone, then uses their Facebook information to create a profile. A Tinder profile is made up of a user's first name, age, photos and any pages they have 'liked' on Facebook.

18. Tinder then finds a user potential matches within a nearby geographical radius, and suggests potential matches, which a user has the option to like or pass.

19. Tinder's primary draw for consumers is a feature known as a "swipe," which is the act of swiping one's finger on their smart phone's touch screen within the Tinder app either right or left, in order to approve or pass, respectively, on a suggested potential match. If both users "swipe right" and "like" one another, Tinder will create a direct line of communication between the individuals, and allow them to start messaging one another.

20. In downloading the Tinder app in early 2015, Plaintiff was informed, by various advertisements, promotions, and websites that Defendant's app was a "free online dating app."

/ / /

/ / /

/ / /

/ / /

---

[2] See Tinder's website at www.tinder.com.

A true and correct copy of the screenshot from Defendant's ads on Xyo and the Google App Store from 2015 is shown as follows[3]:





*Unlawful Price Discrimination Based on Age*

21. On information and belief, in early March of 2015, Tinder introduced its Tinder Plus services, a Tinder account that provided supplemental services to the basic Tinder account, such as "change your location", "hide distance," "rewind

---

[3] https://play.google.com/store/apps/details?id=com.tinder&hl=en.

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
-6-

your last swipe," no paid advertisements, a limited number of "super swipes" per day, the ability to hide your age, and control over who you see.

22. Tinder announced publically at that time to NPR that it would be charging $9.99 to consumers for these services (at a 50% discount), but notably, that any individual who was over 30 years of age would be charged $19.99 for the identical services.[4]

23. In early 2016, Plaintiff, who at the time was over the age of 30, purchased subscription to the Tinder Plus app, for $19.99, to take advantage of the supplemental services provided.

24. Plaintiff purchased Tinder Plus account for $19.99, and was not offered a discount by Tinder, due to her being over 30 years of age.

25. Tinder continues to make such discounts available to customers on the sole basis of their age.

26. In a statement to NPR, Tinder defended the move, asserting that testing proved the viability of the tiered pricing:

> "Over the past few months, we've tested Tinder Plus extensively in several countries," said Tinder spokeswoman Rosette Pambakian. "We've priced Tinder Plus based on a combination of factors, including what we've learned through our testing, and we've found that these price points were adopted very well by certain age demographics. Lots of products offer differentiated price tiers by age, like Spotify does for students, for example. Tinder is no different; during our testing we've learned, not surprisingly, that younger users are just as excited about Tinder Plus but are more budget constrained and need a lower price to pull the trigger."

27. Defendant offers no discounts for its Tinder Plus services, than that offered to consumers based solely upon their age.

---

[4] See http://www.npr.org/blogs/alltechconsidered/2015/03/02/390236051/tinders-premium-dating-app-will-cost-you-more-if-youre-older.

28. Plaintiff alleges on information and belief that when she purchased Tinder Plus in early 2016, Tinder discriminated against her because of age because she could have obtained a better rate if she were under 30 years of age, or represented to Tinder that she was less than 30 years of age. Plaintiff is not under 30 years of age, and was not made aware of any potential discounts at the time of her purchase of Tinder Plus.

29. The objective of the Unruh Civil Rights Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination. The Unruh Civil Rights Act applies not merely in situations where businesses exclude individuals altogether, but where treatment is unequal. For purposes of the Unruh Civil Rights Act, unequal treatment includes offering price discounts on an arbitrary basis to certain classes of individuals. There is no requirement that the aggrieved party must demand equal treatment and be refused.

30. The Act must be construed liberally in order to carry out its purpose.

31. Defendant's discriminatory pricing scheme is arbitrary.

## CLASS ALLEGATIONS

32. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of herself and all others similarly situated, as a member of the proposed class (hereafter "the Class") defined as follows:

Class:

All persons in California that purchased Tinder Plus, who were over the age of 30, and who did not receive a discount for the Tinder Plus service due their age.

33. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices or

judicial officers presiding over this matter and the members of their immediate families and judicial staff.

34. Plaintiff does not know the exact number of persons in the Class, but believes them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.

35. The identity of the individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

36. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.

37. Plaintiff will fairly and adequately protect the interest of the Class.

38. Plaintiff has retained counsel experienced in consumer class action litigation.

39. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts involving Defendant's practices.

40. A class action is a superior method for the fair and efficient adjudication of this controversy.

41. Class-wide damages are essential to induce Defendants to comply with the federal and state laws alleged in the Complaint.

42. Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

43. Plaintiff and the Class seek injunctive relief against Defendants to prevent Defendants from forcing consumers to purchase a subscription for Defendant's app and to prevent Defendants from charging consumers based on their gender or age.

44. On April 6, 2017 in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), the California Supreme Court ruled that any contract waives the statutory remedy

of public injunctive relief under the Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act is contrary to California public policy and this unenforceable under California law. Plaintiff and the Class seek injunctive relief under the Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* due to Defendants' violation of the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51, *et seq.* in its discrimination based on age of consumers purchasing the Tinder Plus services. Plaintiff and the Class seek to enjoin Defendants' illegal discriminatory practices in failing to provide discounts to consumers purchasing the Tinder Plus services solely based on age. The arbitration agreement Defendants seek to enforce explicitly waives the statutory remedy of public injunctive relief as it requires all claims to be submitted to arbitration and bars the arbitrator from awarding relief on behalf of any person not named a party to the arbitration. Plaintiff and the Class allege this provision of the agreement to be unenforceable, per the instruction of the California Supreme Court in *McGill*.

45. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the Class as a whole.

46. Members of the Class are likely to be unaware of their rights.

47. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

48. Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

49. This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

/ / /

50. Numerosity: The proposed Class is so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff does not know the number of members in the Class, but believes the Class members number in the thousands, if not more. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants.

51. Plaintiff and members of the Class were harmed by the acts of Defendant(s) in at least the following ways: violation of the Unruh Civil Rights Act, *Cal. Civ. Code* §§ 51, et seq. that caused Plaintiff and other consumers damages.

52. Common Questions of Law and Fact Predominate: The questions of law and fact common to the Class predominate over questions affecting only individual class members, in that the claims of all Class members for each of the claims herein can be established with common proof, and include, but are not limited to, the following:

    (a) Whether Defendants' age based pay structure violated the Unruh Civil Rights Act, Cal. *Civ. Code* §§ 51, *et seq*.

    (b) The proper formula(s) for calculating and/or restitution owed to Class members;

    (c) Whether members of the Class are entitled to statutory damages;

    (d) Whether members of the Class are entitled to declaratory relief; and,

    (e) Whether members of the Class are entitled to injunctive relief.

53. Typicality: Plaintiff's claims are typical of the claims of members of the Class, as Plaintiff was subject to the same common course of conduct by Defendant(s) as all Class members. The injuries to each member of the Class were caused directly by Defendant(s)' wrongful conduct as alleged herein.

54. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with

1 substantial experience in handling complex class action litigation. Plaintiff and
2 his counsel are committed to prosecuting this action vigorously on behalf of the
3 Class, and have financial resources to do so.

4   55.  Superiority of Class Action: A class action is superior to other
5 available methods for the fair and efficient adjudication of the present
6 controversy. Class members have little interest in individually controlling the
7 prosecution of separate actions because the individual damage claims of each
8 Class member are not substantial enough to warrant individual filings. In sum, for
9 many, if not most, Class members, a class action is the only feasible mechanism
10 that will allow them an opportunity for legal redress and justice. The conduct of
11 this action as a class action in this forum, with respect to some or all of the issues
12 presented herein, presents fewer management difficulties, conserves the resources
13 of the parties and of the court system, and protects the rights of each Class
14 member.

15   56.  Moreover, individualized litigation would also present the potential
16 for varying, inconsistent, or incompatible standards of conduct for Defendants,
17 and would magnify the delay and expense to all parties and to the court system
18 resulting from multiple trials of the same factual issues. The adjudication of
19 individual Class members' claims would also, as a practical matter, be dispositive
20 of the interests of other members not parties to the adjudication, and could
21 substantially impair or impede the ability of other Class members to protect their
22 interests.
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

57. Plaintiff and the members of the Class have suffered and will continue to suffer harm as a result of Defendant(s)' unlawful and wrongful conduct. Defendant(s) have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

(VIOLATION OF THE UNRUH CIVIL RIGHTS ACT,

CALIFORNIA *CIVIL CODE* §§ 51, *ET SEQ.*)

**(Against All Defendants on Behalf of Plaintiff and the Class)**

58. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

59. California's Unruh Civil Rights Act ("UCRA"), Cal. *Civ. Code* §§51, et seq., prohibits arbitrary discrimination by businesses on the basis of specified classifications, including age and gender.

60. The objective of the Unruh Civil Rights Act is to prohibit businesses from engaging in unreasonable, arbitrary or invidious discrimination. The Unruh Civil Rights Act applies not merely in situations where businesses exclude individuals altogether, but where treatment is unequal. For purposes of the Unruh Civil Rights Act, unequal treatment includes offering price discounts on an arbitrary basis to certain classes of individuals. There is no requirement that the aggrieved party must demand equal treatment and be refused.

61. UCRA must be liberally construed to accomplish this purpose.

62. Defendants discriminated in violation of a reasonable regulation, and the discrimination was not rationally related to the services it performs.

63. The Act's remedial provisions are set forth in Cal. *Civ. Code* § 52(a), which provides:

/ / /

64. Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

65. Plaintiff need not prove that she suffered actual damages to recover the independent statutory damages of $4,000. Plaintiff and the members of the Class were injured by Tinder's violations of Cal. *Civ. Code* § 51, *et seq.* and bring this action to recover statutory damages and attorney's fees.

## SECOND CAUSE OF ACTION

(VIOLATION OF THE UNFAIR COMPETITION LAW,

CALIFORNIA *BUSINESS & PROFESSIONS CODE* §§ 17200, *ET SEQ.*)

**(Against All Defendants on Behalf of Plaintiff and the Class)**

66. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

67. California's Unfair Competition Law ("UCL"), Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*, prohibits acts of "unfair competition," including any unlawful business act or practice. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm—that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

68. As explained above, Defendants' discriminatory practices of offering unequal treatment of offering discounts for the Tinder Plus services based on age violated, and continue to violate the UCRA.

69. These practices by Defendants are constitute "unlawful" business practices under the UCL, Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*

70. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, violating the UCRA, Cal. *Civ. Code* §§ 51, *et seq.*, and any other applicable statutes and common law causes of action, whether or not specifically alleged herein.

71. Plaintiff reserves the right to allege other violations of law that constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

72. As a direct and proximate result of Defendants' unlawful business practices, Plaintiff and the members of the Class have suffered injury in fact and lost money or property, and continue to cause harm to Plaintiff and members of the Class.

73. The unlawful business practices described herein present a continuing threat to Plaintiff and the members of the Class, including the members of the general public in that Defendants continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

74. As such, Plaintiff seeks public injunctive relief to prevent Defendants from continuing with their unlawful business acts and practices as alleged herein to ensure that Defendants do not continue to harm the general public by continuing to engage in the unlawful business acts and practices as alleged herein.

75. Plaintiff, individually, and on behalf of all California consumers, seeks individual, representative, and public injunctive relief and any necessary order or judgments that will prevent Defendants from continuing with their unlawful business acts and practices as alleged herein.

76. Plaintiff and the members of the Class also seek restitution, in addition to all other relief this Court deems appropriate, consistent with Cal. *Bus. & Prof. Code* § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1. Certifying the Class as requested herein;
2. Providing such further relief as may be just and proper.
3. Appointing Plaintiff and his counsel to represent the Class;

In addition, Plaintiff, and the Class Members pray for further judgment as follows:

4. Restitution of the funds improperly obtained by Defendants;
5. Any and all statutory enhanced damages;
6. All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;
7. For equitable and injunctive relief, including individual, representative, and public injunctive relief under the Unruh Civil Rights Act and the Unfair Competition Law; and

///

///

8. Any and all other relief that this Court deems just and proper.

Dated: June 22, 2018                    Respectfully submitted,

                                        By:  */s/ David L. Weisberg*

                                        John P. Kristensen (SBN 224132)
                                        David L. Weisberg (SBN 211675)
                                        Christina M. Le (SBN 237697)
                                        **KRISTENSEN WEISBERG, LLP**


                                        Todd M. Friedman (SBN 216752)
                                        Adrian R. Bacon (SBN 280332)
                                        **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

                                        *Attorneys for Plaintiff and all other similarly situated.*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated: June 22, 2018      Respectfully submitted,

By: */s/ David L. Weisberg*

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

*Attorneys for Plaintiff and all other similarly situated.*

# CERTIFICATE OF SERVICE

I certify that on this twenty second day of June, 2018, the foregoing document entitled FIRST AMENDED CLASS COMPLAINT FOR DAMAGES AND INJUCTIVE RELIEF will be served in accordance with the Court's CM/ECF system, which will send notification of such filing and a true copy of the foregoing document by notice via email to the ECF participants of record.

By: /s/ Justin Farzadkish
Justin Farzadkish-justin@kristensenlaw.com
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: 310-507-7924
Fax: 310-507-7906