1  John P. Kristensen (SBN 224132)
   David L. Weisberg (SBN 211675)
2  Christina M. Le (SBN 237697)
3  **KRISTENSEN WEISBERG, LLP**
   12450 Beatrice Street, Suite 200
4  Los Angeles, California 90066
5  Telephone:  310-507-7924
   Fax:  310-507-7906
6  john@kristensenlaw.com
7  david@kristensenlaw.com
   christina@kristensenlaw.com
8
   Todd M. Friedman (SBN 216752)
9  Adrian R. Bacon (SBN 280332)
10 **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
   21550 Oxnard Street, Suite 780
11 Woodland Hills, CA 91367
12 Telephone: (216) 220-6496
   Facsimile: (866) 633-0028
13 tfriedman@attorneysforconsumers.com
14 abacon@attorneysforconsumers.com

15 *Attorneys for Plaintiff and all others similarly situated*

16

### THE UNITED STATES DISTRICT COURT
17 ### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| 18  LISA KIM, individually on behalf of herself and all others similarly situated, | Case No.: 2-18-cv-03093 |
| 19 | |
| 20 | **PLAINTIFF LISA KIM'S OPPOSITION TO** |
| Plaintiff, | **DEFENDANTS' MOTION TO** |
| 21 | **COMPEL ARBITRATION OR** |
| 22  vs. | **STAY UNDER *COLORADO RIVER* ABSTENTION** |
| 23 | |
| 24  TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, | **Date:      July 16, 2018** |
| 25  a Delaware limited liability company; MATCH GROUP, INC., a Delaware | **Time:      1:30 p.m.** |
| 26  corporation; and DOES 1 through 10, inclusive, and each of them, | **Courtroom:  7A** |
| 27 | |
| 28  Defendants. | |

1  **TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR**

2  **ATTORNEYS OF RECORD:**

3  **PLEASE TAKE NOTICE** that on July 16, 2018, at 1:30 p.m., in

4  Department 7A of the United States District Court for the Central District of

5  California, located at 350 West First Street, Los Angeles, California 90012,

6  plaintiff Lisa Kim ("Plaintiff"), for herself and other similarly situated, will and

7  hereby does oppose defendants Tinder, Inc., Match Group, LLC, and Match

8  Group, Inc.'s (collectively, "Defendants") Motion to Compel Arbitration or Stay

9  Under *Colorado River* Abstention of this action.

10  Plaintiff's opposition consists of the instant notice, the enclosed

11  Memorandum of Points and Authorities, all the pleadings, records, and files in

12  this action, and any oral argument and other such evidence that may be introduced

13  at the time of hearing.

14

15  Dated:  June 25, 2018                Respectfully submitted,

16                                    By:

17                                    */s/ John P. Kristensen*

18                                    John P. Kristensen (SBN 224132)
19                                    David L. Weisberg (SBN 211675)
                                      Christina M. Le (SBN 237697)
20                                    **KRISTENSEN WEISBERG, LLP**

21

22                                    Todd M. Friedman (SBN 216752)
23                                    Adrian R. Bacon (SBN 280332)
                                      **LAW OFFICES OF TODD M. FRIEDMAN,**
24                                    **P.C**.

25
                                      ***Attorneys for Plaintiff and all other***
26                                    ***similarly situated.***

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.    Introduction ................................................ 1

II.    Statement of Facts ........................................ 2

III.    Plaintiff's Action Cannot Be Compelled to Arbitration ............. 3

     A.    Legal Standards .................................... 3

     B.    Legal Argument .................................... 5

         i.    Whether A Valid Agreement to Arbitrate Exists Is A Threshold Question for This Court ... 5

         ii.    It Is Well-Settled That Public Claims for Injunctive Relief Cannot Be Compelled to Arbitration ...................................... 7

         iii.    *McGill v. Citibank, N.A.* ........................ 7

         iv.    Plaintiff Seeks the Remedy of Public Injunctive Relief ......................................... 9

         v.    The Arbitration Agreement Denies Plaintiff's Right to Public Injunctive Relief under the UCL ........................................... 10

IV.    The Court Should Not Stay This Matter Pursuant to the *Colorado River* Abstention Doctrine ........................... 12

     A.    Legal Standards .................................. 12

     B.    Legal Argument .................................. 13

         i.    There Is No Dispute that the First Two Factors Are Inapplicable ................................ 13

         ii.    The Factors, However, Weigh in Favor of Allowing *Kim* to Proceed ...................... 14

             1.    Piecemeal Litigation ...................... 14

             2.    Order of Jurisdiction ..................... 15

             3.    Applicable Law ........................... 15

             4.    Adequacy of State Court Proceedings ...... 15

             5.    Forum Shopping ......................... 16

             6.    Resolution of Issues ...................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.    Conclusion.............................................................................. 17**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*,
    843 F.2d 1253 (9th Cir. 1988)........................................................14, 15, 16

*Armendariz v. Found. Health Psychcare Serv., Inc.*,
    24 Cal.4th 83 (2000)...................................................................................5

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................3, 4, 5

*Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*,
    800 F.2d 325 (2d Cir. 1986).......................................................................16

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010).......................................................................5

*Broughton v. Cigna Healthplans*,
    21 Cal.4th 1066 (1999)............................................................................7, 9

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ......................................................................12, 13, 14

*Cruz v. PacifiCare Health Systems, Inc.*,
    30 Cal.4th 303 (2003)..............................................................................7, 9

*Doctor's Ass'n v. Casarotto*,
    517 U.S. 681 (1996) ....................................................................................4

*Doctor's Associates, Inc. v. Casarotto*,
    517 U.S. 681 (1996) ....................................................................................5

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) ....................................................................................4

*Hesse v. Sprint Spectrum, L.P.*,
    Case No. C06–0592JLR, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012).......6

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009)..................................................................................8

*Kilgore v. KeyBank, Nat. Ass'n*,
    718 F.3d 1052 (9th Cir. 2013).....................................................................5

*Little v. Auto Stiegler, Inc.*,
    29 Cal.4th 1064 (2003)..............................................................................9

*Lowden v. T-Mobile USA, Inc.*,
    512 F.3d 1213 (9th Cir. 2008)....................................................................5

*McArdle v. AT&T Mobility LLC*,
    Case No. 09-cv-01117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017)..9

*McClellan v. Carland*,
    217 U.S. 268 (1910) ................................................................................12

*McGill v. Citibank, N.A.*,
    2 Cal.5th 945 (2017)..........................................................1, 7, 8, 9, 11, 12

*McKee v. Peroria Unified Sch. Dist.*,
    963 F.Supp.2d 911 (D. Ariz. 2013)...............................................13, 14, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ..................................................................................4

*Moses H. Cohn Mem'l Hosp. v. Mercury Constr. Corp.*,
    436 U.S. 1 (1983) ....................................................................................13

*Nakash v. Marciano*,
    882 F.2d 1411 (1989) ...............................................................................16

*Newton v. Clearwire Corp.*,
    2011 WL 4458971 (E.D. Cal. Sept. 23, 2011)............................................6

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014).....................................................................4

*O'Brien v. American Exp. Co.*,
     2012 WL 1609957 (S.D. Cal. May 8, 2012)..............................................6

*Preston v. Ferrer*,
    552 U.S. 346 (2008) ..................................................................................4

*R.R. Street & Co. v. Transp. Ind. Co.*,
    656 F.3d 966 (9th Cir. 2011)...........................................................13, 14

*Roberts v. AT&T Mobility LLC*,
    Case No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. March 14,
    2018).........................................................................................................9

*Rosenthal v. Great W. Fin. Sec. Corp.*,
    14 Cal.4th 394 (1996).................................................................................5

*Ross v. U.S. Bank Nat'l Ass'n*,
    542 F.Supp.2d 1014 (N.D. Cal. 2008) ......................................................16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..................................................................................4

*Tanguilig v. Bloomingdale's, Inc.*,
    5 Cal.App.5th 665 (2016).........................................................................10

*Travelers Indem. Co. v. Madonna*,
    914 F.2d 1364 (9th Cir. 1990)........................................................14, 15, 16

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*,
    489 U.S. 468 (1989) ..................................................................................3

**Statutes**

Cal. *Civ. Code* § 1668...............................................................................5

Cal. *Civ. Code* § 3513.......................................................................5, 9, 12

Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*...................2

Unruh Civil Rights Act, Cal. *Civ. Code* § 51, *et seq.*.....................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In their Motion to Compel Arbitration or Stay under *Colorado River* Abstention (the "Motion"), defendants Tinder, Inc., Match Group, LLC. and Match Group, Inc. (collectively, "Defendants") argue that this action  brought by plaintiff Lisa Kim ("Plaintiff") brought on her own behalf and on behalf of the putative class for Defendants' violations of the Unruh Civil Rights Act and the Unfair Competition Law should be compelled to arbitration or should be stayed. Defendants, however, cannot compel arbitration in an action seeking public injunctive relief.

> Civil Code section 3513 provides: Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement. Consistent with this provision, we have explained that a party may waive a statutory provision if a statute does not prohibit doing so, the statute's public benefit . . . is merely incidental to [its] primary purpose, and waiver does not seriously compromise any public purpose that [the statute was] intended to serve. By definition, the public injunctive relief available under the [Unfair Competition Law], the [Consumers Legal Remedies Act], and the [False Advertising Law] . . . is primarily for the benefit of the general public. Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration agreement here purports to waive [plaintiff's] right to request in any forum such public injunctive relief, **it is invalid and unenforceable under California law**.

*McGill v. Citibank, N.A.*, 2 Cal.5th 945, 961 (2017) (emphasis added) (internal citations and quotation marks omitted).

It is well-established by binding California Supreme Court precedent that public injunctive relief claims brought in the context of a class action for the

benefit of the general public cannot be compelled to arbitration. Defendants ignore these basic and well-established principles in attempting to compel arbitration here.

Further, under *Colorado River* and the Ninth Circuit case law, it is clear that the factors weigh in favor of this Court exercising jurisdiction over this matter.

Defendants' Motion should accordingly be denied, as explained in detail below.

## II.   STATEMENT OF FACTS

This putative California class action was brought pursuant to Defendants' violation of the Unruh Civil Rights Act ("UCRA"), Cal. *Civ. Code* § 51, *et seq.* on April 12, 2018. *See* Dkt. No. 1. On June 22, 2018, Plaintiff filed her First Amended Complaint including an additional cause of action for violation of the Unfair Competition Law ("UCL"), Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* seeking public injunctive relief. [1] *See* Dkt. No. 30.

In or around early 2015, Plaintiff downloaded an application ("app") called Tinder from Defendants onto her iPhone mobile device. Tinder is an online version of a nightclub where single people meet. Tinder markets itself as a dating application for mobile phones. *Id.* at ¶ 16.

On information and belief, in early March of 2015, Tinder introduced its Tinder Plus services, a Tinder account that provided supplemental services to the basic Tinder account, such as "change your location", "hide distance," "rewind your last swipe," no paid advertisements, a limited number of "super swipes" per day, the ability to hide your age, and control over who you see. *Id.* at ¶ 21. Tinder announced publically at that time to NPR that it would be charging $9.99 to

---

[1]     The injunctive relief component of this case is critical, because Defendants' conduct not only affects Plaintiff, but Tinder users throughout the State of California, as demonstrated by the UCL claim.

KRISTENSEN
WEISBERG LLP
Attorneys for Plaintiffs
KW

consumers for these services (at a 50% discount), but notably, that any individual who was over 30 years of age would be charged $19.99 for the identical services. *Id.* at ¶ 22. In early 2016, Plaintiff, who at the time was over the age of 30, purchased subscription to the Tinder Plus app, for $19.99, to take advantage of the supplemental services provided. *Id.* at ¶ 23. Plaintiff purchased Tinder Plus account for $19.99, and was not offered a discount by Tinder, due to her being over 30 years of age. *Id.* at ¶ 24. Tinder continues to make such discounts available to customers on the sole basis of their age. *Id.* at ¶ 25. Defendants offer no discounts for its Tinder Plus services, than that offered to consumers based solely upon their age. *Id.* at ¶ 26. Plaintiff alleges that Defendants' discriminatory pricing scheme based on age is discriminatory and thus violates the UCRA and UCL. *See id.* at ¶ 31.

## III.   PLAINTIFF'S ACTION CANNOT BE COMPELLED TO ARBITRATION

It is well established by binding California Supreme Court precedent that public injunctive relief claims brought in the context of a class action for the benefit of the general public cannot be compelled to arbitration. Accordingly, Defendants' Motion to Compel Arbitration should be denied.

### A.   *Legal Standards*

"The 'principle purpose' of the [Federal Arbitration Act ("FAA")] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 489 (1989)).

> Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written (subject, of course, to the saving clause) . . . and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure . . . to

perform the same' is not at issue). In light of these provisions, we have held that **parties** may agree to limit the issues subject to arbitration . . . to arbitrate according to specific rules . . . and to limit with whom a party will arbitrate its disputes.

*Concepcion*, 563 U.S. at 344. (emphasis added) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) and *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). The "FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement." *Concepcion*, 563 U.S. at 353 (Thomas, J., concurring). "Arbitration agreements may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at 364 (quoting *Doctor's Ass'n v. Casarotto*, 517 U.S. 681, 687 (1996).

In determining whether a valid arbitration agreement exists, courts apply ordinary state law principles that govern the formation of contracts. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). These contract law principles fall within the savings clause because they apply to arbitration agreements and other contracts as they do not "take [their] meaning precisely from the fact that a contract to arbitrate is at issue," but are "generally applicable contract defenses." *Doctor's Ass'n*, 517 U.S. at 685, 687. Nor do they "stand as an obstacle to the accomplishment of the FAA's objectives." *Concepcion*, 563 U.S. at 334. Rather, they prevent enforcement of an agreement to arbitration only in the limited set of cases where enforcement of the agreement would result in a waiver of substantive rights, and the FAA's objectives do not include requiring a party to relinquish any "substantive right . . . [state] law may afford." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008).

/ / /

Nothing in *Concepcion* suggests that California cannot prevent the waiver of the right to bring representative claims, nor that state laws holding that non-parties to a contract cannot be bound by its terms, are unenforceable and superseded by the FAA. The Supreme Court only held in *Concepcion* that a state may not adopt a rule that forecloses individual arbitration when class proceedings are unnecessary to vindicate substantive rights. *Concepcion*, 563 U.S. at 351–352. Nothing more. Declining to enforce a waiver or arbitration agreement regarding public injunctive relief claims does not reflect hostility toward or discrimination against arbitration. It merely involves an arbitration-neutral application of the contract principles that a party cannot contractually forfeit a right granted for a public reason. Cal. *Civ. Code* §§ 1668, 3513; *Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal.4th 83, 100 (2000).

## B.    Legal Argument

### i.    Whether A Valid Agreement to Arbitrate Exists Is A Threshold Question for This Court

The first issue to be decided by the Court is whether a valid agreement to arbitrate exists. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). State contract law determines the validity of the arbitration agreement. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  Further, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010); *Rosenthal v. Great W. Fin. Sec. Corp*, 14 Cal.4th 394, 413 (1996).   These contract-law principles fall within the savings clause because they apply both to arbitration agreements and other contracts: they do not "take [their] meaning precisely from the fact that a contract to arbitrate is at issue," but are "generally applicable contract defenses." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 685, 687 (1996).  Nor do they "stand as an obstacle to the accomplishment of

the FAA's objectives." *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748 (2011); See also Nguyen v. Barnes & Noble Inc., 763 F.3d 1171 (9th Cir. 2014).

Defendants have not provided sufficient evidence to demonstrate that Plaintiff actually entered into an agreement to arbitrate. In fact, Defendants' evidence merely suggests that its standard procedures present consumers with an opportunity to view arbitration agreements, but Defendants have provided no actual documentation showing that Plaintiff ever saw or was presented with any of these agreements. At a basic level, an agreement to arbitrate must entered into just as any other contract. It is unclear whether that happened here. It is equally unclear that Plaintiff was ever presented with the terms of use that Defendants cite to. At the very least, there should be some preliminary discovery on the issue of arbitration to determine whether Plaintiff actually entered into an agreement, before said agreement can be unilaterally applied against her, given the inconclusiveness of the argument and evidence presented by Defendant. *See Hesse v. Sprint Spectrum, L.P.*, Case No. C06–0592JLR, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012); *Newton v. Clearwire Corp.*, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011); *O'Brien v. American Exp. Co.*, 2012 WL 1609957 (S.D. Cal. May 8, 2012).

Investigation to date suggests that there are tens if not hundreds of thousands of class members in this case. At $4,000 each in statutory damages, the monetary relief sough in this case is potentially in the hundreds of millions of dollars. Brief discovery into this issue would be prudent at the very least to ensure that the decision ultimately reached is the correct one. Since it is Defendants' burden of proof, and insufficient evidence has been presented, anything less would be unjust.

/ / /

/ / /

/ / /

### ii. It Is Well-Settled That Public Claims for Injunctive Relief Cannot Be Compelled to Arbitration

On April 6, 2017 in *McGill*, the California Supreme Court ruled that any contract that waives the statutory remedy of public injunctive relief, including those brought under UCL, is contrary to California public policy and thus unenforceable under California law. Plaintiff has made clear in the FAC that she seeks a public injunction against Defendants under UCL prohibiting Defendants from arbitrarily discriminating against its users based on age. The arbitration clause Defendants seek to enforce waives the statutory remedy of public injunctive relief as it requires all claims to be submitted to arbitration and bars the arbitrator from awarding relief on behalf of any person not named a party to the arbitration.

The first issue to be decided by the Court is whether a valid agreement to arbitrate exists between Plaintiff and Defendants because (1) *McGill* applies to all contracts such that they are not preempted by the FAA; (2) Plaintiff is seeking public injunctive relief; and (3) Defendants seek to enforce a contract that denies Plaintiff the remedy of public injunctive relief contrary to California law.

### iii. *McGill v. Citibank, N.A.*

In *McGill*, the California Supreme Court rules that any contract that waives the statutory remedy of public injunctive relief including such claims brought under the UCL, is contrary to California public policy and thus unenforceable under California law. In doing so, the California Supreme Court analyzed the public injunctive relief enshrined in the UCL as well as the previous rulings on the issue in the UCL as well as the previous rulings on the issue in *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066 (1999) and *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal.4th 303 (2003).

With regards to the UCL, it reiterates that the UCL was meant to protect Californians by promoting fair competition in commercial markets for goods and

services and that the primary form of relief available under the UCL to protect Californians from unfair business acts or practices is an injunction. *McGill*, 2 Cal.5th at 954 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009)). Turning to *Broughton* and *Cruz*, the Court reaffirmed that public injunctive relief under the UCL is relief that has "the primary purpose and effect of" prohibiting unlawful acts that threaten future injury to the general public. *Id.*. However, as compared to the *Broughton* and *Cruz* decisions, *McGill* asserted that the arbitration provision purports to preclude plaintiff from seeking public injunctive relief *in any forum*, such that the *Broughton-Cruz* rules were not implicated. *McGill*, 2 Cal.5th at 956. After analyzing and confirming that public injunctive relief is a remedy available to private plaintiffs under the UCL, the California Supreme Court continued to conclude that the arbitration provision was invalid and unenforceable because it sought to waive the plaintiff's statutory right to seek public injunctive relief, noting:

> Civil Code section 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Consistent with this provision, we have explained that "a party may waive a statutory provision if a statute does not prohibit doing so [citation], the statute's 'public benefit . . . is merely incidental to [its] primary purpose', and 'waiver does not seriously compromise any public purpose that [the statute was] intended to serve'." By definition, the public injunctive relief available under the UCL, the CLRA, and the false advertising law, as discussed in *Broughton* and *Cruz*, is primarily "for the benefit of the general public." . . . Accordingly, the waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve. Thus, insofar as the arbitration provision here purports to waive McGill's right to request in any forum such public injunctive relief, it is invalid and unenforceable under California law.

*McGill*, 2 Cal.5th at 961 (internal citations omitted). The California Supreme

Court further reiterated that Cal. *Civ. Code* § 3513 is a generally applicable contract defense and is a ground under California law for revoking any contract, not just arbitration clauses. *Id.* at 961–962 (citing *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1079 (2003)). Thus, as a matter of California law, it is illegal for a company to attempt to contract away a right to seek public injunctive relief, which is exactly what Defendants' arbitration agreement in this matter seeks to do.

District Courts in the Ninth Circuit are paying attention to *McGill*, and have applied the *McGill* decision to cases where Defendants attempt to waive the Plaintiff's right to public injunctive relief through arbitration. *Roberts v. AT&T Mobility LLC*, No. 15-CV-03418-EMC, 2018 WL 1317346, at *3 (N.D. Cal. March 14, 2018); and *McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 WL 4354998 (N.D. Cal. Oct. 2, 2017). Both *Roberts* and *McArdle* involve decisions by district courts to follow *McGill*, and both are now on appeal before the Ninth Circuit. Plaintiff believes these courts correctly applied the principles in a consistent manner with the FAA, and that these decisions should be followed by this Court as well.

### iv.      Plaintiff Seeks the Remedy of Public Injunctive Relief

In this matter, Plaintiff seeks public injunctive relief in the same manner as the *McGill* plaintiff. In *McGill*, the plaintiff requested "among other things, an injunction prohibiting [defendant] from continuing to engage in its allegedly illegal and deceptive practices." *McGill*, 2 Cal.5th at 953. In this matter, Plaintiff brings class action claims seeking public injunctive relief prohibiting Defendants from engaging in unlawful conduct throughout California, under the UCL.

By definition the public injunctive relief available under the UCL, as discussed in *Broughton* and *Cruz*, is primarily "for the benefit of . . . the general public." *Id.* at 955 (citing *Broughton*, 21 Cal.4th at 1082 and *Cruz*, 30 Cal.4th at 315). Thus, the injunctive relief requested by Plaintiff to stop Defendants' illegal practice of discriminating against its users based on age is "for the benefit of the

general public," and thus a statutory right protected in California.

An arbitrator cannot decide an issue of public injunction that will impact the entire State of California. *See Tanguilig v. Bloomingdale's, Inc.*, 5 Cal.App.5th 665 (2016) (standing for the proposition that claims belonging to the public (including public injunctive relief claims) cannot be compelled to arbitration. Defendants' arbitration clause purports to waive Plaintiff's right to seek public injunctive relief as it states:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof) or the Service shall be **BINDING ARBITRATION** administered by the American Bar Association. The one exception to the exclusivity of arbitration is that you have the right to bring an individual claim against the Company in a small-claims court of competent jurisdiction. But whether you choose arbitration or small-claims court, you may not under any circumstances commence or maintain against the Company any class action, class arbitration, or other representative action or proceeding.

Dkt. No. 24-2, Badeen Decl., Ex. 1 at ¶ 18a. This language is not permissible under *McGill* to the extent that Defendants seek to prohibit Plaintiff from bringing a public injunctive relief claim against them for their widespread unlawful conduct.

### v.   The Arbitration Agreement Denies Plaintiff's Right to Public Injunctive Relief under the UCL

The language at issue in Defendants' arbitration clause as it pertains to the limitation on Plaintiff's substantive rights is similar to the language in *McGill* such that Defendants' arbitration clause is equally unenforceable. In *McGill*, the clause at issue contained the following language:

> All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims

based on  contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; . . . and Claims made independently or with other claims.

*McGill*, 2 Cal.5th at 952. In this matter, Defendants' clause contains the following language:

> The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof) or the Service shall be **BINDING ARBITRATION** administered by the American Bar Association. The one exception to the exclusivity of arbitration is that you have the right to bring an individual claim against the Company in a small-claims court of competent jurisdiction. But whether you choose arbitration or small-claims court, you may not under any circumstances commence or maintain against the Company any class action, class arbitration, or other representative action or proceeding.
>
> By using the Service in any manner, you agree to the above arbitration agreement. In doing so, **YOU GIVE UP YOUR RIGHT TO GO TO COURT** to assert or defend any claims between you and the Company (except for matters that may be taken to small-claims court). **YOU ALSO GIVE UP YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION OT OTHER CLASS PROCEEDING.** Your rights will be determined by a **NEUTRAL ARBITRATOR, NOT A JUDGE OR JURY.**

Dkt. No. 24-2, Badeen Decl., Ex. 1 at ¶¶ 18a–b. Thus, Defendants' arbitration clause encompasses all remedies, including equitable and statutory claims, just as was the case in *McGill*.

Further, as to the possible relief that may be awarded by an arbitrator, the *McGill* clause contained the following language:

> The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or

other representative action, nor may such Claim be pursued on
your or our behalf in any litigation in any court.

*McGill*, 2 Cal.5th at 952. In Defendants' arbitration clause, Defendants bar
Plaintiff from pursuing any claims for public injunctive relief by limiting
Plaintiff's ability to "commence or maintain against the Company any class
action, class arbitration, or other representative action or proceeding." Dkt. No.
24-2, Badeen Decl., Ex. 1 at ¶ 18a.

Thus, Defendants' arbitration clause does not seek to force Plaintiff to
assert her right to public injunctive relief in arbitration, but instead completely
waived Plaintiff's right to seek public injunctive relief *in any forum*, just as was
the case in *McGill*. *McGill*, 2 Cal.5th at 956. Thus, Defendants' arbitration clause
is unenforceable as a matter of California law for violating Cal. *Civ. Code* § 3513.

## IV.   THE COURT SHOULD NOT STAY THIS MATTER PURSUANT TO THE *COLORADO RIVER* ABSTENTION DOCTRINE

The *Colorado River* Abstention doctrine provides that, under exceptional
circumstances, where a concurrent state court action is pending a federal court can
abstain from hearing an action based on "considerations of [w]ise judicial
administration, giving regard to conservation of judicial resources and
comprehensive disposition of litigation." *Colorado River Water Conservation
Dist. v. U.S.*, 424 U.S. 800, 817 (1976).

### A.   *Legal Standards*

Because of the "virtually unflagging obligation of the federal courts to
exercise the jurisdiction given them," the abstention from the exercise of federal
jurisdiction pursuant to *Colorado River* "is the exception, not the rule." *Id.* at 813.
Generally, as between state and federal courts, the rule is that 'the pendency of an
action in the state court is no bar to proceedings concerning the same matter in the
[f]ederal court having jurisdiction.'" *Id.* at 817 (quoting *McClellan v. Carland*,
217 U.S. 268, 282 (1910)). Application of the *Colorado River* doctrine can be

1   justified "only in the exceptional circumstances." *Colorado River*, 424 U.S. at 813

2   (internal citations omitted).

3       The Ninth Circuit has recognized eight factors used to determine whether

4   the sort of "exceptional circumstances" warranting a *Colorado River* stay or

5   dismissal are present: (1) which court first assumed jurisdiction over any property

6   at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid

7   piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5)

8   whether federal law or state law provides the rule of decision on the merits; (6)

9   whether the state court proceedings can adequately protect the rights of the federal

10  litigants; (7) the desire to avoid forum shopping; and (8) whether the state court

11  proceedings will resolve all issues before the federal court. *R.R. Street & Co. v.*

12  *Transp. Ind. Co.*, 656 F.3d 966, 978–979 (9th Cir. 2011). "No one factor is

13  necessarily determinative" and the factors are "to be applied in a pragmatic,

14  flexible manner with a view to the realities of the case at hand." *Colorado River*,

15  424 U.S. at 818–819; *Moses H. Cohn Mem'l Hosp. v. Mercury Constr. Corp.*, 436

16  U.S. 1, 21 (1983). "If there is any doubt as to whether a factor weighs in favor of

17  either party, that factor should be resolved against a stay." *McKee v. Peroria*

18  *Unified Sch. Dist.*, 963 F.Supp.2d 911, 920 (D. Ariz. 2013).

19      "The decision rests not on a mechanical checklist, but on a careful

20  balancing of the important factors as they apply in a given case, with the balance

21  heavily weighted in favor of the exercise of jurisdiction." *Id.* at 919–920.

22      **B.    Legal Argument**

23          **i.    There Is No Dispute that the First Two Factors Are**

24              **Inapplicable**

25      As Defendants concede, the first two factors are inapplicable and should

26  not be considered. Mot. at 12:10–12.

27  / / /

28  / / /

1    ii.    **The Factors, However, Weigh in Favor of Allowing *Kim* to**

2           **Proceed**

3                        **1. Piecemeal Litigation**

4           "Piecemeal litigation occurs when different tribunals consider the same

5    issue, thereby duplicating efforts and possibly reaching different results." *Am.*

6    *Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258

7    (9th Cir. 1988). The general rule being that "the pendency of an action in the state

8    court is no bar to proceedings concerning the same matter in the Federal court

9    having jurisdiction." *Colorado River*, 424 U.S. at 817. "The mere possibility of

10   piecemeal litigation does not constitute an exceptional circumstance." *R.R. Street*

11   *& Co.*, 656 F.3d at 979. The case must raise a "special concern about piecemeal

12   litigation" which can be remedied by staying the federal proceeding. *Travelers*

13   *Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

14          "A special concern arises when the state court has made rulings or the state

15   action has progressed in a manner that unreasonable duplicative effort would

16   result from the federal court's exercise of jurisdiction." *McKee*, 963 F.Supp.2d at

17   920.

18          In *Travelers*, the Ninth Circuit found this factor neutral because "at the time

19   of the district court's stay order the state court had made no rulings whatsoever in

20   regard to this dispute" and "whichever court were to first reach a judgment on the

21   merits, that judgment would most likely have conclusive effect on the other

22   court." *Travelers*, 914 F.2d at 1369.

23          As in *Travelers*, this factor is neutral and thus must be weighed in favor of

24   this Court maintaining jurisdiction. In *Candelore*, the state court's only

25   substantive ruling sustaining a demurrer without leave to amend was reversed on

26   appeal and the remittitur was issued on May 10, 2018, allowing the state court

27   action to proceed. As in *McKee*, there does not exist any special concern "beyond

28   the possibility that the state and federal courts might arrive at different

conclusions." *McKee*, 963 F.Supp.2d at 920. For this reason, this factor is at most neutral, and thus, must be weighed in favor of this Court maintaining jurisdiction.

### 2. Order of Jurisdiction

This factor "must be applied in a pragmatic, flexible manner so that priority is not measured exclusively in terms of which complaint was filed first, but rather in terms of how much progress was actually made in the state and federal actions." *Am. Int'l Underwriters*, 843 F.2d at 1258. Moreover, "the mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden on the defendant . . . which would justify abstention. *Travelers*, 914 F.2d at 1370 (internal quotation marks and citation omitted).

As Defendants state in their Motion, *Candelore* has been pending for three years and extensive motion and appellate practice has been undertaken by the parties. Mot. at 13:1–8. The longer pendency of *Candelore* weighs heavily in favor of this Court maintaining jurisdiction.

### 3. Applicable Law

Though the "presence of federal-law issues must always be a major consideration weighing against surrender . . . the presence of state-law issues may weigh in favor if that surrender only in some rare circumstances." *Travelers*, 914 F.2d at 1370. Here, though Plaintiffs' two causes of action are state law claims under the UCRA and UCL, these issues are not complex and federal courts are fully capable of deciding these issues when sitting in diversity. Thus, there are no such "rare circumstances," and at most, this factor is neutral which weighs in favor of this Court exercising its jurisdiction.

### 4. Adequacy of State Court Proceedings

This factor is also neutral as this factor involves the "*state* court's adequacy to protect *federal* rights." *Id.* As noted in *Travelers*, the Ninth Circuit "has not applied this factor against the exercise of federal jurisdiction, only in favor of it.

The Second Circuit, however, has stated that 'the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Id.* (citing *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986). Because this factor is neutral in this instance, it weighs in favor of this Court retaining jurisdiction.

### 5. Forum Shopping

"In the *Colorado River* context, this Circuit had held that forum shopping weighs in favor of a stay when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the applicable of federal court rules." *Travelers*, 914 F.2d at 1371 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1417 (1989) and *Am. Int'l Underwriters*, 843 F.2d at 1259). There have been no adverse rulings made by the state court in *Candelore* and very little to no discovery has taken place in *Candelore*.

Here, Plaintiff acted within her rights in filing suit in the forum of her choice. In *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1022 (N.D. Cal. 2008), the district court found in favor of a stay because the action at hand was substantially similar to *two pending actions and brought by the same counsel*. Here, there is no indication of improper forum shopping and this factor is neutral, weighing in favor of this Court's exercise of jurisdiction.

### 6. Resolution of Issues

Plaintiff does not dispute that *Candelore* and *Kim* are similar; however, one factor alone is insufficient to divest this Court of jurisdiction in the balancing of all the relevant factors.

/ / /

/ / /

/ / /

**V.    CONCLUSION**

For the reasons set forth herein, Plaintiff humbly requests that this Court deny Defendants' Motion to Compel Arbitration or Stay under *Colorado River* Abstention in its entirety.

Dated:  June 25, 2018                          Respectfully submitted,


By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**


Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

***Attorneys for Plaintiff and all others similarly situated.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I certify that on this Twenty Fifth day of June, 2018, the foregoing document entitled

PLAINTIFF LISA KIM'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL,

ARBITRATION OR STAY UNDER *COLORADO RIVER* ABSENTION will be served in

accordance with the Court's CM/ECF system, which will send notification of such filing and a

true copy of the foregoing document by notice via email to the ECF participants of record.


By:/s/ Justin Farzadkish
Justin Farzadkish-justin@kristensenlaw.com
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, CA 90066
Phone: 310-507-7924
Fax: 310-507-7906