EXHIBIT A

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. CA 108533)
E-mail: rplatt@manatt.com
DONALD R. BROWN (Bar No. CA 156548)
E-mail: dbrown@manatt.com
ALEXANDRA N. HILL (Bar No. CA 313249)
E-mail: ahill@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
CHRISTOPHER A. RHEINHEIMER
(Bar No. CA 253890)
E-mail: crheinheimer@manatt.com
One Embarcadero Center, 30th Fl.
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for *Defendants*
TINDER, INC., MATCH GROUP, LLC,
and MATCH GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA KIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No. CV 18-03093 JFW (AS)<br><br>Hon. John F. Walter<br><br>**[PROPOSED] STATEMENT OF DECISION**<br><br>Hearing Date: July 16, 2018<br>Hearing Time: 1:30 p.m.<br>Courtroom: 7A |

1

## [PROPOSED] STATEMENT OF DECISION

2    **Proceeding:** Order GRANTING the Motion To Compel Arbitration or Stay

3  Under *Colorado River* Abstention [Dkt. No. 24] filed by defendants Tinder, Inc.,

4  Match Group, LLC, and Match Group, Inc.'s (collectively, "Tinder").

5  **I.    FACTS**

6    Tinder is a free, smartphone-based dating app.  (Declaration of Jonathan

7  Badeen ("Badeen Decl."), ¶¶ 2-3.)  The app displays profiles of other users and

8  allows a user to swipe right on another user's profile to express interest or left to

9  express disinterest.  (*Id.*, ¶ 2.)  In March 2015, Tinder released a suite of premium

10  features called Tinder Plus that is available for a monthly fee.  (*Id.*)

11    Tinder requires a user to create an account before accessing any feature of

12  the app.  (Badeen Decl., ¶ 4.)  Permission to create an account and use the app has,

13  in turn, always been conditioned on the user's agreement to the TOU.  (*Id.*)  The

14  TOU has always been available for review any time within the app.  (*Id.*)

15    Since 2014, the TOU has included an arbitration agreement that requires all

16  disputes (except small-claims matters) arising out of or relating to the TOU or

17  Tinder's services to be resolved through binding arbitration, and waives any right to

18  participate in a class or representative action:

19    **Arbitration Agreement.** The exclusive means of

20    resolving any dispute or claim arising out of or relating to

21    this Agreement (including any alleged breach thereof) or

22    the Service shall be BINDING ARBITRATION

23    administered by the American Arbitration Association.

24    The one exception to the exclusivity of arbitration is that

25    you have the right to bring an individual claim against the

26    Company in a small-claims court of competent

27    jurisdiction.  But whether you choose arbitration or small-

28    claims court, you may not under any circumstances

1  |  commence or maintain against the Company any class
2  |  action, class arbitration, or other representative action or
3  |  proceeding.

4  (Badeen Decl., ¶ 5 and Ex. 1, ¶ 18, Ex. 2, ¶ 19 (emphasis in original).)

5       Plaintiff created a Tinder account on October 10, 2013.  (Badeen Decl., ¶ 7.)
6  On April 13, 2015, Plaintiff created a second account.  (*Id.*)  On July 31, 2015,
7  Tinder added a disclosure to its login screen that informed users that by continuing
8  to use the service, they were agreeing to Tinder's TOU.  (*Id.*, ¶ 6.)  The screen
9  stated that by tapping Log In, the user agrees to the TOU.  The disclosure was
10 directly above the Log In button and provided a clear hyperlink in the disclosure to
11 the then-current TOU.  (*Id.*, Ex. 3.)

12      On February 21, 2017, Plaintiff purchased a subscription to Tinder Plus.
13 (Badeen Decl., ¶ 7.)  Then, on February 23, 2017 and March 4, 2017, Plaintiff
14 tapped to log in to her account.  (*Id.*)

15 **II.   PROCEDURAL POSTURE**

16      Plaintiff filed her Complaint on April 12, 2018, alleging violations of the
17 Unruh Civil Rights Act, Cal. Civ. Code §§ 51 *et seq.*  [Dkt. No. 1.]  On June 11,
18 2018, Tinder filed a Motion to Compel Arbitration, or in the Alternative, Stay
19 Under *Colorado River* Abstention.  [Dkt. No. 24.]  Plaintiff filed an Opposition on
20 June 25, 2018 [Dkt. No. 32], and Tinder filed a Reply on July 2, 2018 [Dkt. No.
21 33].  Meanwhile, Plaintiff filed a First Amended Complaint ("FAC") on June 22,
22 2018 [Dkt. No. 30] that included a claim under California's Unfair Competition
23 Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

24 **III.   PLAINTIFF MUST ARBITRATE HER CLAIMS.**

25     **A.   Legal Standard**

26      Tinder's arbitration agreement—addressed in detail below—provides that it
27 is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA").  (Badeen
28 Decl., Ex. 1, ¶ 18, Ex. 2, ¶ 19.)  An FAA choice-of-law provision in an arbitration

1  agreement is enforceable. *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir.
2  2015).    Moreover, the FAA would govern here even without a choice-of-law
3  provision because Tinder's TOU "evidenc[es] a transaction involving commerce."
4  9 U.S.C. § 2; *see Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130
5  (9th Cir. 2000).

6      "The FAA provides that any arbitration agreement within its scope 'shall be
7  valid, irrevocable, and enforceable.'" *Chiron*, 207 F.3d at 1130 (quoting 9 U.S.C. §
8  4).    On a motion to compel arbitration, a district court's role is limited to
9  determining whether a valid agreement to arbitrate exists and—unless the question
10  is contractually delegated to the arbitrator instead—determining whether the
11  agreement encompasses the parties' dispute. *See id.*; *Brennan*, 796 F.3d at 1132 ("a
12  court must enforce an agreement that . . . clearly and unmistakably delegates
13  arbitrability questions to the arbitrator").    The FAA "leaves no place for the
14  exercise of discretion by the district court." *Dean Witter Reynolds Inc. v. Byrd*, 470
15  U.S. 213, 218 (1985).    Rather, "the [FAA] requires the court to enforce the
16  arbitration agreement in accordance with its terms." *Chiron*, 207 F.3d at 1130.

17      **B.    Plaintiff Assented to the TOU, and Her Assent Is Binding.**

18      There are three generally recognized methods of obtaining consent to terms
19  of use: clickwrap, browsewrap, and a hybrid known as "browsewrap-that-
20  resembles-clickwrap" or "sign-up wrap." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d
21  1171, 1175-76 (9th Cir. 2014).    In a sign-up wrap agreement, the consumer must
22  click an "I agree" box or otherwise clearly manifest consent to the terms of use,
23  while the terms themselves are accessible via hyperlink. *Id.* at 1176-77.    Tinder
24  uses a sign-up wrap.    Plaintiff manifested consent by tapping the Tinder Log In
25  button directly below a disclosure clearly explaining that doing so constituted
26  agreement to the TOU, which itself was accessible via a hyperlink in the disclosure.
27  (*See* Badeen Decl., ¶ 6.)

28

1   This method of assent is fully enforceable.  *See Nguyen*, 763 F.3d at 1177;

2   *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015).

3   Furthermore, Tinder provided sufficient evidence that Plaintiff assented to the TOU

4   (and thus, the TOU's arbitration agreement) through this method.  Tinder provided

5   a declaration with documentary exhibits establishing that, on multiple occasions

6   after July 31, 2015, Plaintiff logged in to her Tinder account through a login screen

7   on her phone which stated that tapping the Log In button would constitute assent to

8   the TOU (and thus the TOU's arbitration agreement).  On each occasion, the screen

9   provided a prominent hyperlink to the TOU, which Plaintiff was free to review if

10   she desired.

11   In light of Tinder's evidence that Plaintiff assented to the arbitration

12   agreement, the burden shifted to Plaintiff in her Opposition to affirmatively rebut

13   such evidence.  *See Sundquist v. Ubiquity, Inc.*, 2017 WL 3721475, at **2-3 (S.D.

14   Cal. Jan. 17, 2017).  Plaintiff did not do so.  Rather, Plaintiff argued merely that

15   Tinder should provide additional evidence regarding her login, and she made a

16   vague request for unspecified discovery.  Inchoate requests to pursue discovery are

17   insufficient as a matter of law to defeat a motion to compel arbitration.  *See*, *e.g.*,

18   *Hodsdon v. DirecTV, LLC*, 2012 WL 5464615, at *8 (N.D. Cal. Nov. 8, 2012)

19   Accordingly, there is no legitimate dispute that Plaintiff accepted, and is

20   bound by, the arbitration agreement.

21   **C.    Issues of Arbitrability Were Delegated to the Arbitrator.**

22   The arbitration agreement states that claims or disputes between the parties

23   shall be determined in arbitration administered by the American Arbitration

24   Association ("AAA").  (Badeen Decl., Ex. 1, ¶ 18, Ex. 2, ¶ 19.)  Those Rules state

25   that the question of arbitrability is for the arbitrator—and, thus, not for the court.

26   (*See* Request for Judicial Notice ("RJN"), Ex. 1, R-14(a).)[1]  Where, as here, an

27

28

---

[1]   The Court grants Tinder's Request for Judicial Notice.

arbitration agreement incorporates AAA Rules, a provision in the Rules delegating the question of arbitrability to the arbitrator is enforceable. *Brennan*, 796 F.3d 1125.

Accordingly, the Court need not, and should not, determine questions of arbitrability, such as whether this case is within the scope of the parties' arbitration agreement[2] or any purported impact on arbitrability of the California Supreme Court's holding in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), as those determinations have been delegated to the arbitrator instead.

### D.    In Any Event, This Case Is Arbitrable.

In her Opposition, Plaintiff, relying heavily on *McGill*, argues that this dispute is not subject to arbitration.  The Court disagrees for three reasons: (i) Plaintiff is seeking a private, not public, injunction; (ii) the arbitration agreement does not bar claims for injunctive relief, public or otherwise; and (iii) the so-called *Broughton-Cruz rule* is invalid.

### 1.    Plaintiff Is Not Seeking a Public Injunction.

In *McGill*, the California Supreme Court held that a provision in a contract that waives the statutory remedy of public injunctive relief is unenforceable.  A public injunction affects the public as a whole, whereas a private injunction affects only an individual or a certain portion of the public. *McGill*, 2 Cal. 5th at 955.  The dispute in this case concerns whether Tinder may charge a higher price for access to optional premium features of its app to users who are at least thirty years of age.  In the UCL claim in her FAC, Plaintiff seeks an injunction that would prevent Tinder from basing the price for those features, known as Tinder Plus, on this age distinction.  An injunction that purports to control the price charged to a subgroup

---

[2]     It is nonetheless clear that the arbitration agreement encompasses the claims at issue in this case because Plaintiff agreed to arbitrate "any dispute or claim arising out of or relating to this Agreement (including any breach thereof) or the Service . . . . " (Badeen Decl., ¶ 5 and Ex. 1 at ¶ 19.)

of a subgroup of a subgroup of the public—users of Tinder's dating app who wish to subscribe to Tinder Plus and are age 30 or over—is clearly one that would not affect the public at large and therefore would only qualify as private. *See, e.g.*, *Croucier v. Credit One Bank, N.A.*, 2018 WL 2836889 (S.D. Cal. June 11, 2018).

### 2. The Arbitration Agreement Does Not Bar Claims for Injunctive Relief, Public or Otherwise.

Plaintiff argues that the parties' arbitration agreement is unenforceable, in whole or in part, because it would preclude her from seeking a public injunction. To the contrary, Plaintiff is free to pursue her claim for UCL injunctive relief—whether it qualifies as public or private—in arbitration.

The arbitration agreement here, unlike in *McGill*, does not deprive Plaintiff of any statutory remedy. Tinder's agreement states that an arbitrator may award *any* relief a court can—including a public injunction. (*See* Badeen Decl., Ex. 1, § 18.b.; Ex. 2 § 19 ("The arbitrator can grant any relief that a court can . . . .").) The fact that Plaintiff may not seek a public injunction (or any other relief) as part of a class or representative action is irrelevant.

### 3. The So-Called *Broughton-Cruz* Rule Is Invalid.

Plaintiff argues she cannot be compelled to seek a public injunctive relief in arbitration because the so-called *Broughton-Cruz* rule entitles her to seek such relief in court.[3] However, the *Broughton-Cruz* rule was rendered invalid by the U.S. Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), which held that a state-law rule that specifically restricts the scope of arbitration agreements is preempted by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("We therefore hold that the FAA preempts the

---

[3] *Broughton* refers to *Broughton v. Cigna Healthplans of Calif.*, 21 Cal. 4th 1066 (1999), and *Cruz* refers to *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003).

1  *Broughton–Cruz* rule."); *Nelsen v. Legacy Partners Residential, Inc.*, 207 Cal. App.
2  4th 1115, 1136 (2012), *as modified on denial of reh'g* (Aug. 14, 2012).

3  **IV.    THIS ACTION SHOULD BE STAYED ON ABSTENTION GROUNDS**

4        Although unnecessary to this decision because the Court is compelling
5  arbitration, the Court also holds that a stay of this case would be appropriate in the
6  event the case were not subject to arbitration.

7        In certain circumstances, "a federal court may decline to exercise its
8  'virtually unflagging obligation' to exercise federal jurisdiction, in deference to
9  pending, parallel state proceedings." *Montanore Minerals Corp. v. Bakie*, 867 F.3d
10  1160, 1165 (9th Cir. 2017) (quoting *Colorado River Water Conservation Dist. v.*
11  *United States*, 424 U.S. 800, 817 (1976)).   The threshold issue for invoking
12  *Colorado River* abstention is whether there is a parallel proceeding in state court.
13  *E.g.,* *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1147
14  (C.D. Cal. 2014).   In May 2015, another Tinder user, Allan Candelore, filed a
15  purported class action against Tinder, Inc. in California state court.  (*See* RJN, Ex. 2
16  [Complaint in *Candelore v. Tinder, Inc.*, Superior Court of California, County of
17  Los Angeles, Case No. BC583162].)  Like Plaintiff, Candelore claims that Tinder
18  violated the Unruh Act by charging a higher fee to users over 30 for Tinder Plus.
19  (*Id.,* ¶¶ 1-2.)  And as in *Kim*, the putative class in *Candelore* consists of California
20  consumers who subscribed to Tinder Plus at the higher fee for older users.  (*Id.,* ¶
21  23.)  Thus, this threshold factor is met, and the remaining *Colorado River* factors
22  demonstrate that a stay is warranted.

23              1.    **The Desire to Avoid Piecemeal Litigation**

24        "Piecemeal litigation occurs when different tribunals consider the same issue,
25  thereby duplicating efforts and possibly reaching different results." *American Int'l*
26  *Underwriters, (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th
27  Cir. 1988).  In order to favor a stay, "the case must raise a special concern about
28  piecemeal litigation, which can be remedied by staying or dismissing the federal

1   proceeding [and which] the court could [not] have avoided by other means." *R.R.*
2   *Street & Co. v. Transport Ins. Co., 656 F.3d 966, 979 (9th Cir. 2011)* (internal
3   quotation marks and citation omitted).

4       Here, both courts would need to review the same facts and determine the
5   same issues in order to resolve their respective cases.  Staying *Kim* until *Candelore*
6   is resolved would therefore avoid duplicative and potentially divergent
7   determinations on identical issues in parallel proceedings.  This factor strongly
8   favors a stay.

9               2.      **The Order in Which the Forums Obtained Jurisdiction**

10      Next, the court "consider[s] not only the order [in which the forums gained
11  jurisdiction], but also the relative progress of the state and federal proceedings."
12  *Montanore, 867 F.3d at 1168.*  *Candelore* has been pending for three years and has
13  undergone significant motion and appellate practice.  (RJN, Ex. 3.)  On the other
14  hand, due to the appellate proceedings, there has been no discovery.  On balance,
15  this factor weighs in favor of a stay, but not heavily in favor, due to the much
16  longer pendency of *Candelore*.

17              3.      **Whether Federal or State Law Governs the Claim**

18      This factor favors a stay where there are state-law questions and "the state
19  law questions are themselves complex and difficult issues better resolved by a state
20  court . . . ."  *Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 844 (9th Cir.*
21  *2017).*  Both cases concern whether Tinder's age-based pricing violates the Unruh
22  Act and what standard applies for making that determination.  These issues depend
23  entirely on the application of a California statute that has received conflicting
24  judicial interpretations, and thus this factor weighs heavily in favor of a stay.

25              4.      **Whether the State Court Proceedings Can Adequately**
26                      **Protect the Rights of the Federal Litigants**

27      "When it is clear that the state court has authority to address the rights and
28  remedies at issue, this factor may weigh in favor of a stay." *Montanore, 867 F.3d*

1    at 1169.  The state court in *Candelore* clearly has authority to fully address the

2    Unruh Act claim, and therefore this factor weighs heavily in favor of a stay.

3                    5.        **The Desire to Avoid Forum Shopping**

4         Next, the Court considers whether a plaintiff has engaged in forum shopping.

5    The fact that this case was filed in this Court even though a substantially identical

6    case was already pending in state court—a case in which the named plaintiff here

7    already is a member of the putative class—suggests that the filing of this case is the

8    result of forum shopping.  *See Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d at

9    1022 ("This Court will not encourage forum shopping by allowing a substantially

10   similar federal action to proceed.").  Although there may be no reason to "assume

11   an insidious motive," this factor nonetheless militates in favor of a stay.  *See Torres*

12   *v. Carescope, LLC*, 2016 WL 2743479, at *4 (E.D. Cal. May 11, 2016).

13                   6.        **Whether the State Court Proceedings Will Resolve All Issues**
                               **Before the Federal Court**
14

15        The final factor in the *Colorado River* analysis is "whether the state court

16   proceeding sufficiently parallels the federal proceeding in order to ensure

17   comprehensive disposition of litigation."  *Montanore*, 867 F.3d at 1170 (internal

18   quotation marks omitted).  This factor is satisfied so long as "the proceedings are

19   'substantially similar'"—"exact parallelism" is not necessary.  *Id.* (quoting *Nakash*

20   *v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)).  The Ninth Circuit has held that

21   suits were "sufficiently parallel because they concerned the same relevant conduct

22   and named the same pertinent parties."  *Id.* (citing *Nakash*, 882 F.2d at 1416-17).

23        Although exact parallelism is not required, it exists here nonetheless.  Both

24   cases assert the same state statutory claim for age discrimination on behalf of the

25   same putative class.  (*Compare* Compl., ¶ 32 *with* RJN, Ex. 2, ¶ 28.)  The only

26   difference between the two cases is the named plaintiff, but that is a distinction

27   without a difference—Plaintiff here would be a member of the *Candelore* class and

28   vice versa (subject to any obligation to arbitrate the dispute instead).  *See Ross*, 542

1   F. Supp. 2d at 1022.  Resolution of *Candelore* would comprehensively dispose of

2   this case.

3   **V.      CONCLUSION**

4          Therefore, the Court stays this action and orders that Plaintiff pursue her

5   claims, if at all, in arbitration.  [The Court stays this action pursuant to its discretion

6   under *Colorado River.*]

7
8   IT IS SO ORDERED.

9
10  Dated:  July _____, 2018        _____

                                    Honorable John F. Walter
11                                  United States District Court Judge

12
13  Submitted by:

14  MANATT, PHELPS & PHILLIPS, LLP
    ROBERT H. PLATT
    DONALD R. BROWN
15  ALEXANDRA N. HILL
    11355 W. Olympic Blvd.
16  Los Angeles, CA 90064-1614
    Telephone: (310) 312-4000
17  Facsimile:  (310) 312-4224

18  MANATT, PHELPS & PHILLIPS, LLP
    CHRISTOPHER A. RHEINHEIMER
19  One Embarcadero Center, 30th Fl.
    San Francisco, CA 94111
20  Telephone:  (415) 291-7400
    Facsimile:  (415) 291-7474

21

22  By:   /s/ Robert H. Platt
            Attorneys for *Defendants*
23          TINDER, INC., MATCH GROUP, LLC, MATCH GROUP, INC.

24

25

26

27

28