John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12450 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
john@kristensenlaw.com
david@kristensenlaw.com
christina@kristensenlaw.com

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (216) 220-6496
Facsimile: (866) 633-0028
tfriedman@attorneysforconsumers.com
abacon@attorneysforconsumers.com

*Attorneys for Plaintiff and all others similarly situated*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA KIM, individually on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them, <br><br> Defendants. | Case No.: 2-18-cv-03093 <br><br> **PLAINTIFF LISA KIM'S NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** <br><br> Date:      February 25, 2019 <br> Time:      1:30 p.m. <br> Courtroom:  7A <br> Hon. John F. Walter |

1    **TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR**

2    **ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on February 25, 2019, at 1:30 p.m., in

4    Department 7A of the United States District Court for the Central District of

5    California, located at 350 West First Street, Los Angeles, California 90012,

6    plaintiff Lisa Kim ("Plaintiff"), for herself and other similarly situated, will move

7    this Court for an order granting preliminary approval of the class action settlement

8    and certification of the settlement class as detailed in Plaintiff's memorandum of

9    points and authorities.

10        This Motion is based upon this Notice, the accompanying Memorandum of

11    Points and Authorities, the declaration and exhibits thereto, the Complaint, all

12    other pleadings and papers on file in this action, and upon such other evidence and

13    arguments as may be presented at the hearing on this matter.

14

15      Dated:  January 20, 2019                    Respectfully submitted,

16                               By:

17                                  */s/ Todd M. Friedman*

18                                  Todd M. Friedman (SBN 216752)

19                                  Adrian R. Bacon (SBN 280332)
       **LAW OFFICES OF TODD M. FRIEDMAN,**
20    **P.C**.

21                                  John P. Kristensen (SBN 224132)

22                                  David L. Weisberg (SBN 211675)

23                                  Christina M. Le (SBN 237697)
       **KRISTENSEN WEISBERG, LLP**
24

25                                  ***Attorneys for Plaintiff and all other***
       ***similarly situated.***
26

27

28

1  ## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

2      Plaintiff's counsel certifies that prior to filing the instant motion, the parties,

3  through counsel, met and conferred pertaining to the subject matter of the instant

4  motion.  Plaintiff filed a joint notice of compliance.  See Dkt. No. 51.  Defendants

5  do not oppose this motion.

6

7      Dated:  January 20, 2019          Respectfully submitted,

8

9                           By:  */s/ Todd M. Friedman*

10                               Todd M. Friedman (SBN 216752)

11                               Adrian R. Bacon (SBN 280332)

12                               **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

13

14                               John P. Kristensen (SBN 224132)

15                               David L. Weisberg (SBN 211675)
                                 Christina M. Le (SBN 237697)

16                               **KRISTENSEN WEISBERG, LLP**

17                               ***Attorneys for Plaintiff and all others***

18                               ***similarly situated.***

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS................................................................. 4

    A.    Factual Background .............................................................. 4

    B.    Proceedings to Date ............................................................. 5

III.    THE SETTLEMENT ...................................................................... 6

    A.  The Settlement Class. .............................................................. 6

B.  Settlement Benefits……………………………………………..7

    C.  Scope of Release....................................................................... 8

D. Opportunity to Opt Out and Object…………………………………………..8

    E.   Class Representatives' Application for Incentive Awards. ................... 9

    F. Class Counsel's Application for Fees, Costs, and Expenses. ................. 9

IV.    ARGUMENT ................................................................................ 10

    A.    Standard for Preliminary Approval of Class Action Settlement. .... 10

        1.    Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case. .................... 12

        2.    Defendants' Agreement to Provide a Universal Participation Benefit, Along with Additional Cash/Cash Equivalent Payments to Class Members and Injunctive Relief, Provides a Fair and Substantial Benefit to the Class…………………………………………………...13

        3.    The Settlement Was Reached As the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of the Mediator. ................................... 15

        4.    Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class................... 16

    B.    The Court Should Preliminarily Certify the Class for Purposes of Settlement. ................................................................. 16

        1.    The Proposed Class Is Numerous. ........................................ 16

        2.    The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact Exist........................... 17

        3.    The Typicality Requirement Is Met. ..................................... 17

4.   The Adequacy Requirement Is Satisfied. .............................. 18

5.   Common Questions Predominate, Sufficient to Certify a
     Class for Settlement Purposes Only. ................................... 18

6.   Class Treatment for Settlement Purposes is Superior to
     Individual Resolutions. ......................................................... 19

C.   The Proposed Method of Class Notice Is Appropriate. ................... 20

D.   The Court Should Provisionally Appoint the Class
     Representative and Appoint Class Counsel. .................................... 22

E.   The Court Should Appoint Epiq as the Settlement
     Administrator. .................................................................................... 23

F.   A Final Approval Hearing Should Be Scheduled. ........................... 23

V.   CONCLUSION ............................................................................................. 24

TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997) ...........................20

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ........................12

*Briggs v. United States*, Case No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) .....................................................................................14

*Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014) ...............................15

*Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993)22

*Culinary/Bartenders Trust Fund*, 244 F.3d at 1163 .............................................19

*Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018)...........................6

*Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) .............................14

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ...........................14

*Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998) ....................................................20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).11, 12, 17, 19, 20

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ...................................................................................................................17

*Hopson v. Hanesbrands Inc.*, Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009).....................................................................14

*In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013)..14

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ...................................................................................................................15

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000)...............15

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) .....15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)...................................................................................................10

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ..........................................................................................................16, 18

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988).......................................12

*Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) .................................14

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).......23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ............12

*Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) ......................................................................21

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)..........................................................19

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) ..............22

*McGill v. Citibank, N.A*, 2 Cal.5th 945 (2017)........................................................5

*Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) .....................................14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ........20

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ............................14

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)..........................................................................................................15

*O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) ...............13

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) .10, 11

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).................................................................11

*Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) .................................................21

*Shames v. Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL 5392159 at *13 (S.D. Cal. Nov. 5, 2012)....................................................................14

*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) .........................................20

*Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)....................................18

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005)..20

*Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).........................................................................................................10

*Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ...............19

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) .......................18

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971) ...............11

*Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001) ...................19

**Statutes**

4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*")................................................10

*Cal. Bus. & Prof. Code* §§ 17200, et seq. .............................................5, 15, 17, 19

*Cal. Civ. Code* §§ 51, et seq. ...........................................................4, 5, 15, 17, 19

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, ...................................................................................10, 12

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) .......................................11

**Rules**

Fed. R. Civ. Proc. 23..........................................................................................10, 16

Fed. R. Civ. Proc. 23 (a) .................................................................................16, 18

Fed. R. Civ. Proc. 23(b)(3) ...........................................................4, 16, 18, 19, 20

Fed. R. Civ. Proc. 23(c) ......................................................................................20, 21

Fed. R. Civ. Proc. 23(e) ......................................................................................10, 20

## MEMORANDUM OF POINTS & AUTHORITIES

**I.    INTRODUCTION**

Plaintiff Lisa Kim ("Plaintiff"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits this motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed settlement class.  Defendants Tinder, Inc.,[1] Match Group, LLC, and Match Group, Inc., ("Defendants") do not oppose Plaintiff's motion (Plaintiff and Defendants shall collectively be referred to as the "Parties").  The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement").[2]  *See Declaration of Todd M. Friedman* (*"Friedman Decl."*), Ex A.

The Settlement resulted from the Parties' participation in an all-day mediation session before the Honorable Louis M. Meisinger (Ret.) of Signature Resolution and subsequent settlement discussions.  The Settlement provides for a substantial financial benefit to each Settlement Class Member ("Member").  The Settlement Class consists of:

> *Every California subscriber to Tinder Plus or Tinder Gold during the Class Period, who at the time of subscribing was at least 29 years old and was charged a higher rate than younger subscribers.*[3]

The Settlement reached with the guidance of Judge Meisinger was a hybrid settlement that provides an automatic universal benefit component to all Members, and then an additional option to receive cash or other benefits for those Members

---

[1]  Pursuant to a merger in 2017, Tinder, Inc.'s assets and liabilities were acquired by Match Group, LLC.

[2] Unless otherwise defined herein, capitalized terms used in this memorandum shall have the same meaning ascribed to them in the Agreement.

[3]  The Class Period is from March 2, 2015 through the date that the Court grants preliminary approval of the Settlement.

1    who also provide a claim form confirming certain information.

2         The Settlement requires email Class Notice to each Member explaining key

3    terms of the Settlement, including benefits under the Settlement and how to opt out

4    of or object to the Settlement.  See Agreement Ex 2.  The benefits for Members

5    who do not opt out of the Settlement include the following:  Each Member who as

6    of the Effective Date of the Settlement still has, or has reactivated, his or her Tinder

7    account will *automatically* receive 50 Super Likes (equivalent to $50 in value)

8    regardless of whether he or she submits a claim form.  See Agreement § 3.2.  Also,

9    each Member may submit a claim form to choose and obtain one of the following

10    additional benefits: 1) $25.00 in cash; 2) 25 additional Super Likes (if the Member

11    has a Tinder account); or 3) a one-month subscription to Tinder Plus or Tinder

12    Gold, depending on which of those services the Member had previously purchased.

13    (The third option will not be available to any Members who are already subscribers

14    as of the Effective Date.)  Agreement § 3.3.  The proposed claim form requires

15    each Member to provide contact and Tinder account information, an authorization

16    for Defendants to obtain from Apple or Google, as applicable, verification that the

17    Member had purchased a subscription to Tinder Plus or Tinder Gold and had not

18    received a refund or chargeback, and confirmation under penalty of perjury that

19    the Member resided in California when he or she purchased the subscription.

20    Agreement § 5.1 and Ex 2.

21         The Settlement also provides that after the Effective Date, Defendants will

22    no longer charge different prices based on age for new Tinder Plus or Tinder Gold

23    subscriptions purchased in California (but Defendants reserve the right to offer a

24    youth discount to subscribers age 21 or younger).  Agreement § 3.3.  The

25    Settlement allows for an exception in the event of subsequent legislation in

26    California that specifically addresses age-based pricing and, reasonably

27    interpreted, would permit age-based pricing using other age cut-offs, or an

28    appellate opinion by any court in California to the same effect, or legislation that

expresses a public policy in favor of or benefitting a particular age group. In such event, Defendants may implement age-based pricing consistent with such legislation or case law. *Id*.

With an estimated Class size of 230,000 Members, the Settlement has an approximate value of $17.25 million in monetary relief. Friedman Decl. ¶¶ 22, 32-33. Of that total, $11.5 million is guaranteed under the universal participation component (not requiring submission of claims), and the remaining $5.75 million in potential cash or cash-equivalent benefits is available to every Member who submits a claim. *Id*. In addition to the monetary benefits achieved, Class Counsel estimates that the injunctive relief negotiated on behalf of the Class and the public carries a value of at least $5.75 million. *Id*. at ¶ 34. Thus, the total settlement value of $23 million. *Id*. at ¶ 35. Furthermore, Defendants have agreed to pay the costs of Notice and Settlement administration, and, subject to Court approval, a proposed Attorneys' Fee Award in the amount of $1,200,000.00 to Class Counsel and a reasonable Cost Reimbursement. Agreement at §§ 5.4, 7.1-7.4. Payment of these fees and costs is wholly separate from any payments or benefits to be provided to Class Members as part of the Settlement. *Id*.

While Plaintiff is confident of a favorable determination on the merits, she has determined that the Settlement provides significant benefits to the Class and is in the best interests of the Class. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Similarly, as evidenced by the Agreement, Defendants believe that they have substantial and meritorious defenses to Plaintiff's claims, but have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiff believes that the Settlement satisfies all of the criteria for preliminary approval. Accordingly, Plaintiff moves this Court for an order

preliminarily approving the Settlement, provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for settlement purposes, directing dissemination of Class Notice, and scheduling a Final Approval Hearing.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Tinder is a smartphone-based dating application that is used by consumers throughout the world, including California. The core functionality of the app enables users to view profiles of other users in the same geographic locale and to either indicate an interest in (i.e., to "like") another user or, alternatively, indicate a lack of interest. If two users indicate an interest in each other's profile, they can then communicate with each other through the app. The app also allows a user to indicate a heightened degree of interest in another user through a feature known as a "Super Like."

The app may be downloaded and used for free, but certain additional or premium features can only be accessed by purchasing a subscription to Tinder Plus or Tinder Gold. Such features include, among other things, unlimited likes (whereas the free version has a daily limit), no paid advertisements, the ability to undo dislikes, the ability to view profiles in other locales, and to ability to exert more control over other variables involved in using the app. Also, subscribers receive more free Super Likes than non-subscribers, but any user of the app may purchase additional Super Likes for a typical price of 99 cents each.

Plaintiff, a female user over the age of 29, alleges that when she and Class Members purchased Tinder premium services (Plus or Gold), Defendants discriminated against such consumers based on age, by charging more money for the same service for consumers age 29 and older. Plaintiff claims that Defendants' widespread and uniform conduct is in direct violation of the Unruh Civil Rights Act, *Cal. Civ. Code* §§ 51, et seq. ("Unruh Act"), which generally outlaws age

discrimination by businesses operating in California. In addition, Plaintiff alleges that Defendants' pricing scheme violates the Unfair Competition Law, *Cal. Bus. & Prof. Code* §§ 17200, et seq. ("UCL").  Plaintiff sought three categories of relief: 1) monetary relief under the Unruh Act in the form of statutory penalties; 2) restitutionary relief, i.e. a refund of the unlawful premiums charged to users age 29 or older ($10 per month per user); and 3) public injunctive relief putting a halt to Defendants' unlawful age-based price discrimination scheme.   Defendants vigorously dispute Plaintiff's claims, dispute that Plaintiff will prevail on her current appeal of the Court's Order granting Defendants' motion to compel arbitration, and deny all charges of wrongdoing or liability asserted against them in the Litigation.

### B.   Proceedings to Date

On April 12, 2018, Plaintiff filed her class action lawsuit against Defendants, alleging that Defendants violated the Unruh Act. Defendants responded on June 11, 2018 by filing filed a Motion to Compel Arbitration or Stay Under the Colorado Abstention Doctrine. On June 22, 2018, Plaintiff filed her First Amended Complaint, adding the UCL cause of action for public injunctive relief. In their Motion, Defendants claimed that Plaintiff had entered into an arbitration agreement based on her alleged assent to the arbitration provision in Tinder app's Term of Use through the use of "sign-up wrap" consent in order to access the app. Defendants' Motion to Compel Arbitration was granted on July 5, 2018, and the Court compelled Plaintiff's claims to arbitration.

On July 16, 2018, Plaintiff filed her appeal of the Court's decision on the Motion, based on her position that the Court did not appropriately consider California Supreme Court precedent interpreting substantive California law in *McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017), which states that claims for public injunctive relief, such as the one brought in Plaintiff's case under the UCL, cannot be compelled to arbitration.   In addition, Plaintiff would argue that the Court

disregarded recent relevant appellate case law, *Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018), which bore directly on whether there was appropriate assent by Plaintiff and the Class Members to the Tinder app's Term of Use.[4]

A mediation was scheduled for November 29, 2018, and the Parties stipulated to continue the initial briefing deadlines in the appeal.  The Parties attended a mediation with Judge Meisinger on November 29, 2018.  The Parties did not resolve the case at the mediation, but engaged in subsequent discussions with Judge Meisinger. With his guidance, this Settlement was reached on December 1, 2018.  *See Friedman Decl.*, ¶¶ 12-14.  As set forth below, Plaintiff respectfully requests that the Court approve the Settlement.

## III.   THE SETTLEMENT

### A.  The Settlement Class.

The "Settlement Class" is defined in the Agreement as follows:

> *"Every California subscriber to Tinder Plus or Tinder Gold during the Class Period who at the time of subscribing was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class."* (Agreement § 2.21.)

The Class Period is from March 2, 2015 through the date that the Court grants preliminary approval of the Settlement.  (*Id.* § 2.6.)  Defendants maintain email addresses for the vast majority of users of the app, and based on data provided by Defendants and their counsel, the Class contains approximately 230,000 Members. *See Friedman Decl.*, ¶¶ 22-23.

///

---

[4] The *Cullinane* opinion was rendered the same day Plaintiff's opposition to Defendants' Motion was due, leaving Plaintiff no time to incorporate arguments and facts related to the on-point case into her opposition. The Court did not consider Plaintiff's Notice of the new case, and denied Plaintiff's Ex Parte Application to provide supplemental briefing as a result of the new opinion.

**B. <u>Settlement Benefits.</u>**

Under the Settlement, Defendants agree to a multifaceted Settlement structure, which includes a universal participation component (automatic benefits to all Class Members); an additional cash or cash-equivalent payout to Class Members who submit timely valid claims; and an agreement to substantially halt Defendants' allegedly discriminatory practices going forward. Attorneys' fees, costs, administration expenses, and the Incentive Payment to Plaintiff will all be separately paid by Defendants. These benefits are significant, tangible and offer fair remuneration for the Class.

Pursuant to the Agreement, Class Notice will be sent via email to the approximately 230,000 persons in the Settlement Class. (Agreement § 1.4, 4.3-4.4; Ex A-2). The Class Notice will explain that if the Member has a Tinder account, or has reactivated a Tinder account associated with the same email address that pertained to his or her previous account, the Member will automatically receive 50 Super Likes (equivalent to $50 in value). *Id.* This benefit will be issued to each and every Class Member irrespective of whether the Member submits a claim. In addition, each Member may submit a claim form to obtain one of the following benefits: (1) $25.00 in cash; (2) 25 Super Likes (but only if the Member has a Tinder account); or (3) a one-month subscription of Tinder Plus or Tinder Gold, depending on which of those services the Member had previously purchased (but only if the Member does not already have a subscription). (Agreement § 3.2-3.3). In addition to foregoing monetary relief, Defendants have agreed to alter their practices and largely halt their price differentiation practices in California as they pertain to age. *Id.* at ¶ 3.4. Plaintiff estimates this revision to pricing discrimination is worth at least $5.75 million to the Class. Friedman Decl. ¶ 34.

Separate and apart from these Class benefits, Defendants have agreed to retain a Settlement Administrator and to pay for any and all costs associated with administering the Settlement, including Class and CAFA Notice, handling of

1  claims and the distribution of monetary payments to Members who choose that
2  option, and developing and maintaining the Settlement Website. (Agreement §§
3  4.3-4.5, 5.4).  Defendants have also agreed to pay the proposed $5,000.00 Incentive
4  Payment to the Plaintiff (Agreement § 7.2) and the proposed Attorneys' Fee Award
5  in the amount of $1,200,000.00 plus reasonable Cost Reimbursement to Class
6  Counsel, pending approval by the Court.  (Agreement § 7.1).  CAFA notice will
7  provided within 10 days after the filing of this motion, and Class Notice will be
8  provided within 30 days after Defendants provide the Settlement Administrator
9  with the requisite Class information (which Defendants will provide within seven
10 days after Preliminary Approval if feasible).[5]  (Agreement § 4.9).  Before Class
11 Notice is provided, the Settlement Administrator will develop the Settlement
12 Website, which shall contain relevant documents pertaining to the Settlement
13 including the Settlement Agreement, the Claim Form, the Class Notice, and the
14 Preliminary Approval Order.  (Agreement §§ 4.5, 5.2).

15       **C.  <u>Scope of Release.</u>**

16       The Agreement provides that Members who do not request exclusion from
17 the Settlement will release any and all claims, known or unknown, against the
18 Releasees based in any manner on the allegation that subscribers to Tinder Plus or
19 Tinder Gold were charged a higher price depending on their age.  (Agreement §
20 8.1).

21       **D.  <u>Opportunity to Opt Out and Object.</u>**

22       Under the terms of the proposed Settlement, Members will have the right to
23 opt out of the Settlement or object to its terms.  A Member who wishes to opt out
24 of the Settlement must, no later than 30 days after the Class Notice Date, mail an
25

26 [5] Email is the best notice practicable because Defendants generally maintain email
27 address data for Class Members but not physical addresses or other information
   (such as landline phone numbers) that would permit Class Counsel to efficiently
28 conduct a reverse lookup and send mail notice.

opt-out request to counsel for the Parties.  (Agreement § 4.8).  A Member who does not opt out and who wishes to object to the Settlement may do so by filing with the Court and mailing to counsel for the Parties, no later than 30 days after the Class Notice Date, a notice of objection and/or request to be heard at the Final Approval Hearing.  (Agreement § 4.7).  Any such notice must include the case name and number, the Member's name and contact information and the email address or phone number associated with the Member's Tinder account, a statement of all grounds and legal support for the objection and copies of any supporting documentation, a list of other cases in which the Member has objected to a class action settlement, and an affirmation under penalty of perjury that the Member had purchased a subscription to Tinder Plus or Tinder Gold during the Class Period at a time when the Member was at least 29 years old and resided in California.  *Id.*

### E.   Class Representatives' Application for Incentive Awards.

The Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000.00 to be distributed to the Class Representative, subject to Court approval.  Defendants have agreed not to oppose this request. (Agreement § 7.2).

### F. Class Counsel's Application for Fees, Costs, and Expenses.

The Settlement contemplates that Class Counsel may apply to the Court for an award of attorneys' fees in the amount of $1,200,000.00 (plus reimbursement of costs), representing 5% of the total estimated value of the Settlement (including the value of the injunctive component), which provides significant value to the Class.  Defendants have agreed not to oppose an application by Class Counsel for an award of attorneys' fees and costs, as long as it does not exceed this stated amount.  (Agreement § 7.1).

///

///

///

1     **IV.**    <u>**ARGUMENT**</u>

2        **A.**    <u>**Standard for Preliminary Approval of Class Action Settlement.**</u>

3        A class action may not be dismissed, compromised or settled without the

4 approval of the court. Fed. R. Civ. Proc. 23(e). Judicial proceedings under Rule 23

5 have led to a defined procedure and specific criteria for settlement approval in class

6 action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed.

7 Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval,

8 dissemination of notice to class members, and a fairness hearing. *Manual*,

9 §§ 21.632, 21.633, 21.634. The purpose of the Court's preliminary evaluation of

10 the settlement is to determine whether it is within the "range of reasonableness,"

11 and thus whether notice to the class of the terms and conditions of the settlement,

12 and the scheduling of a formal fairness hearing, are worthwhile. *See* 4 Herbert B.

13 Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and

14 Supp. 2004) ("*Newberg*"). The Court is not required to undertake an in-depth

15 consideration of the relevant factors for final approval. Instead, the "judge must

16 make a preliminary determination on the fairness, reasonableness, and adequacy

17 of the settlement terms and must direct the preparation of notice of the certification,

18 proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th

19 ed. 2004).

20        As a matter of public policy, settlement is a strongly favored method for

21 resolving disputes. *See Utility Reform Project v. Bonneville Power Admin*., 869

22 F.2d 437, 443 (9th Cir. 1989). This is especially true in class actions such as this.

23 *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982). As

24 a result, courts should exercise their discretion to approve settlements "in

25 recognition of the policy encouraging settlement of disputed claims." *In re*

26 *Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

27 To make the preliminary fairness determination, courts may consider several

28 relevant factors, including "the strength of the plaintiff's case; the risk, expense,

complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ."  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*").   Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id.* at 1027.

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)  Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688 F.2d at 625.   Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective class for their acceptance or rejection."  *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

Preliminary approval of the settlement should be granted if, as here, there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms

to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004). Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). (Recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026. This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted). Based on these standards, Plaintiff respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

### 1. Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case.

Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation. While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Litigation. *See Friedman Decl*, ¶¶ 47-50. If the Litigation were to continue, the primary initial challenge for Plaintiff would be overcoming the pending appeal. Defendants represented that over 95% of the Class Members entered into arbitration agreements such as the one entered into by Plaintiff. *Id.* at ¶ 22. The Ninth Circuit has recently held that such agreements can be a bar to class certification under the right circumstances. *See O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018). Even if

Plaintiff won her appeal, Defendants would likely challenge any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Preliminary Approval. *See Friedman Decl*, ¶¶ 47-50; Kristensen Decl. ¶¶ 3-5.

Similarly, Defendants believe that they have strong and meritorious defenses not only in the Litigation as a whole, as well as on the appeal, but also as to class certification and the amount of damages sought. However, Defendants recognize that if a class were certified, there is some risk of a damages award substantially higher than the value of the Settlement. The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not recover. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

> **2.    Defendants' Agreement to Provide a Universal Participation Benefit, Along With Additional Cash/Cash Equivalent Payments to Class Members and Injunctive Relief, Provides a Fair and Substantial Benefit to the Class.**

As set forth above, Defendants have agreed to provide substantial benefits to the Class Members, of which more than $17 million is guaranteed to go towards the benefit of the Class (partially in the form of approximately $11.5 million in Super Likes, and partially in the form of the estimated $5.75 million in injunctive benefit), even if no Class Members submit claims. In addition, up to $5.75 million in cash or cash equivalents will be paid out to the Class Members who make claims ($25 cash each), after being sent email notice to the email address they used

1    recently for their Tinder account.  Defendants will separately pay for the cost of

2    notice, administration, the incentive award, attorneys' fees and costs of litigation.

3         As a result, it is anticipated that the vast majority of the Settlement will

4    provide direct and meaningful benefits to the Settlement Class.  *See Shames v.*

5    *Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL 5392159 at *13 (S.D.

6    Cal. Nov. 5, 2012) (settlement was fair where the parties "negotiated a settlement

7    that provide[d] direct payment to class members"); *Hopson v. Hanesbrands Inc.*,

8    Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009)

9    ("the benefits can be accurately traced because they are monetary payments

10   directly to Class Members"); *Briggs v. United States*, Case No. C 07-05760 WHA,

11   2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) (settlement agreement was fair where

12   it did not require class members to file claim forms).

13        This Settlement intentionally avoids providing significant benefits to a *cy*

14   *pres* recipient at the expense of the class.  *See Dennis v. Kellogg Co.*, 697 F.3d 858,

15   862-63 (9th Cir. 2012) (the amount of a *cy pres* award "must be examined with

16   great care to eliminate the possibility that it serves only the 'self-interests' of the

17   attorneys and the parties, and not the class"); *Lane v. Facebook, Inc.*, 709 F.3d 791,

18   793 (9th Cir. 2013) ("We require district judges to be reasonably certain that class

19   members will benefit before approving a cy pres settlement."); *In re EasySaver*

20   *Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013).[6]

21        The settlement award that each Settlement Class Member will receive is fair,

22   appropriate, and reasonable given the purposes of the Unruh Act and UCL and in

23   _____

24   [6] Courts favor direct payment to class members over *cy pres* distributions.  *See*
     *Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) *overruled on other grounds*
25   *by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (*cy pres* provision
     is a disfavored substitute for distribution of benefits directly to class members);
26   *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("[T]he cy pres
     doctrine—unbridled by a driving nexus between the plaintiff class and the cy pres
27   beneficiaries—poses many nascent dangers to the fairness of the distribution
28   process.").

light of the anticipated risk, expense, and uncertainty of continued litigation. Although the Unruh Act provides for statutory damages of $4,000.00 per violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to a percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of the strength of the claims");  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was small fraction of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). California Appellate Courts have upheld the reasonableness of Unruh Act class action settlements which provided for no monetary relief, but rather only injunctive relief.  *See Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014) (injunction only class settlement under Unruh Act upheld as fair and reasonable, however overturning district court order based solely on the fact that non-opt out provision violated due process).

Thus, the Settlement provides substantial benefit to the Class Members, as they will receive meaningful monetary recovery with no burden and no expense.

### 3.   The Settlement Was Reached As the Result of Arms-Length Negotiation, Without Collusion, With the Assistance of the Mediator.

The Settlement is the result of intensive arms'-length negotiation, including an all-day mediation session before the Hon. Louis Meisinger. The Parties also engaged in subsequent negotiations through Judge Meisinger by email.  With the

guidance of Judge Meisinger, and working independently of the Court, the Parties were able to reach a proposed resolution of this case.  Class Counsel are satisfied that the information provided about the number of Class Members is accurate.  The time and effort spent examining and investigating the claims militate in favor of preliminary approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### 4.    Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class.

Plaintiff is represented by counsel experienced in complex class action litigation.  Class Counsel has extensive experience in class actions, as well as particular expertise in class actions relating to consumer protection.  *See Friedman Decl.*, ¶¶ 52-59; Kristensen Decl. ¶¶ 6-18.  Class Counsel believes that the Settlement is fair, reasonable and adequate.  Their opinions should be given deference by The Court.

### B.    <u>The Court Should Preliminarily Certify the Class for Purposes of Settlement.</u>

Courts have long acknowledged the propriety of class certification for purposes of a class action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").  Certification of a class for settlement purposes requires a determination that certain requirements of Rule 23 are met.  *Id.*  As explained below, class certification for settlement purposes is appropriate here under Rule 23(a) and Rule 23(b)(3).

### 1.    The Proposed Class Is Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be impracticable.  "Impracticability

does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.'" *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Here, the Settlement Class consists of 230,000 Class Members who subscribed to Tinder Plus or Tinder Gold when they were at least 29 years old and paid a higher price than subscribers under the age of 29. Thus, the proposed Class is sufficiently numerous for purposes of certifying a settlement class.

### 2. The Commonality Requirement Is Satisfied, Because Common Questions of Law and Fact Exist.

The commonality requirement is met if there are questions of law and fact common to the class. *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."). Here, for purposes of settlement, the proposed Members' claims stem from the same factual circumstances, that Members age 29 or older who subscribed to Tinder Plus or Tinder Gold paid a higher price than those under the age of 29.

Plaintiff's claims also present questions of law that are common to all members of the Class for settlement purposes, including: (1) whether Defendants violated the Unruh Act; (2) whether Defendants willfully or knowingly violated the UCL; and (3) whether the Member is subject to the arbitration agreement in the Tinder Terms of Use. The Members all seek the same remedy. Under these circumstances, the commonality requirement is satisfied for purposes of certifying a settlement class. *See Hanlon,* 150 F. 3d at 1019-20.

### 3. The Typicality Requirement Is Met.

The typicality requirement is met if the claims of the named representatives are typical of those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. For purposes of settlement, Plaintiff's claims are typical of the class because they arise from the same factual basis – that Members age 29

1   or older who subscribed to Tinder Plus or Tinder Gold paid a higher price than

2   those under the age of 29.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D.

3   Cal. 1987).  The Class Representative claims that she was over the age of 29 when

4   she subscribed to Tinder Plus in California, paying a higher price for the service

5   than other Tinder subscribers under the age of 29.  Accordingly, the Class

6   Representative's claims are typical of those of the Settlement Class. Thus, the

7   typicality requirement is satisfied for purposes of certifying a settlement class.

8                    **4.      The Adequacy Requirement Is Satisfied.**

9        Rule 23(a)(4) is satisfied if "the representative parties will fairly and

10  adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court

11  must measure the adequacy of representation by two standards: "(1) Do the

12  representative plaintiffs and their counsel have any conflicts of interest with other

13  class members, and (2) will the representative plaintiffs and their counsel prosecute

14  the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D.

15  at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

16       Plaintiff and Class Counsel have no conflicts of interest with other Class

17  Members because, for purposes of the Settlement, Plaintiff's claims are typical of

18  those of other Settlement Class Members.  In addition, Plaintiff and Class Counsel

19  have been prosecuting this Litigation vigorously on behalf of the Class.  Plaintiff

20  and Class Members share the common goal of protecting and improving consumer

21  and privacy rights throughout California, and there is no conflict among them.

22  Class Counsel have extensive experience in business and corporate litigation,

23  including the prosecution of class actions seeking to protect privacy and consumer

24  rights.  Class Counsel is qualified to represent the interests of the Class.  Rule

25  23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

26              **5.      Common Questions Predominate, Sufficient to Certify a**
27                        **Class for Settlement Purposes Only.**

28       Class certification under Rule 23(b)(3) is appropriate where "questions of

1  law or fact common to class members predominate over any questions affecting
2  only individual members." Fed. R. Civ. P. 23(b)(3). The inquiry focuses on
3  whether the class is "sufficiently cohesive to warrant adjudication by
4  representation." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las*
5  *Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001). Central to this question
6  is "'the notion that the adjudication of common issues will help achieve judicial
7  economy.'" *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th
8  Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

9  Here the central inquiry for purposes of the proposed Settlement is whether
10 Defendants violated the Unruh Act and the UCL with their pricing scheme. "When
11 common questions present a significant aspect of the case and they can be resolved
12 for all members of the class in a single adjudication, there is clear justification for
13 handling the dispute on a representative rather than on an individual basis."
14 *Hanlon*, 150 F.3d at 1022.

15    **6.    Class Treatment for Settlement Purposes is Superior to**
16          **Individual Resolutions.**

17    To determine whether the superiority requirements of Rule 23(b)(3) are
18 satisfied, a court must compare a class action with alternative methods for
19 adjudicating the parties' claims. Lack of a viable alternative to a class action
20 necessarily means that a class action satisfies the superiority requirement. "[I]f a
21 comparable evaluation of other procedures reveals no other realistic possibilities,
22 [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders*
23 *Trust Fund*, 244 F.3d at 1163. *See also, Valentino v. Carter-Wallace*, 97 F.3d
24 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing
25 litigation if no realistic alternative exists").

26    Consideration of the factors listed in Rule 23(b)(3) supports the conclusion
27 that, for purposes of a settlement class, certification is appropriate. Ordinarily,
28 these factors are (A) the interest of members of the class in individually controlling

the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

However, when a court reviews a class action settlement, the fourth factor does not apply.  In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997).  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious . . . ." *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted).  Here, the Rule 23(b)(3)(A), (B) and (C) factors all favor class certification.

## C.  <u>The Proposed Method of Class Notice Is Appropriate.</u>

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must order the "best notice practicable" under the circumstances.  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

The Settlement Administrator shall disseminate or arrange for the dissemination of Class Notice sent via email is in a form materially consistent with Exhibit 2 to the Agreement.   The Class Notice here satisfies each of the requirements of Rule 23(c)(2)(B) above.  Further, direct notice has been held to be adequate notice to a Settlement Class.  *See Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) (approving notice plan where class members were sent direct notice informing them and directing them to a settlement website); *Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) (final approval of class settlement using direct notice and settlement website).

Defendants possess email addresses for users of the Tinder app in California as well as information that indicates whether subscribers to Tinder Plus or Tinder Gold were at least 29 years old and paid a higher price than younger subscribers. Defendants do not possess physical addresses or landline phone numbers for such individuals.  The Settlement Administrator will be able to send emails directly to each of the Class Members at the address that they recently used in conjunction with their Tinder account.

Further notice will be provided through the Settlement Website, which will be accessible by the time of the email Class Notice and will post, among other documents, the Agreement, a copy of the Notice (Ex. 2 to the Agreement), and the

Preliminary Approval Order.  Thus, through email Class Notice and the Settlement Website, Members will have ample notice of the Settlement and its terms, and they will have 30 days from the time of Class Notice to opt out of or object to the Settlement.  *Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate to flush out whatever objections might reasonably be related to the settlement) *citing Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (approving timing of notice which was mailed 26 days before the deadline for opting out of the settlement).  Further, the Settlement Website shall be maintained and accessible to Settlement Class Members during this time and through the conclusion of the settlement proceedings in this case.

This notice program was designed to meaningfully reach the largest number of Settlement Class Members possible by direct notice.  In this age, email is often the best way to reach people, and is certainly the most cost-effective manner of direct notice in the case at bar, given Defendants' data constraints.  Such direct notice is likely to be very successful in reaching the Settlement Class, and it is also the best practical notice under the circumstances since only email addresses are known.  By emailing the Class Notice and making the Class Notice available on the Settlement Website, the notice plan satisfies the requirements of due process and constitutes the best notice practicable under the circumstances.

The Settlement Administrator shall prepare and file a declaration prior to the Final Approval Hearing certifying that the notice program has been properly administered in accordance with this Agreement, this Court's Orders, and as described herein.

### D.   The Court Should Provisionally Appoint the Class Representative and Appoint Class Counsel.

"[T]wo criteria for determining the adequacy of representation have been recognized.  First, the named representatives must appear able to prosecute the

1  action vigorously through qualified counsel, and second, the representatives must

2  not have antagonistic or conflicting interests with the unnamed members of the

3  class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

4  The adequacy of representation requirement is met here.  For settlement purposes,

5  Class Counsel moves for Plaintiff Lisa Kim to be preliminarily appointed as the

6  Class Representative.  Class Counsel requests that the Law Offices of Todd M.

7  Friedman and Kristensen Weisberg, LLP preliminarily be appointed as Class

8  Counsel for purposes of the Settlement.   Plaintiff's counsel has extensive

9  experience sufficient to be appointed as Class Counsel.   Plaintiff Lisa Kim

10 understands the obligations of serving as a class representative, has adequately

11 represented the interests of the putative class, and has retained experienced

12 counsel.  Plaintiff has no antagonistic or conflicting interests with the Settlement

13 Class, and all members of the Settlement Class are eligible to receive the same

14 benefits.

15     **E.**    **The Court Should Appoint Epiq as the Settlement**

16         **Administrator.**

17     Plaintiff proposes that the Court appoint Epiq Class Action & Claims

18 Solutions, Inc. ("Epiq,") to serve as the Settlement Administrator.  Epiq specializes

19 in providing administrative services in class action litigation, and has extensive

20 experience in administering consumer protection and privacy class action

21 settlements.  Defendants do not oppose this request.

22     **F.**    **A Final Approval Hearing Should Be Scheduled.**

23     The last step in the settlement approval process is the formal fairness or Final

24 Approval Hearing, at which time the Court will hear all evidence and argument,

25 for and against, the proposed Settlement.  Plaintiff requests that the Court grant

26 preliminary approval of the Settlement and schedule a Final Approval Hearing to

27 be held not before 70 days after the date of entry of the Preliminary Approval

28 Order, in order to allow sufficient time for developing the Settlement Website and

1   providing Class Notice via email, and to allow Class Members time submit
2   exclusion requests and objections.

3   **V.      CONCLUSION**

4          For all the foregoing reasons, Plaintiff respectfully requests that the Court
5   enter an order preliminarily approving the Settlement and certifying a class for
6   settlement purposes.

7      Dated:  January 20, 2019            Respectfully submitted,

8

9                                  By:   */s/ Todd M. Friedman*
10

11                                       Todd M. Friedman (SBN 216752)
                                         Adrian R. Bacon (SBN 280332)
12                                       **LAW OFFICES OF TODD M. FRIEDMAN,
                                         P.C.**
13

14                                       John P. Kristensen (SBN 224132)
                                         David L. Weisberg (SBN 211675)
15                                       Christina M. Le (SBN 237697)
16                                       **KRISTENSEN WEISBERG, LLP**

17                                       ***Attorneys for Plaintiff and all others
18                                       similarly situated.***

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business Address is 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367.

On January 20, 2019, I served the following document(s) described as:
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**, on all interested parties in this action by placing:

[X]    a true copy
[  ]    the original thereof enclosed in sealed envelope(s) addressed as follows:

Alexandra Hill
ahill@manatt.com
Donald R. Brown
dbrown@manatt.com
Robert H. Platt
rplatt@manatt.com
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614

[X]    **BY CM/ECF:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the Court's CM/ECF system and the transmission was reported as complete, without error.

[X]    STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 20, 2019, at Woodland Hills, California.

By:   /s/ Todd M. Friedman

Todd M. Friedman