John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12450 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
john@kristensenlaw.com
david@kristensenlaw.com
christina@kristensenlaw.com

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (216) 220-6496
Facsimile: (866) 633-0028
tfriedman@attorneysforconsumers.com
abacon@attorneysforconsumers.com

*Attorneys for Plaintiff and all others similarly situated*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA KIM, individually on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No.: 2-18-cv-03093<br><br>**PLAINTIFF LISA KIM'S NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES COSTS AND INCENTIVE AWARDS**<br><br>Date:        June 17, 2019<br>Time:        1:30 p.m.<br>Courtroom:   7A<br>Hon. John F. Walter |

1    **TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR**

2    **ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that on June 17, 2019, at 1:30 p.m., in

4    Department 7A of the United States District Court for the Central District of

5    California, located at 350 West First Street, Los Angeles, California 90012,

6    plaintiff Lisa Kim ("Plaintiff"), for herself and other similarly situated, will move

7    this Court for an order granting preliminary approval of the class action settlement

8    and certification of the settlement class as detailed in Plaintiff's memorandum of

9    points and authorities.

10        This Motion is based upon this Notice, the accompanying Memorandum of

11    Points and Authorities, the declaration and exhibits thereto, the Complaint, all

12    other pleadings and papers on file in this action, and upon such other evidence and

13    arguments as may be presented at the hearing on this matter.

14

15      Dated:  April 22, 2019          Respectfully submitted,

16                        By:

17                            */s/ Todd M. Friedman*

18                            Todd M. Friedman (SBN 216752)

19                            Adrian R. Bacon (SBN 280332)
                        **LAW OFFICES OF TODD M. FRIEDMAN,**

20                            **P.C**.

21                            John P. Kristensen (SBN 224132)

22                            David L. Weisberg (SBN 211675)

23                            Christina M. Le (SBN 237697)
                        **KRISTENSEN WEISBERG, LLP**

24

25                            ***Attorneys for Plaintiff and all other***

26                            ***similarly situated.***

27

28

---

1

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3</u>

2       Plaintiff's counsel certifies that prior to filing the instant motion, the parties,

3   through counsel, met and conferred pertaining to the subject matter of the instant

4   motion. Specifically, Plaintiff's counsel Adrian R. Bacon and Defendant's counsel

5   Donald Brown met and conferred telephonically regarding the subject and content

6   of the Motion on April 19, 2019, in fulfillment of Local Rule 7-3.   Defendant

7   indicated that it would not oppose Plaintiff's Motion.

8

9    Dated:  April 22, 2019                 Respectfully submitted,

10

11                                  By:  */s/ Todd M. Friedman*

12                                       Todd M. Friedman (SBN 216752)
13                                       Adrian R. Bacon (SBN 280332)
                                         **LAW OFFICES OF TODD M. FRIEDMAN,**
14                                       **P.C**.

15
                                         John P. Kristensen (SBN 224132)
16                                       David L. Weisberg (SBN 211675)
17                                       Christina M. Le (SBN 237697)
                                         **KRISTENSEN WEISBERG, LLP**
18

19                                       ***Attorneys for Plaintiff and all others***
20                                       ***similarly situated.***

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)......17

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. Mar. 20, 2015)...................24

*Blum v. Stevenson*, 465 U.S. 886 (1994)............................................................................22

*Briggs v. United States*, Case No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) ....................................................................................................................13

*Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014)......................................................14

*Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018) ...............................................6

*Davis v. City and County of San Francisco*, 976 F.3d 1536 (9th Cir. 1992)............................22

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010).........................11, 13, 14

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ....................................................................................................................22

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 ....................................................................14

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997 (9th Cir. 2002)...............................19, 21

*Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007)..................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................3, 10, 11, 19

*Hartless v. Clorox Co.*, 273 F.R.D. 630 (S.D. Cal. 2011) .........................................................23

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................................13

*Hopson v. Hanesbrands Inc.*, Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009) .....................................................................................................13

*In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1998).............................................12

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) ....................................22

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).............................10

*In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013).......................14

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000)...............14

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...........................23

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) ..............................23

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000......................................14

*In re Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010)................................................10

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007).....................12, 13, 15, 17, 18

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007)..................................12

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. Feb. 27, 2015) ............24

*In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*,  295 F.R.D. 438 (C.D. Cal. Jan. 17, 2014) ...................................................24

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th  Cir. 1994)..............17

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)....................................19, 20

*Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) ......................................................14

*Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ...11

*McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017) ....................................................................5, 21

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J.  Sept. 14, 2009)..........................11

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970) .................................................23

*Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) ............................................................14

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ...................................................14

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ...........14

*O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) ......................................15

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)...................................................................................................................11

*POM Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 (C.D. Cal 2008) ...................23

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) ......11

*Serrano v. Unruh*, 32 Cal. 3d 621 (1982) ...............................................................................22

*Shames v. Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL 5392159 at *13 (S.D. Cal. Nov. 5, 2012).............................................................................................................13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..................................................................10

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).....................22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................12, 13, 15, 17, 18, 19

**Statutes**

*Cal. Bus. & Prof. Code* §§ 17200, et seq. ................................................5, 6, 14, 15, 16, 17, 22

*Cal. Civ. Code* §§ 51, et seq.................................................................................5, 14, 15, 16, 17

**Other Authorities**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2 McLaughlin on Class Actions (8th ed.) .................................................................11

Federal Judicial Center, Manual for Complex Litigation (4th Ed. 2004) ...................................13

Federal Judicial Center, Manual for Complex Litigation, § 27.71 ............................................13

**Rules**

Fed. R. Civ. P. 23 .........................................................................................2, 6, 10, 13

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**
**-iii-**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff moves the Court for an award of attorneys' fees, costs and incentive payment as part of this preliminarily approved class action settlement (see Dkt. No. 60 and 62) between plaintiff Lisa Kim ("Plaintiff") and defendants Tinder, Inc., Match Group, LLC and Match Group, Inc., (hereinafter referred to as "Defendants" or "Tinder").[1]   Defendant does not oppose this Motion.   The Settlement Agreement provides for a substantial financial benefit to the Class Members, of which there are an estimated 230,000.[2]   The estimated Settlement benefit to the Class is $23 million, which is comprised of three components: 1) $11.5 million in guaranteed Super Likes under the universal participation component (not requiring submission of claims), 2) $5.75 million in potential cash or cash-equivalent benefits is available to every Member who submits a claim, and 3) an injunction providing for public injunctive relief against Defendants on behalf of the Class and all members of the California public, which is estimated at a value to Class Members of at least $5.75 million. By any means this is a substantial settlement, insofar as it provides for recovery for a wide scope of consumers, who will receive meaningful relief, as well as an end to an allegedly unlawful practice. This robust Settlement on behalf of hundreds of thousands of consumers was achieved after hard-fought litigation, arm's length negotiations, and the careful and skilled efforts of Class Counsel.

The Settlement benefits that will be provided to Class Members will be completely and separately recoverably by all Class Members from the attorneys'

---

[1] Collectively referred to as the "Parties."

[2] Notice was provided to over 240,000 consumers' email addresses, based on geolocation data that suggested California residency (a requisite of Unruh Act and UCL standing).   A small percentage of these individuals might not be Class Members, but it was important to ensure that if anything, the Notice was slightly over-inclusive rather than risk being under-inclusive.

1    fees that are requested herein.  In deciding this Motion, the Court should give

2    special consideration to the following: 1) Class Counsel negotiated the fees in this

3    case completely separate and apart from any Class Member recovery, meaning that

4    the only part which would benefit from a reduction of the fees would be Defendant,

5    the one who is alleged to have violated the law and who has already agreed to the

6    reasonableness of the fees requested herein; 2) As the Court noted in its Order

7    Granting Preliminary Approval (Dkt. No. 60), the amount of attorney's fees sought

8    was negotiated only after the Class Members' portion of the settlement had been

9    negotiated fully, and with the oversight of one of the most respected neutral

10   mediators in Southern California, meaning there is an absence of evidence of

11   collusion (Dkt. No. 60 at Pg 12), and 3) the settlement benefits to Class Members

12   are meaningful and robust, which the Court already found to be fair and adequate

13   under the requirements of Rule 23(e) (Dkt. No. 60, and 62).

14        On March 1, 2019, the Court granted preliminary approval of the Settlement

15   and its terms enumerated above, observing, that the Settlement appeared

16   reasonable and disclosed no grounds to doubt its fairness.  Dkt. No. 60.  The Court

17   preliminarily approved the fairness of the anticipated fees, taking particular note

18   of the fact that fees were not negotiated or discussed at all between the parties until

19   the class recovery was fully negotiated in principle, and also due to the fact that

20   the fees requested were only approximately 5% of the Settlement Benefit to the

21   Class.  The Court noted that it would scrutinize the fee request at the final fairness

22   hearing.  Dkt. No. 60, Pg 12.

23        Federal Rules of Civil Procedure provide that "[i]n a certified class action,

24   the court may award reasonable attorneys' fees and nontaxable costs that are

25   authorized by law or by the parties agreement."  Fed. R. Civ. P. 23.  As noted by

26   Plaintiff's Motion for Preliminary Approval of Class Action Settlement and

27   Certification of Settlement Class, which was approved by this Court (Dkt. No. 60

28   and 62), the Settlement Agreement in this action resulted from extensive arm's

length negotiations, including a full-day mediation session before Hon. Judge Louis M. Meisinger (Ret.).  Friedman Decl ¶ 17.  The arm's length negotiations, especially those before Judge Meisinger, serve as "independent confirmation" of the reasonableness of the Settlement's terms including the attorneys' fees, costs, and incentive award sought by this Motion.  *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1029 (9th Cir. 1998).  Under these circumstances, the Court may give deference to the judgment of the parties regarding the reasonableness of the requested fees.

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $1,200,000 in attorneys' fees sought equates to approximately 5% of the estimated $23,000,000 in settlement benefit provided to the Class, the majority of which is not subject to the claims process.  This is but a small fraction of the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards.  Additionally, Class Counsel have incurred a combined total of 669.95 hours litigating this action for a combined lodestar of $411,237.75.  Notably, Class Counsel estimate that they will spend approximately another 100-150 hours working on the case including overseeing the administration of class settlement benefits, communicating with class members, , responding to any potential objectors, moving for final approval, preparing for and attending the final approval hearing, and ensuring the final distribution of settlement benefits are carried out in full.  Without taking into account these additional anticipated hours, the fee request currently represents a reasonable lodestar multiplier of 2.9, which serves as an independent cross check as to the reasonableness of the fee request.[3]

Through this fee brief, which is unopposed by Defendant, Plaintiff seeks Court approval of the agreed-upon costs and fees as follows: (1) attorneys' fees in

---

[3] The Lodestar multiplier is estimated by counsel to be 2.3 once administration is complete.

1   the amount of $1,200,000; (2) litigation costs in an amount of $12,137.51; and (3)

2   an incentive award of $5,000 to Plaintiff Lisa Kim.  As more thoroughly stated

3   herein and as detailed in the supporting declaration filed herewith, these sums are

4   fair and reasonable as they resulted from extensive arm's length negotiations and

5   are further supported by the percentage-of-the-fund and loadstar methodologies.

6   Friedman Decl. ¶¶ 17-61.

7   **II.    STATEMENT OF FACTS**

8         **A.    Factual Background**

9         Tinder is a smartphone-based dating application that is used by consumers

10   throughout the world, including California. The core functionality of the app

11   enables users to view profiles of other users in the same geographic locale and to

12   either indicate an interest in (i.e., to "like") another user or, alternatively, indicate

13   a lack of interest.  If two users indicate an interest in each other's profile, they can

14   then communicate with each other through the app.  The app also allows a user to

15   indicate a heightened degree of interest in another user through a feature known as

16   a "Super Like."  The app may be downloaded and used for free, but certain

17   additional or premium features can only be accessed by purchasing a subscription

18   to Tinder Plus or Tinder Gold.  Such features include, among other things,

19   unlimited likes (whereas the free version has a daily limit), no paid advertisements,

20   the ability to undo dislikes, the ability to view profiles in other locales, and to

21   ability to exert more control over other variables involved in using the app.  Also,

22   subscribers receive more free Super Likes than non-subscribers, but any user of the

23   app may purchase additional Super Likes for a typical price of 99 cents each.

24         Plaintiff, a female user over the age of 29, alleges that when she and Class

25   Members purchased Tinder premium services (Plus or Gold), Defendants

26   discriminated against such consumers based on age, by charging more money for

27   the same service for consumers age 29 and older.  Plaintiff claims that Defendants'

28   widespread and uniform conduct is in direct violation of the Unruh Civil Rights

Act, *Cal. Civ. Code* §§ 51, et seq. ("Unruh Act"), which generally outlaws age discrimination by businesses operating in California. In addition, Plaintiff alleges that Defendants' pricing scheme violates the Unfair Competition Law, *Cal. Bus. & Prof. Code* §§ 17200, et seq. ("UCL"). Plaintiff sought three categories of relief: 1) monetary relief under the Unruh Act in the form of statutory penalties; 2) restitutionary relief, i.e. a refund of the unlawful premiums charged to users age 29 or older ($10 per month per user); and 3) public injunctive relief putting a halt to Defendants' unlawful age-based price discrimination scheme. Defendants vigorously dispute Plaintiff's claims, dispute that Plaintiff will prevail on her appeal of the Court's Order granting Defendants' motion to compel arbitration, and deny all charges of wrongdoing or liability asserted against them in the Litigation.

### B.   Proceedings to Date

On April 12, 2018, Plaintiff filed her class action lawsuit against Defendants, alleging that Defendants violated the Unruh Act. Defendants responded on June 11, 2018 by filing filed a Motion to Compel Arbitration or Stay Under the Colorado Abstention Doctrine. On June 22, 2018, Plaintiff filed her First Amended Complaint, adding the UCL cause of action for public injunctive relief. In their Motion, Defendants claimed that Plaintiff had entered into an arbitration agreement based on her alleged assent to the arbitration provision in Tinder app's Term of Use through the use of "sign-up wrap" consent in order to access the app. Defendants' Motion to Compel Arbitration was granted on July 5, 2018, and the Court compelled Plaintiff's claims to arbitration.

On July 16, 2018, Plaintiff filed her appeal of the Court's decision on the Motion, based on her position that the Court did not appropriately consider California Supreme Court precedent interpreting substantive California law in *McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017), which states that claims for public injunctive relief, such as the one brought in Plaintiff's case under the UCL, cannot be compelled to arbitration. In addition, Plaintiff would argue that the Court

disregarded recent relevant appellate case law, *Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018), which bore directly on whether there was appropriate assent by Plaintiff and the Class Members to the Tinder app's Term of Use.[4]

A mediation was scheduled for November 29, 2018, and the Parties stipulated to continue the initial briefing deadlines in the appeal. The Parties attended a mediation with Judge Meisinger on November 29, 2018. The Parties did not resolve the case at the mediation, but engaged in subsequent discussions with Judge Meisinger. With his guidance, this Settlement was reached on December 1, 2018. On March 1, 2019, the Honorable Court granted Plaintiff's Motion for Preliminary Approval, finding that the requirements of Rule 23(e) were preliminarily satisfied. Dkt. No. 60. The Court requested that counsel file a revised proposed notice, and lodge a revised proposed order granting preliminary approval. Dkt. No. 60 Pg. 13. Counsel did so. Dkt. No. 61. The Court thereafter granted preliminary approval. Dkt. No. 62.

### C.   Class Notice Was Successfully Disseminated

On April 5, 2019, Epiq disseminated the Class Notice to Class Members via email, as was approved as the best notice practicable by This Honorable Court. The email campaign was highly successful at delivering targeted notice directly to the hands of Class Members, who almost certainly all used smartphone devices hooked to these same email accounts as part of their everyday life. Friedman Decl. ¶¶ 24-30. Epiq reported that approximately 85% of the Class Members received direct notice, much higher than the 70% threshold that the Rule 23 guidelines specify for due process purposes. Epic was able to send 240,592 emails to Class Members, with 203,741 of those emails delivered. Email addresses for all but 19

---

[4] The *Cullinane* opinion was rendered the same day Plaintiff's opposition to Defendants' Motion was due, leaving Plaintiff no time to incorporate arguments and facts related to the on-point case into her opposition. The Court did not consider Plaintiff's Notice of the new case, and denied Plaintiff's Ex Parte Application.

of the Class Members were located in Tinder's records. *Id.* Since that time, neither Plaintiffs' counsel nor Defense counsel have received any objections from absent Class Members, and only one individual has expressed a desire to opt out of the settlement as of the time of the filing of this Motion. *Id.*

## III.   THE SETTLEMENT

### A.   The Settlement Class.

The "Settlement Class" is defined in the Agreement as follows:

> *"Every California subscriber to Tinder Plus or Tinder Gold during the Class Period who at the time of subscribing was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class."* (Agreement § 2.21.)

The Class Period is from March 2, 2015 through the date that the Court grants preliminary approval of the Settlement. (*Id.* § 2.6.) Defendants maintain email addresses for the vast majority of users of the app, and based on data provided by Defendants and their counsel, the Class contains approximately 230,000 Members.

### B.   Settlement Benefits.

Under the Settlement, Defendants agree to a multifaceted Settlement structure, which includes a universal participation component (automatic benefits to all Class Members); an additional cash or cash-equivalent payout to Class Members who submit timely valid claims; and an agreement to substantially halt Defendants' allegedly discriminatory practices going forward. Attorneys' fees, costs, administration expenses, and the Incentive Payment to Plaintiff will all be separately paid by Defendants. These benefits are significant, tangible and offer fair remuneration for the Class.

Pursuant to the Agreement, Class Notice will be sent via email to the approximately 230,000 persons in the Settlement Class. (Agreement § 1.4, 4.3-4.4; Ex A-2). The Class Notice will explain that if the Member has a Tinder account, or has reactivated a Tinder account associated with the same email address that

pertained to his or her previous account, the Member will automatically receive 50 Super Likes (equivalent to $50 in value). *Id*. This benefit will be issued to each and every Class Member irrespective of whether the Member submits a claim. In addition, each Member may submit a claim form to obtain one of the following benefits: (1) $25.00 in cash; (2) 25 Super Likes (but only if the Member has a Tinder account); or (3) a one-month subscription of Tinder Plus or Tinder Gold, depending on which of those services the Member had previously purchased (but only if the Member does not already have a subscription). (Agreement § 3.2-3.3). In addition to foregoing monetary relief, Defendants have agreed to alter their practices and largely halt their price differentiation practices in California as they pertain to age. *Id*. at ¶ 3.4. Plaintiff estimates this revision to pricing discrimination is worth at least $5.75 million to the Class. Friedman Decl. ¶ 34.

Separate and apart from these Class benefits, Defendants have agreed to retain a Settlement Administrator and to pay for any and all costs associated with administering the Settlement, including Class and CAFA Notice, handling of claims and the distribution of monetary payments to Members who choose that option, and developing and maintaining the Settlement Website. (Agreement §§ 4.3-4.5, 5.4). Defendants have also agreed to pay the proposed $5,000.00 Incentive Payment to the Plaintiff (Agreement § 7.2) and the proposed Attorneys' Fee Award in the amount of $1,200,000.00 plus reasonable Cost Reimbursement to Class Counsel, pending approval by the Court. (Agreement § 7.1). Class Notice was provided on April 5, 2019, giving Class Members ample time and notice in advance of the Final Approval Hearing.[5] (Agreement § 4.9). Before Class Notice is provided, the Settlement Administrator will develop the Settlement Website,

---

[5] Email is the best notice practicable because Defendants generally maintain email address data for Class Members but not physical addresses or other information (such as landline phone numbers) that would permit Class Counsel to efficiently conduct a reverse lookup and send mail notice. Given the 85% successful transmission rate of the email notice, due process has been satisfied.

which shall contain relevant documents pertaining to the Settlement including the Settlement Agreement, the Claim Form, the Class Notice, and the Preliminary Approval Order.  (Agreement §§ 4.5, 5.2).   Under the terms of the proposed Settlement, Members will have the right to opt out of the Settlement or object to its terms.  A Member who wishes to opt out of the Settlement must, no later than 30 days after the Class Notice Date, mail an opt-out request to counsel for the Parties.  (Agreement § 4.8).  A Member who does not opt out and who wishes to object to the Settlement may do so by filing with the Court and mailing to counsel for the Parties, no later than May 6, 2019.  Dkt. No. 60; Agreement § 4.7.

The Settlement contemplates that Class Counsel may apply to the Court for an award of attorneys' fees in the amount of $1,200,000.00 (plus reimbursement of costs), representing 5% of the total estimated value of the Settlement (including the value of the injunctive component), which provides significant value to the Class.  Defendants have agreed not to oppose an application by Class Counsel for an award of attorneys' fees and costs, as long as it does not exceed this stated amount.  (Agreement § 7.1). The Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000.00 to be distributed to the Class Representative, subject to Court approval.  Defendants have agreed not to oppose this request. (Agreement § 7.2).

## IV.   ARGUMENT

### A.   The Requested Fee Award Is Fair, Reasonable And Justified

Class Counsel respectfully assert that (A) the requested fee award of $1,200,000 is fair, reasonable, and justified; and (B) the payment of $12,137.51 in costs is fair and reasonable.  Friedman Decl., ¶¶ 17-61.  The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h) (emphasis added).  As explained by the Ninth Circuit, "[a]ttorneys' fees provisions included in proposed class action

1    settlement agreements are, like every other aspect of such agreements, subject to
2    the determination whether the settlement is   'fundamentally fair, adequate, and
3    reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003).  In common
4    fund cases, Courts within the Ninth Circuit have discretion to use one of two
5    methods to determine whether the fee request is reasonable: (1) percentage-of-the-
6    fund; or, (2) lodestar plus a risk multiplier.  *Staton*, 327 F.3d at 967-68.  *See also*
7    *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).  "Though
8    courts have discretion to choose which calculation method they use, their
9    discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*
10   *Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011).

11        Class Counsel maintain the request for attorneys' fees is reasonable based
12   solely upon the arm's length formal negotiations that serve as independent
13   confirmation of the fairness of the settlement, including attorneys' fees.  *See*
14   *Hanlon*, 150 F.3d at 1029.  However, the requested fees are also fully supported
15   under the percentage-of-the-fund and lodestar approach, which Class Counsel offer
16   as an additional and optional means of cross-checking the requested fees.

### 1.    The Requested Fees Resulted from Arm's Length Negotiations

19        While attorneys' fee provisions included in class action settlements are
20   subject to the determination of whether the provision is fundamentally fair,
21   adequate and reasonable, the Ninth Circuit has opined that "the court's intrusion
22   upon what is otherwise a private consensual agreement negotiated between the
23   parties to a lawsuit must be limited to the extent necessary to reach a reasoned
24   judgment that the agreement is not the product of fraud or overreaching by, or
25   collusion between, the negotiating parties, and that the settlement, taken as a
26   whole, is fair, reasonable and adequate to all concerned."  *Hanlon*, 150 F.3d at
27   1027 (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San*

28

*Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)) (emphasis added). *See also Lundell v. Dell, Inc.*, CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006).

In *Hanlon*, the Ninth Circuit went on to state that where settlement terms, including attorneys' fees, are reached through formal mediation, the Court may rely upon the mediation proceedings "as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class." *Hanlon*, 150 F.3d at 1029.[6] Here and as previously stated in Plaintiff's Motion For Preliminary Approval of Class Action Settlement and Certification of Settlement Class, which this Court has approved (Dkt. No. 60 and 62), the Settlement Agreement resulted from extensive arm's length negotiations. Friedman Decl. ¶¶ 17-19. More specifically, the Parties attended a full-day mediation session with the Honorable Louis M. Meisinger (Ret.), where the parties were able to agree on the terms of a settlement agreement. *Id.* The parties had also conducted extensive informal and formal discovery surrounding Plaintiff's claims and Defendant's defenses. Agr. § c; Friedman Decl., ¶¶ 4-19. Additionally, and as noted by The Court in its Order Granting Preliminary Approval, the attorneys' fees sought were not discussed at all during settlement negotiations at mediation until after the Class Members' portion of the recovery had been fully negotiated in principle. Dkt. No. 60 Pg. 12. Under these circumstances, the Court may give deference to the mediation proceedings and the judgment of the Parties regarding the reasonableness of fees.

[6] *See also Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) ("the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," which helped to establish that the proposed settlement was noncollusive). *See also* 2 McLaughlin on Class Actions, § 6:7 (8th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion").

However, the requested fee is also wholly supported by the both the percentage-of-the-fund and lodestar methods, which the Court may employ as a means of assessing the reasonableness of the requested fee.

### 2.    The Requested Fees are Reasonable, Fair, and Justified Under the Percentage-of-the-Fund Method

Courts consider a number of factors to determine the appropriate percentage of the fund to awarding as attorneys' fees in a common fund case including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; (d) the contingent nature of the fee; and, (e) awards made in similar cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047, 1048-1050 (9th Cir. 2002).  The "benchmark" percentage for attorney's fees in the Ninth Circuit is 25% of the common fund with costs and expenses awarded in addition to this amount. *Vizcaino*, 290 F.3d at 1047.  "However, in most common fund cases, the award exceeds that [25%] benchmark."  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citing *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1998)).  Both the *Omnivision* and *Activision* Courts concluded that "Absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%."  *Omnivision*, 559 F. Supp. 2d at 1048.

Class Counsel's request for attorneys' fees in the amount of $1,200,000 equates to only approximately 5% of the Settlement Benefits negotiated as part of the Settlement Agreement.  This falls far below the Ninth Circuit's benchmark.  In most cases, the benchmark 25% in attorneys' fees are most often paid from the fund, thereby reducing class members' recovery, which is not how this agreement is structured.  In fact, Defendant is agreeing to pay fees completely separate from the Class Members' recoveries, which makes this Settlement Structure even more favorable for Class Members, and makes the fee request even more reasonable. The Court does not need to be concerned that the funds paid to Class Counsel will be coming out of the pockets of Class members.  Moreover, the fee request is fully

1    supported by the factors enunciated in *Vizcaino* including: (a) the results achieved;
2    (b) the risk of litigation; (c) the skill required and the quality of work; (d) the
3    contingent nature of the fee; and, (e) awards made in similar cases.

### a.  Class Counsel Obtained Excellent Results for the Class

5    The results obtained for the class are generally considered to be the most
6    important factor in determining the appropriate fee award in a common fund case.
7    *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Omnivision*, 559 F. Supp. 2d
8    at 1046.  *See also* Federal Judicial Center, Manual for Complex Litigation, § 27.71,
9    p. 336 (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for
10   class members") (citing Fed. R. Civ. P. 23(h) committee note).  Standing alone,
11   this factor supports Class Counsel's fee request.  The settlement secured by
12   Plaintiff and Class Counsel provides an excellent recovery for Class Members.
13   The three-pronged recovery provided to Class Members ensures that Class
14   Members all will benefit from the agreement, that additional monetary relief will
15   be available to participating Class Members, and that Defendant will halt its
16   alleged unlawful price discrimination, which was one of the core goals of the
17   litigation.  As a result, it is anticipated that the vast majority of the Settlement will
18   provide direct and meaningful benefits to the Settlement Class.[7]

19   This Settlement intentionally avoids providing significant benefits to a *cy*
20   *pres* recipient at the expense of the class.  *See Dennis v. Kellogg Co.*, 697 F.3d 858,
21   862-63 (9th Cir. 2012) (the amount of a *cy pres* award "must be examined with
22   great care to eliminate the possibility that it serves only the 'self-interests' of the

---

[7] *See Shames v. Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL
5392159 at *13 (S.D. Cal. Nov. 5, 2012) (settlement was fair where the parties
"negotiated a settlement that provide[d] direct payment to class members"); *Hopson
v. Hanesbrands Inc.*, Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D.
Cal. Apr. 3, 2009) ("the benefits can be accurately traced because they are monetary
payments directly to Class Members"); *Briggs v. United States*, Case No. C 07-
05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) (settlement agreement
was fair where it did not require class members to file claim forms).

attorneys and the parties, and not the class"); *Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) ("We require district judges to be reasonably certain that class members will benefit before approving a cy pres settlement."); *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013).[8]

The settlement award that each Settlement Class Member will receive is fair, appropriate, and reasonable given the purposes of the Unruh Act and UCL and in light of the anticipated risk, expense, and uncertainty of continued litigation. Although the Unruh Act provides for statutory damages of $4,000.00 per violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to a percentage of the potential recovery that might be available to the class members at trial.[9] Indeed, California Appellate Courts have upheld the reasonableness of Unruh Act class action settlements which provided for no monetary relief, but rather only injunctive relief. *See Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014) (injunction only class settlement under Unruh Act upheld as fair and reasonable, however overturning district court order based solely on the fact that non-opt out provision violated due process). The case at bar not

---

[8] Courts favor payment to class members over *cy pres*. *See Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (*cy pres* provision is a disfavored substitute for distribution of benefits directly to class members); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("[T]he cy pres doctrine—unbridled by a driving nexus between the plaintiff class and the cy pres beneficiaries—poses many nascent dangers to the fairness of the distribution process.").

[9] *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of the strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was small fraction of the maximum potential recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).

---

only provides meaningful injunctive relief, but also provides a universal participation component via the automatic provision of Super Likes to Class Members, as well as a monetary relief component to any Class members who participate in the filing of a claim form.  As such, the benefits to Class Members far exceed the result achieved in other Unruh Act and UCL actions.

### b.    The Risks of Litigation Support the Requested Fees

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47.  *See also Vizcaino*, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation of a requested fee).  Throughout litigation and mediation, Defendants have vigorously contested the claims asserted by Plaintiff.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Litigation.  If the Litigation were to continue, the primary initial challenge for Plaintiff would be overcoming the pending appeal.  Defendants represented that over 95% of the Class Members entered into arbitration agreements such as the one entered into by Plaintiff.  The Ninth Circuit has recently held that such agreements can be a bar to class certification under the right circumstances.  *See O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018).  Even if Plaintiff won her appeal, Defendants would likely challenge any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation.  Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment.  In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.

Similarly, Defendants believe that they have strong and meritorious defenses

not only in the Litigation as a whole, as well as on the appeal, but also as to class certification and the amount of damages sought.  However, Defendants recognize that if a class were certified, there is some risk of a damages award substantially higher than the value of the Settlement.  The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not recover.  These risks put the strength of the settlement achieved by Class Counsel into context. Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation against the benefits to the Class including the significant benefit and the deterrent effects it would have. As a result, Class Counsel supports the Settlement and seeks its Approval.  *Id.* .  The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action for alleged violations of the Unruh Act and UCL.  Furthermore, Judge Meisiger, who is intimately familiar with the instant litigation as well as the current climate of UCL and Unruh Act litigation as a whole, agrees with the parties.  The Honorable Court agreed with this reasoning in preliminarily approving the settlement.  Thus, the risks of continued litigation not only depicts the high degree of results obtained for the Class, but also further support the reasonableness of the requested fees.

### c.   The Skill Required and Quality of Work Performed Support the Requested Fees

The "prosecution and management of a complex [] class action requires unique legal skills and abilities" that are to be considered when evaluating fees. *Omnivision*, 559 F. Supp. 2d at 1047.  Class Counsel are experienced class action litigators who have been appointed "class counsel" in numerous UCL and related

consumer protection class actions.  Class Counsel have successfully prosecuted numerous complex consumer class actions, and secured noteworthy recoveries for those classes.  Class Counsel's proven track record demonstrates not only the quality of work performed, but also the skill required to successfully prosecute large complex class actions.  Friedman Decl. ¶¶ 31-37; Kristensen Decl. ¶¶ 16-38.

Class Counsel performed significant factual investigation prior to bringing the action, going back three years to a prior action where the Unruh Act claims at issue in this litigation were first alleged by Class Counsel.  Friedman Decl. ¶¶ 4-8. Class Counsel conducted extensive discovery into the scope of the violations as well as the legal and procedural challenges in the case.  Nobody could say that this case was not fully investigated, or thoroughly and vigorously litigated.  Class Counsel requested and was provided with all necessary information necessary to make a meaningful settlement decision on behalf of the Class, and vigorously negotiated for and secured this robust and highly favorable result during a full-day mediations session.  Thus, Class Counsels' skill and expertise, reflected in the prompt and significant Settlement, supports the requested fees.

### d.    Class Counsels' Undertaking of this Action on a Contingency-Fee Basis Supports the Requested Fees

The Ninth Circuit has long recognized that the public interest is served by rewarding attorneys who undertake representation on a contingent basis by compensating them for the risk that they might never be paid for their work.  *In re Washington Pub. Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for Plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose"); *Vizcaino*, 290 F.3d at 1051 (courts reward successful class counsel in contingency cases "for taking risk of nonpayment by paying them a premium over their normal hourly rates").

1    Class Counsel prosecuted this matter on a purely contingent basis while
2    agreeing to advance all necessary expenses knowing that Class Counsel would only
3    receive a fee if there were a recovery.  *See* Friedman Decl., ¶¶ 38-60.  In pursuit of
4    this litigation, Class Counsel have spent considerable outlays of time and money
5    by, among other things, (1) investigating the actions; (2) conducting discovery on
6    Defendant; (3) opposing motions; (4) filing an appeal; (5) negotiating the
7    Settlement in private mediation; (6) Class counsel will also be required to oversee
8    administration of the Settlement; and, (7) respond to Class Member inquiries.
9    Class Counsel expended these resources despite the risk that Class Counsel may
10   never be compensated especially in light of the fluctuating interpretations of the
11   merits issues, certification issues, and arbitration issues, and the difficulty in
12   securing class certification.

13   Class Counsel here incurred $12,137.51 in costs (as of April 22, 2019) and
14   spent 669.95 hours litigating this action.  Friedman Decl., ¶¶ 33-51 and Ex. A;
15   Kristensen Decl ¶ 16-38; Ex 1.  There were no guarantees of victory, and there
16   were numerous risks raised by Defendant.  Thus, Class Counsels' "substantial
17   outlay, when there is a risk that none of it will be recovered, further supports the
18   award of the requested fees" in this matter.  *Omnivision*, 559 F. Supp. 2d at 1047.
19   As articulated above, the percentage-of-the-fund method is the preferred and most
20   widely used method for determining attorneys' fees.  The requested fees are fully
21   supported by the factors enunciated by *Vizcaino* and is commensurate with the
22   excellent results obtained for the Class.  While the requested fees are fully
23   supported by the percentage-of-the-fund method, it should again be noted that the
24   application of the percentage-of-the-fund method is optional and may be applied
25   at the Court's discretion.  In addition, the Court may also apply the lodestar method
26   as another optional means of cross- checking the requested fees.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.   The Requested Fee is Reasonable, Fair, and Justified Under the Lodestar Method

A court applying the percentage-of-the-fund method may use the lodestar method as a "cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1050.  However, a cross-check is optional.   *See Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476, at *48 (N.D. Cal. Jan. 26, 2007) (finding that "where the early settlement resulted in a significant benefit to the class," there is no need "to conduct a lodestar cross-check").  If the Court chooses to perform such a cross-check in this matter, it will confirm that an approximately 5% fee award of $1,200,000 is reasonable.   The first step in the lodestar-multiplier approach is to multiply the number of hours counsel reasonably expended by a reasonable hourly rate.  *Hanlon*, 150 F.3d at 1029.  Once this raw lodestar figure is determined, the Court may then adjust that figure based upon its consideration of many of the same "enhancement" factors considered in the percentage-of-the-fund analysis, such as: (1) the results obtained; (2) whether fee is fixed or contingent; (3) the complexity of the issues involved; (4) the preclusion of the other employment due to acceptance of the case; and, (5) the experience, reputation, and ability of the attorneys. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).[10]

### a.   Class Counsels' Lodestar is Reasonable

The accompanying declaration of Class Counsel set forth the hours of work and billing rates used to calculate their lodestar. Plaintiff's attorneys' work is summarized as follows:

---

[10] The risk inherent in contingency representation is a critical factor. The Ninth Circuit stresses that "[i]t is an abuse of discretion to fail to apply a risk multiplier when...there is evidence that the case was risky." *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002); *see also Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. 2007).

### THE LAW OFFICES OF TODD M. FRIEDMAN - LODESTAR

| Name | Number of Hours | Rate/Hr | Total |
|---|---|---|---|
| Todd M. Friedman | 97.5 | $725.00 | $70,687.50 |
| Adrian R. Bacon | 221.2 | $625.00 | $138,250.00 |
| Thomas E. Wheeler | 7.7 | $370.00 | $2,849.00 |
| Lauren Walker | 2 | $175.00 | $385.00 |
| Bianca Zinnanti | 2.2 | $175.00 | $350.00 |
| **TOTAL** | **330.6** | | **$212,521.50** |

### KRISTENSEN WEISBERG, LLP - LODESTAR

| Name | Number of Hours | Rate/Hr | Total |
|---|---|---|---|
| John Kristensen | 94.6 | $725.00 | $68,585.00 |
| David Weisberg | 34.6 | $725.00 | $25,085.00 |
| Christina Le | 137.2 | $625.00 | $85,750.00 |
| Jesenia A. Martinez | 37.3 | $350.00 | $13,055.00 |
| Justin Farzadkish | 25.3 | $175 | $4,430.00 |
| Vanessa Brahm | 10.35 | $175 | $1,811.25 |
| **TOTAL** | **339.35** | | **$198,716.25** |

Friedman Decl. ¶¶ 57-60; Ex A; Kristensen Decl. ¶¶ 16-38, Ex 1. As described in the accompanying declarations, Plaintiff's attorneys have devoted a total of 669.95 hours to this litigation to date, and have a total lodestar to date of $411,237.75 which represents approximately a 2.9 multiplier. *See* Friedman Decl. ¶¶ 43-60. It is estimated that the lodestar multiplier will be approximately 2.3 by the time administration is completed. *Id*.

Thus, Class Counsel's lodestar is reasonable. Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case. In this regard, tasks were reasonably divided among attorneys to ensure avoiding the replication of work. Further, tasks were delegated appropriately among partners, associate attorneys, paralegals, and other staff according to their complexity such that the attorneys with higher billing rates billed

time only where necessary.  The reality is that the complexity of this matter was high, and required senior attorneys to handle to majority of tasks.  In addition, Class Counsels' contemporaneous time records were carefully reviewed. Friedman Decl., ¶ 57-60, Ex A; Kristensen Decl. ¶¶ 33-37, Ex. A.

### b.    A Modest Lodestar Multiplier Is Warranted

A lodestar multiplier in this case is appropriate given the various factors outlined under prevailing Ninth Circuit jurisprudence.  *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975).  There can be no doubt that the result achieved was robust, widespread in scope, and meaningful.  Class Counsel set out to hold Defendant accountable for its price discrimination, and successfully achieved a settlement which provides for an estimated $23 million in class-wide relief, and put an end to the very practices that were the subject of this litigation. The first Ninth Circuit factor heavily supports a reasonable enhancement.

Second, the fees earned in this matter were entirely contingent.  Class Counsel have been paid nothing to date, and would have been paid nothing had they not been able to achieve the robust settlement that has been approved preliminarily by The Court.  Indeed, This Court's order granting Defendant's Motion to Compel Arbitration, which sparked the subsequent Ninth Circuit appeal by Plaintiff, and eventually resulted in a settlement dialogue between the Parties, shows the high stakes at issue for Class Members – Class Members could have received nothing if the Court's Order was upheld on appeal, or if Class Counsel had not continued to vigorously fight on behalf of Class Members' rights.  This is the very definition of risk that the Ninth Circuit has held would be improper to ignore when considering whether and to what extent to grant a lodestar multiplier. *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

Third, this matter is a complex class action involving complicated and novel procedural and legal issues which are actively in flux, including the legality of the

alleged conduct by Defendant under applicable law, the arbitrability of public injunctive relief claims under the UCL, as guided by the recent *McGill v Citibank* matter, and the enforceability of Defendants' arbitration agreements generally, among other complex and evolving issues.  Navigating these waters required a deft hand, and experienced Class Counsel who would be able to ensure that the rights of Class Members were advanced effectively.

Fourth, Class Counsel are seasoned litigators with heavy active caseloads, as can be seen by a brief docket search, as well as by the Accompanying Declarations of Class Counsel.  The Law Offices of Todd M. Friedman for instance, is currently appointed class counsel on dozens of class actions, and is actively litigating well over 100 cases.  Time spent working on this case was time that could not be spent on other cases.  Accordingly the fourth factor is satisfied.

Finally, the experience and reputation of Class Counsel warrants a multiplier.[11]  "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995).[12]  For these reasons, the modest multiplier requested by Class Counsel is appropriate and warranted.

### c.   Class Counsels' Hourly Rates are Reasonable

Similarly, Class Counsels' hourly rates are also reasonable.  In assessing the reasonableness of an attorney's hourly rate, courts consider whether the claimed rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v.*

---

[11] Class Counsel are highly skilled and reputable class action attorneys.  The Law Offices of Todd M. Friedman have secured over $160 million in class-wide relief over the past four years, been appointed class counsel on over 50 class actions by stipulated settlement, and been appointed class counsel by contested motion in 10 cases over that same time period.

[12] *See In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier)

1    *Stevenson*, 465 U.S. 886, 895, n.11 (1994).  *See also Davis v. City and County of*

2    *San Francisco*, 976 F.3d 1536, 1546 (9th Cir. 1992); *Serrano v. Unruh*, 32 Cal. 3d

3    621, 643 (1982).  Class Counsel here are experienced, highly regarded members

4    of the bar with extensive expertise in the area of class actions and complex

5    litigation involving consumer claims like those at issue here. *See* Friedman Decl.,

6    ¶¶ 31-37.  Mr. Friedman and Mr. Bacon are also very experienced in litigating

7    UCL and other consumer protection cases, including class actions, and serve as

8    class counsel in multiple certified UCL class actions.  *Id.*

9         According to the well-respected Laffey Matrix, last reviewed on April 22,

10   2019, reasonable rates for a Partner of a law firm practicing 11-19 years are

11   calculated at $742 per hour.  Friedman Decl. Ex B.  Mr. Friedman has dedicated

12   his career to consumer protection, including class action litigation.  He has secured

13   eight figure class-wide settlements on behalf of millions of consumers.  Thus, the

14   billing rate for Mr. Friedman of $725 per hour is well within the normal range of

15   fees charged by firms in Southern California for partner work.[13]  Additionally,

16   Adrian R Bacon, who has contributed much to this litigation, has significant

17   experience in litigating consumer class actions, including UCL class actions, which

18   justifies his hourly rate of $625. Friedman Decl. ¶¶ 37-52.  Mr. Bacon is a Partner

19   at The Law Offices of Todd M. Friedman, P.C., and has secured class certification

20   status in numerous cases by contested motion, as well as worked on dozens of

21   actions which settled on a class-wide basis.  The hourly rates of Mr. Friedman and

22   Mr. Bacon requested herein have been approved by courts numerously.  Friedman

23   Decl. ¶¶ 46-60, Ex B.  The same is true with respect to the rates sought by

24

25   ─────────────

26   [13] See *Hartless v. Clorox Co*., 273 F.R.D. 630, 643-44 (S.D. Cal. 2011), aff'd in
     part, 473 F. Appx. 716 (9th Cir. 2012) (approving hourly rates of $675-795 for

27   partners, up to $410 for associates, and up to $345 for paralegals); *see also POM
     Wonderful, LLC v. Purely Juice, Inc.*, 2008 WL 4351842 at *4 (C.D. Cal 2008)

28   (finding partner rates of $750 and associate rates of $425 reasonable).

─────────────

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**
**-23-**

Kristensen Weisberg, LLP.   Kristensen Decl. ¶ 37.   Hence, Class Counsels' combined lodestar of $411,237.75 is reasonable and supports the requested fees.

### B.   The Requested Costs Are Fair And Reasonable

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)).   The significant litigation expenses Class Counsel incurred in this case were necessary to secure the resolution of this litigation.   *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007). Based upon the discussion herein, Class Counsel believe that the costs incurred in this matter are fair and reasonable.

Throughout the course of this litigation, Class Counsel had to incur costs totaling $12,137.51.   *See* Friedman Decl., ¶¶ 44-45; Kristensen Decl. ¶ 38, Ex 2. These costs were necessary to secure the resolution of this litigation and Class Counsel put forward said costs without assurance that Class Counsel would ever be repaid.   Such costs include the cost of filing the case, service, courier fees, mediation expenses, and appeal fees.   All of these expenses were necessary to advancing the litigation on behalf of the Class.   Moreover, none of this expense will be borne by Class Members, as Defendants have agreed to separately pay for these expenses.   Class Counsel will likely incur additional costs as this case moves to the final approval stage, which final approval hearing is set for June 17, 2019.

### V.   KIM'S APPLICATION FOR INCENTIVE AWARD

The proposed Settlement contemplates that Class Counsel will request an Incentive Award in the amount of $5,000 to be distributed to the Class Representative, subject to Court approval.   Medicredit has agreed not to oppose the request as long as it is not greater than $5,000.   Agreement § 7.   District Courts in California have opined that in many cases, an incentive award of $5,000 is

presumptively reasonable.[14]  Plaintiff played an active role in litigation, providing documents and information to Class Counsel necessary to litigate the case. Plaintiff participated in mediation and settlement discussions on behalf of the Class, as well as in informal discovery, and in the drafting of the Complaint.  Had she not done so, the class members would have received nothing, unless another consumer came forward to bring the case and was successful and achieving a settlement or judgment on behalf of the other 230,000 Class Members.  Plaintiff acted dutifully in her role as a class representative, and should be awarded this reasonable sum of $5,000 for her part in the litigation.

## IV.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiff's motion for an award of attorneys' fees in the total amount of $1,200,000, litigation costs of $12,137.51; and a Class Representative Incentive Award of $5,000.

Dated:  April 22, 2019                         Respectfully submitted,


By:  */s/ Todd M. Friedman*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
***Attorneys for Plaintiff and all others
similarly situated.***

---

[14] *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-*67 (N.D. Cal. Mar. 20, 2015); *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 942-*43 (9th Cir. Feb. 27, 2015); *In re Toys R Us – Delaware, Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litigation*,  295 F.R.D. 438, 472 (C.D. Cal. Jan. 17, 2014).

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business Address is 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367.

On April 22, 2019, I served the following document(s) described as: **MOTION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARD**, on all interested parties in this action by placing:

[X]   a true copy
[   ]   the original thereof enclosed in sealed envelope(s) addressed as follows:

Alexandra Hill
ahill@manatt.com
Donald R. Brown
dbrown@manatt.com
Robert H. Platt
rplatt@manatt.com
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614

[X]   **BY CM/ECF:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the Court's CM/ECF system and the transmission was reported as complete, without error.

[X]   STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 22, 2019, at Woodland Hills, California.

By:   /s/ Todd M. Friedman

Todd M. Friedman