John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12450 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
john@kristensenlaw.com
david@kristensenlaw.com
christina@kristensenlaw.com

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (216) 220-6496
Facsimile: (866) 633-0028
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiff and all others similarly situated*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA KIM, individually on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them,<br><br>      Defendants. | Case No.: 2-18-cv-03093-JFW-AS<br><br>**PLAINTIFF LISA KIM'S NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>Date:     June 17, 2019<br>Time:     1:30 p.m.<br>Courtroom:  7A<br>Hon. John F. Walter |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2019, at 1:30 p.m., in Department 7A of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, plaintiff Lisa Kim ("Plaintiff"), for herself and other similarly situated, will move this Court for an order granting final approval of the class action settlement as detailed in Plaintiff's memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declaration and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated: May 13, 2019                    Respectfully submitted,

By:
/s/ Todd M. Friedman

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**

***Attorneys for Plaintiff and all others similarly situated.***

1

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion.  Defendants do not oppose this motion.

Dated:  May 13, 2019                    Respectfully submitted,


By:  */s/ Todd M. Friedman*
_____

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**

*Attorneys for Plaintiff and all others similarly situated.*

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.  statement of facts ......................................................................................... 4

     A.   Factual Background .............................................................................. 4

     B.   Proceedings to Date ............................................................................. 5

     C.   Preliminary Approval........................................................................... 6

     D.   Delivery of Class Notice ...................................................................... 7

     E.   Reaction of Class Members to the Settlement .................................... 8

III. The Settlement.................................................................................................. 9

     A.  The Settlement Class. ........................................................................... 9

     C. Application for Incentive Award, Fees, Costs, and Expenses. ............ 11

IV.  ARGUMENT ...................................................................................................... 11

          1.   The Class Representative and Class Counsel Have
               Adequately Represented the Class ........................................... 14

          2.   The Proposal Was Negotiated at Arm's Length.................... 15

          3.   The Relief Provided for the Class is Adequate
               Considering  the Strength of the Lawsuit, and the Risk,
               Expense, Complexity, and Likely Duration of Further
               Litigation. .................................................................................. 16

          4.   The Attorneys' Fees Sought Are Reasonable....................... 18

          5.   The Proposal Treats Class Members Equitably Relative
               to Each Other. ............................................................................ 19

          6.   The Objections Lack Merit....................................................... 19

V.   CONCLUSION ................................................................................................... 25

TABLE OF AUTHORITIES

**Cases**

*Billy Warner v. Tinder*, Inc. Case No. 2:15-cv-01668-MMM-AJW ...................21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ..................................15

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) .........................15

*Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018).........................6

*Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) ..................................................................................................19

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980)..............13, 15

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981)...................................................................................13

Esslinger v. HSBC Bank Nevada, N.A., 2012 WL 5866074, at *7 (E.D. PA. Nov. 20, 2012)..........................................................................................................20

*Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).......19

*Frye v. VH Property Corp.*, 2014 WL 69126 (Ct. of Appeal, 2nd Dist., Div. 2, Cal. Jan. 8, 2014) ...................................................................................................23

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) .....................................................12

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ..............................................12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).............12, 13, 14

*In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) ..............19

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174 (S.D. Cal. Jan. 23, 2012) ....13

*In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012)13

*In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735 (S.D. N.Y. 1985)12

*In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985)......................................................................................................................12

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) .............................................................................................................................15

*Jones v. GN Netcom, Inc*. (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935 (9th Cir. Cal. 2011) ....................................................................................13

*Jones v. GN Netcom, Inc*. (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 948 (9th Cir. Cal. 2011) .................................................................................13

*Lamps Plus, Inc. v. Varela*, (April 24, 2019. S.Ct.) 2019 WL 1780275 .............20

*Love v. Mail on Sunday*, 2007 WL 2709975 (C.D. Cal. Sept.7, 2007) ...............22

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819 (D. Mass. 1987) ..............................................................................................................13, 15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987) ............................................................................................................13

*M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ............................15

*McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017) ........................................................6

*Nat'l Rural Telcoms. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ..............................................................................................................................13

*O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) ................16

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) ..............................................................................12

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982) .......................................................................12

*orrisi v. Tucson  Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .........................13

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................13

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ............................................12

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) ....................................12

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) ..............13

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) 19

**Statutes**

*Cal. Bus. & Prof. Code* §§ 17200 .......................................................5, 6, 7, 17, 24

*Cal. Civ. Code* §§ 51 .............................................................................3, 5, 7

**Other Authorities**

2 Newberg on Class Actions (4th Ed. & Supp. 2002) ..........................................15

Manual for Complex Lit., Fourth § 30.42 .............................................................16

**Rules**

Fed. R. Civ. P. 23 .........................................................................11, 12, 13, 14

Rule 23 .............................................................................................22, 23, 25

Rule 23(a) .............................................................................................................15

Rule 23(c)(2)(B) ...........................................................................................7, 17

1

Rule 23(e) ........................................................................7, 14, 20, 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS & AUTHORITIES

## I.   INTRODUCTION

Plaintiff, Lisa Kim (hereinafter referred to as "Plaintiff" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits her Motion for Final Approval of the proposed settlement (the "Settlement") of this action (the "Action").  Defendants Tinder, Inc., Match Group, LLC, and Match Group, Inc. ("Defendants")[1] do not oppose Plaintiff's motion (Plaintiff and Defendants shall collectively be referred to as the "Parties.") The terms of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement").  Dkt. No. 52-1, Ex A.  The Settlement merits final approval by the Court.  The Settlement resulted from the Parties' participation in an all-day mediation session before the Honorable Louis M. Meisinger (Ret.) of Signature Resolution and subsequent settlement discussions.  The Settlement provides for a substantial financial benefit to each Settlement Class Member ("Member").  The Settlement Class consists of:

> *Every California subscriber to Tinder Plus or Tinder Gold during the Class Period, who at the time of subscribing was at least 29 years old and was charged a higher rate than younger subscribers.*[2]

The Settlement reached with the guidance of Judge Meisinger was a hybrid settlement that provides an automatic universal benefit component to all Members, and then an additional option to receive cash or other benefits for those Members who also provide a claim form confirming certain information.

The benefits for Members who do not opt out of the Settlement include the following:  Each Member who as of the Effective Date of the Settlement still has, or has reactivated, his or her Tinder account will *automatically* receive 50 Super Likes (equivalent to $50 in value) regardless of whether he or she submits a claim form.  See Agreement § 3.2.  Also, each Member may submit a claim form to

---

[1]   Pursuant to a 2017 merger transaction, Tinder, Inc.'s assets and liabilities were acquired by Match Group, LLC.

[2]   The Class Period is from March 2, 2015 through March 1, 2019.

choose and obtain one of the following additional benefits: 1) $25.00 in cash; 2) 25 additional Super Likes (if the Member has a Tinder account); or 3) a one-month subscription to Tinder Plus or Tinder Gold, depending on which of those services the Member had previously purchased.  (The third option will not be available to any Members who are already subscribers as of the Effective Date.)  Agreement § 3.3.  The proposed claim form requires each Member to provide contact and Tinder account information, an authorization for Defendants to obtain from Apple or Google, as applicable, verification that the Member had purchased a subscription to Tinder Plus or Tinder Gold and had not received a refund or chargeback, and confirmation under penalty of perjury that the Member resided in California when he or she purchased the subscription. Agreement § 5.1 and Ex 2.

The Settlement also provides that after the Effective Date, Defendants will no longer charge different prices based on age for new Tinder Plus or Tinder Gold subscriptions purchased in California (but Defendants reserve the right to offer a youth discount to subscribers age 21 or younger).  *Id* at § 3.3.  The Settlement allows for an exception in the event of subsequent legislation in California that specifically addresses age-based pricing and, reasonably interpreted, would permit age-based pricing using other age cut-offs, or an appellate opinion by any court in California to the same effect, or legislation that expresses a public policy in favor of or benefitting a particular age group.  In such event, Defendants may implement age-based pricing consistent with such legislation or case law.  *Id*.

With an estimated Class size of 240,000 Members,[3] the Settlement has an approximate value of $18 million in monetary relief.  Friedman Decl. ¶¶ 30-44.  Of that total, $12 million is guaranteed under the universal participation component

---

[3] The number of Class Members was originally estimated at 230,000 Members, but during the process of gathering information to send the Class Notice, it was determined there were approximately 240,592 Class Members, a higher number than originally estimated.  Accordingly, all of the numbers set forth in the preliminary approval papers would be adjusted upwards, since the relief is provided per Class Member and will not be diluted by a larger Class Member pool, making the total settlement value approximately $24 million.

(not requiring submission of claims), and the remaining $6 million in potential cash or cash-equivalent benefits is available to every Member who submits a claim. *Id*. In addition to the monetary benefits achieved, Class Counsel estimates that the injunctive relief negotiated on behalf of the Class and the public carries a value of at least $6 million. *Id*. at ¶ 43. Thus, the total settlement value of $24 million. *Id*. at ¶ 44. This Settlement also creates an incentive for Defendants and other businesses to comply with the Unruh Act, which benefits Class Members, consumers in general, as well as compliant competitive businesses.[4] Furthermore, Defendants agreed to pay the costs of Notice and Administration, and, subject to Court approval, a proposed Attorneys' Fee Award in the amount of $1,200,000.00 to Class Counsel and a reasonable Cost Reimbursement. Agreement at §§ 5.4, 7.1-7.4. Payment of these fees and costs is wholly separate from any payments or benefits to be provided to Class Members as part of the Settlement. *Id*.

While Plaintiff is confident of a favorable determination on the merits, she has determined that the Settlement provides significant benefits to and is in the best interests of the Class. Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims. Similarly, as evidenced by the Agreement, Defendants believe that they have substantial and meritorious defenses to Plaintiff's claims and to class certification in the absence of a settlement, but have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiff believes that the Settlement satisfies all of the criteria for Final Approval, as it provides for a considerable financial benefit to Class Members,

---

[4] *See* David R. Hodas, Enforcement of Environmental Law in A Triangular Federal System: Can Three Not Be A Crowd When Enforcement Authority Is Shared by the United States, the States, and Their Citizens?, 54 Md. L. Rev. 1552, 1657 (1995) ("[A]llowing a violator to benefit from noncompliance punishes those who have complied by placing them at a competitive disadvantage. This creates a disincentive for compliance.")

valued up to $18 million in monetary relief, plus a valuable public injunction halting the allegedly unlawful price discrimination practices targeted by this litigation.  Over 240,000 Class Members will benefit either directly, indirectly or both, as a direct result of this Settlement, not to mention the benefit to others in the general public in California achieved as a result of this robust Agreement.  The strength of this settlement is further evidenced by the fact that to date, the only objections have been made by two groups of lawyers, who are plainly making it more about their attorneys' fees rather than about the Class Members, as will be described in greater detail below, and in Plaintiff's forthcoming responses to their objections.  Indeed, only one Class Member out of the over 240,000 consumers who received notice who was not represented by these attorneys in ongoing litigation already actually opted out of the settlement.  The remainder of opt outs were from attorneys' offices who were actively already representing consumers in ongoing litigation.  This is an outstanding settlement that should be given final approval.  There is no reason for any other result to be reached.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Tinder is a smartphone-based dating application that is used by consumers throughout the world, including California. The core functionality of the app enables users to view profiles of other users in the same geographic locale and to either indicate an interest in (i.e., to "like") another user or, alternatively, indicate a lack of interest.  If two users indicate an interest in each other's profile, they can then communicate with each other through the app.  The app also allows a user to indicate a heightened degree of interest in another user through a feature known as a "Super Like."  The app may be downloaded and used for free, but certain additional or premium features can only be accessed by purchasing a subscription to Tinder Plus or Tinder Gold.  Such features include, among other things, unlimited likes (whereas the free version has a daily limit), no paid advertisements, the ability to undo dislikes, the ability to view profiles in other locales, and the

ability to exert more control over other variables involved in using the app.  Also, subscribers receive more free Super Likes than non-subscribers, but any user of the app may purchase additional Super Likes for a typical price of 99 cents each.

Plaintiff, a female user over the age of 29, alleges that when she and Class Members purchased Tinder premium services (Plus or Gold), Defendants discriminated against such consumers based on age, by charging more money for the same service for consumers age 29 and older.  Plaintiff claims that Defendants' widespread and uniform conduct is in direct violation of the Unruh Civil Rights Act, *Cal. Civ. Code* §§ 51, et seq. ("Unruh Act"), which generally outlaws age discrimination by businesses operating in California. In addition, Plaintiff alleges that Defendants' pricing scheme violates the Unfair Competition Law, *Cal. Bus. & Prof. Code* §§ 17200, et seq. ("UCL").  Plaintiff sought three categories of relief: 1) monetary relief under the Unruh Act in the form of statutory penalties; 2) restitution, i.e. a refund of unlawful premiums charged to users age 29 or older ($10 per month per user); and 3) public injunctive relief putting a halt to Defendants' unlawful age-based price discrimination.  Defendants vigorously dispute Plaintiff's claims and that such claims are subject to class certification in the absence of a settlement, dispute that Plaintiff will prevail on her current appeal of the Court's Order granting Defendants' motion to compel arbitration, and deny all charges of wrongdoing or liability asserted against them in the Litigation.

**B.   Proceedings to Date**

On April 12, 2018, Plaintiff filed her class action lawsuit against Defendants, alleging that Defendants violated the Unruh Act. Defendants responded on June 11, 2018 by filing a Motion to Compel Arbitration or Stay Under the *Colorado River* Abstention Doctrine. On June 22, 2018, Plaintiff filed her First Amended Complaint, adding the UCL cause of action for public injunctive relief. In their Motion, Defendants argued that Plaintiff had entered into an arbitration agreement based on her alleged assent to the arbitration provision in the Tinder app's Term of Use through the use of "sign-up wrap" consent in order to access the app.

Defendants' Motion to Compel Arbitration was granted on July 5, 2018, and the Court compelled Plaintiff's claims to arbitration.

On July 16, 2018, Plaintiff filed her appeal of the Court's decision on the Motion, based on her position that the Court did not appropriately consider California Supreme Court precedent interpreting substantive California law in *McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017), which states that claims for public injunctive relief, such as the one brought in Plaintiff's case under the UCL, cannot be compelled to arbitration.  In addition, Plaintiff would argue that the Court disregarded recent relevant appellate case law, *Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018), which bore directly on whether there was appropriate assent by Plaintiff and the Class Members to the Tinder app's Term of Use.[5]

A mediation was scheduled for November 29, 2018, and the Parties stipulated to continue the initial briefing deadlines in the appeal.  The Parties attended a mediation with Judge Meisinger on November 29, 2018.  The Parties did not resolve the case at the mediation, but engaged in subsequent discussions with Judge Meisinger. With his guidance, this Settlement was reached on December 1, 2018.  Declaration of Todd M. Friedman in Support of Motion for Final Approval of Class Action Settlement ("Friedman Decl.") ¶¶ 19-21.  As set forth below, Plaintiff respectfully requests that the Court approve the Settlement.

### C.    Preliminary Approval

After moving for Preliminary Approval, a non-party to this action, Allen Candelore, through his counsel, submitted an objection to the settlement, expressly, inappropriately and tellingly declining to seek to intervene.  Dkt. No. 54.  Plaintiff and Defendants separately responded to the Objection.  Dkt. No. 55, 56.  The Court thereafter took the Motion under submission, and issued a detailed and thorough

---

[5] The *Cullinane* opinion was rendered the same day Plaintiff's opposition to Defendants' Motion was due, leaving Plaintiff no time to incorporate arguments and facts related to the on-point case into her opposition. The Court did not consider Plaintiff's Notice of the new case, and denied Plaintiff's Ex Parte Application to provide supplemental briefing as a result of the new opinion.

Order granting preliminary approval on March 1, 2019, with instructions to the parties to submit a slightly revised Class Notice and Proposed Order. Dkt. No. 60. Plaintiff did so on March 8, 2019 (Dkt. No. 61) and the Order was granted on March 12, 2019. Dkt. No. 62. The Preliminary Approval Order "considered the objections and issues raised in Candelore's Opposition," (Dkt. No. 61 at Pg 1) which are essentially identical to the objections and issues raised by Candelore's (and his counsel's) proxies Rich Allison and Steve Frye. *Compare* Dkt. No. 54 with 65-67.

In granting Preliminary Approval, the Court thoroughly analyzed all applicable elements of Rule 23, to determine whether the requirements of class certification were met, as well as to determine whether the fairness requirements set forth under Rule 23(e) were met. The Court found that the notice requirements under Rule 23(c)(2)(B) were met by the proposed direct email notice plan set forth in the papers. Dkt. No. 60 at Pgs. 8-9. The Court looked at whether the amount of remuneration and the form of remuneration were fair and reasonable for the Class Members, given the potential recovery available to Class Members under the UCL and Unruh Act, and determined that the "Settlement award that each Class Member will receive is fair, appropriate, and reasonable given the purposes of the Unruh Act and UCL." *Id*. at 10-11. Further, the Court found the incentive award and fees negotiated were fair and reasonable and free from collusion, subject to a final review of counsel's time records at Final Approval. *Id*. at 11-13.

### D. <u>Delivery of Class Notice</u>

Class Notice was sent to Class Members via email by the Claims Administrator on April 5, 2019. Friedman Decl. ¶ 62. The campaign was highly successful at delivering targeted notice directly to the hands, pockets and/or bedside tables of Class Members. Epiq reported that approximately 85% of the Class Members received direct notice, a much higher threshold than the Rule 23 guidelines specify for due process purposes. A total of 240,592 emails were sent to Class Members, with 203,741 of those emails delivered. Email addresses for all but 19 of the Class Members were located in Tinder's records. *Id*. at 62-64. The

CAFA Notice was sent within 10 days of the filing of the preliminary approval papers. Notice was also posted on the Settlement Website maintained by Epiq. *Id*. at ¶ 38. Pursuant to the Settlement Agreement, and as specified in the Class Notice, Class Members will be permitted to submit claims until 30 days after Final Approval. The Parties have agreed that Class Members will receive, in addition to the Notice already sent, two additional reminder Notices, one of which is being sent this week by Epiq, and another which will be sent following the Final Approval ruling, which shall include a specific final date for the submission of claims. *Id*. at ¶ 73. This additional Notice reminder protocol is being put in place to ensure the highest feasible participation rate.

### E.     Reaction of Class Members to the Settlement

The reaction of Class Members thus far has been generally positive. The claims deadline does not lapse until 30 days after final judgment is entered. Now that the objection and opt-out deadlines have passed, a full and final review of the scope of any resistance to the settlement terms can be conducted. Tellingly, with one solitary exception, all of the objections or opt-outs come from sources that could be anticipated at the time of the filing of the Preliminary Approval papers, i.e. two law firms who have represented class members with similar claims.

Mr. Candelore did not object to and instead opted out of the Settlement, and for reasons that are yet unclear, submitted a declaration in support of two other objectors (Steve Frye, and Rich Allison) who are supported by his same counsel. In addition to these objections/opt outs, there are four identical objections and approximately 200 identical opt outs from Davis & Norris, LLP, an Alabama law firm that apparently already represents all of these individuals in individual arbitrations after having solicited these consumers to bring such claims following the *Candelore* decision. It would be expected that a firm that is already representing over 200 consumers in individual arbitrations would opt its clients out of the settlement, since the Unruh Act has an attorneys' fee-shifting provision, and the firm has presumably spent time and resources litigating those claims for which it

could not recover if its clients did not opt out.  It is less clear why this firm chose to file objections, since but in any event they are largely defective.

Aside from the aforementioned opt-outs and objections, there is virtually no resistance to or criticism of the Settlement from the other over 240,000 Class Members.  None objected, and only one opted out.  What is clear from the reactions of class members is that the only resistance is coming from attorneys who do not seem particularly concerned about the rights of consumers, but who are predictably concerned with maintaining their right to seek legal fees.  That, however, does not serve as a basis to give credit to their objections, or to deny compensation to the over 99.9% of Class Members who chose to be part of this robust Settlement after receiving notice.

## III.   THE SETTLEMENT

### A.   The Settlement Class.

The "Settlement Class" is defined in the Agreement as follows:
> *"Every California subscriber to Tinder Plus or Tinder Gold during the Class Period who at the time of subscribing was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class."*  (Agreement § 2.21.)

The Class Period is from March 2, 2015 through March 1, 2019.  (*Id.* § 2.6.)  Defendants maintain email addresses for the vast majority of users of the app, and based on data provided by Defendants and their counsel, the Class contains approximately 240,000 Members.  Friedman Decl., ¶¶ 30-44.

### B.   Settlement Benefits.

Under the Settlement, Defendants agree to a multifaceted Settlement structure, which includes a universal participation component (automatic benefits to all Class Members); an additional cash or cash-equivalent payout to Class Members who submit timely valid claims; and an agreement to substantially halt Defendants' allegedly discriminatory practices going forward.  Attorneys' fees, costs, administration expenses, and the Incentive Payment to Plaintiff will all be separately paid by Defendants.  These benefits are significant, tangible and offer

fair remuneration for the Class.

Pursuant to the Agreement, Class Notice was sent via email to 240,592 persons believed to be in the Settlement Class.  Friedman Decl. ¶¶ 30, 64.  The Class Notice explained that if the Member has a Tinder account, or has reactivated a Tinder account associated with the same email address that pertained to his or her previous account, the Member will automatically receive 50 Super Likes (equivalent to $50 in value).  This benefit will be issued to each and every Class Member irrespective of whether the Member submits a claim.  In addition, each Member may submit a claim form to obtain one of the following benefits: (1) $25.00 in cash; (2) 25 Super Likes (but only if the Member has a Tinder account); or (3) a one-month subscription to Tinder Plus or Tinder Gold, depending on which of those services the Member had previously purchased (but only if the Member does not already have a subscription).  (Agreement § 3.2-3.3).  In addition to the foregoing monetary relief, Defendants have agreed to alter their practices and largely halt their price differentiation practices in California as they pertain to age.  *Id*. at ¶ 43.  Plaintiff estimates this revision to pricing discrimination is worth at least $6 million to the Class.  *Id*.

Separate and apart from these Class benefits, Defendants have retained a Settlement Administrator and paid for any and all costs associated with administering the Settlement, including Class and CAFA Notice, handling of claims and the distribution of monetary payments to Members who choose that option, and developing and maintaining the Settlement Website. (Agreement §§ 4.3-4.5, 5.4).  Defendants have also agreed to pay the proposed $5,000.00 Incentive Payment to the Plaintiff (Agreement § 7.2) and the proposed Attorneys' Fee Award in the amount of $1,200,000.00 plus reasonable Cost Reimbursement to Class Counsel, pending approval by the Court.  (Agreement § 7.1).  CAFA notice was provided within 10 days after the filing of the motion for Preliminary Approval, and Class Notice was sent out on April 5, 2019.[6]  (Agreement § 4.9).  The

---

[6] Email is the best notice practicable because Defendants generally maintain email

Settlement Administrator developed the Settlement Website (https://www.tindersettlement.com), which contains relevant documents pertaining to the Settlement including the Settlement Agreement, the Claim Form, the Class Notice, and the Preliminary Approval Order.  (Agreement §§ 4.5, 5.2).

### C. Application for Incentive Award, Fees, Costs, and Expenses.

As contemplated by the Settlement, Class Counsel has requested an Incentive Award in the amount of $5,000.00 to be distributed to the Class Representative, subject to Court approval.  Additionally, Class Counsel has applied to the Court for an award of attorneys' fees in the amount of $1,200,000.00 (plus reimbursement of costs), representing 5% of the total estimated value of the Settlement (including the value of the injunctive component), which provides significant value to the Class.  (Agreement § 7.1.)  Plaintiff timely filed an application for attorneys' fees and costs and incentive award.  Dkt. No. 63.

## IV.   ARGUMENT

### A.   Final Approval of the Proposed Settlement is Warranted

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied.  *See generally* Preliminary Approval Order, Dkt. No. 61.  The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.  Since preliminary approval, Plaintiff has continued to serve as an adequate Class Representative by reviewing documents and submitting declarations in support of motions, and Plaintiff supports final approval of the proposed settlement.  Moreover, Class Counsel have also continued to adequately represent the interests of the Class Members and the named Plaintiff, including by, among other things, timely disseminating Class Notice, communicating promptly with class members who had questions, filing the Attorneys' Fees petition, and assisting with settlement administration.

---

address data for Class Members but not physical addresses or other information (such as landline phone numbers) that would permit Class Counsel to efficiently conduct a reverse lookup and send mail notice.

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications   Sec. Litig.*, 618 F. Supp. 735, 741 (S.D. N.Y. 1985).  The recently amended F.R.C.P. 23 requires a straightforward four factor analysis in determining whether a Court should grant approval of a class action settlement "only on finding that it is fair, reasonable, and adequate after considering whether…"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);[7] and

(D) the proposal treats class members equitably relative to each other.

See F.R.C.P. 23(e)(2)(A)-(D).  The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations.  In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling] parties."  *Id.* at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)).  The district court must exercise "sound discretion" in approving a settlement.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981).  However, "where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation conducted by capable counsel, it is presumptively fair."  *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F.Supp. 819, 822 (D. Mass. 1987); *In re Ferrero Litig.*, 2012 U.S. Dist. LEXIS 15174, *6 (S.D. Cal. Jan. 23, 2012) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (citing *Nat'l Rural Telcomms. Coop. v. DirecTv, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.  Notably, this Settlement was reached with the assistance of experienced mediator Hon. Louis M. Meisinger (Ret.), which shows a lack of collusion between the Parties.  *See Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 948 (9th Cir. 2011).  As the

---

7 In this case, there are no such agreements except the class settlement agreement.

Court observed at preliminary approval, the settlement is free from evidence of collusion, and fees were not even discussed at mediation until after the Class Members' benefits under the settlement were fully negotiated. The result is just as fair to the Class Members now as it was when the Court granted Preliminary Approval, and equally as important, it is a result which puts Class Members on equal footing with one another, as required under Rule 23(e)(2)(D). The fees requested are well within the range of reasonableness, and supported under a lodestar crosscheck with a modest multiplier. Based on the facts of this case, Class Counsel and the named Plaintiff agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial. Friedman Decl., ¶¶ 40-58.

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Plaintiff and Class Counsel have no conflicts of interest with other Class Members. Plaintiff has brought the same claims as the rest of the Class Members, is seeking the same remedy, and there is no evidence of a conflict of interest. As the Court found at preliminary approval "Plaintiff and other Class Members share the common goal of protecting and improving consumer and privacy rights throughout California, and there is no conflict among them." Dkt. No. 60. That has not changed since the preliminary approval phase. Since that time, Plaintiff and

her counsel have diligently continued to oversee administration of the settlement, including negotiating with Defendants to have two more rounds of class notice sent to Class Members reminding them to make claims.  Friedman Decl. at ¶ 62-73. Class Counsel have extensive experience in consumer protection and privacy class action litigation.  Friedman Decl. ¶¶ 74-82.  Therefore, Rule 23(a)(4) is satisfied.

### 2.   The Proposal Was Negotiated at Arm's Length

The Settlement is the result of intensive arms'-length negotiation, including an all-day mediation session before the Hon. Louis Meisinger. The Parties also engaged in subsequent negotiations through Judge Meisinger by email.  With the guidance of Judge Meisinger, and working independently of the Court, the Parties were able to reach a proposed resolution of this case.  Class Counsel are satisfied that the information provided about the number of Class Members is accurate, as it was confirmed with additional confirmatory discovery during the Notice process. The time and effort spent examining and investigating the claims militate in favor of approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").  As the Court noted in its preliminary approval Order (Dkt. No. 60), attorneys' fees were not discussed until after the class members' recovery and the injunction were negotiated fully in principle.

Accordingly, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).  The presumption of reasonableness in this action is fully warranted because the settlement is the product of arm's length negotiations conducted by capable, experienced counsel. *See M. Berenson Co*., 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42.  Given their experience and expertise, Class Counsel are well-

qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class.  Friedman Decl., ¶¶ 74-83.  Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.

### 3. The Relief Provided for the Class is Adequate Considering the Strength of the Lawsuit, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Litigation.  Friedman Decl. ¶¶ 40-61.  If the Litigation were to continue, the primary initial challenge for Plaintiff would be overcoming the pending appeal.  Defendants represented that over 95% of the Class Members entered into arbitration agreements such as the one entered into by Plaintiff.  *Id.* at ¶ 30.  The Ninth Circuit has recently held that such agreements can be a bar to class certification under the right circumstances.  *See O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018).  Even if Plaintiff won her appeal, Defendants would oppose any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation.  Also, additional substantive challenges to the claims would be raised, including a challenge on summary judgment.  In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Approval.  Friedman Decl, ¶¶ 40-58.

Similarly, Defendants believe that they have strong and meritorious defenses not only in the Litigation as a whole, as well as on the appeal, but also as to class certification and the amount of damages sought.  However, Defendants recognize that if a class were certified, there is some risk of a damages award substantially higher than the value of the Settlement.  The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not

recover.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.  As a result, Class Counsel supports the Settlement and seeks its Final Approval.  *Id*. at ¶¶ 3, 25.  The negotiated Settlement is a compromise avoiding the risk that the class might not recover and presents a fair and reasonable alternative to continuing to pursue the Action as a class action. What is more, Judge Meisinger, who is intimately familiar with the instant litigation as well as the current climate of similar class action litigation as a whole, agrees with the parties.

The benefits to the Class are meaningful, robust, wide in scope, and multifaceted, providing for automatic relief through automatic provision of Super Likes, additional monetary relief through the payment of cash or cash equivalents to those who make claims, and a not-to-be-discounted meaningful and valuable injunction preventing Defendants from implementing the allegedly unlawful price discrimination going forward, an injunction which carries benefits that can be directly tied to benefit Class Members, as well as other members of the general public, in furtherance of the purpose of the UCL.  This Settlement is valued at $24 million in benefits to the Class.

Processing claims is straightforward and will continue until 30 days after the Court Judgment becomes final.  Class Members will be given two additional reminder notices between the filing of these papers and the time the claims process closes.  Moreover, email notice is certainly the best notice practicable under the circumstances.  The recent amendments to Rule 23, specifically with respect to subdivision (c)(2), recognized the importance of using "contemporary methods" of giving notice to class members.  See Rule 23 advisory notes.

> "[T]echnological change since 1974 has introduced other means of communication that may sometimes provide a reliable additional or alternative method for giving notice. Although first class mail may often be the preferred primary method of giving notice, courts and counsel have begun to employ new technology to make notice more effective.  Because there is no reason to expect that technological change will cease, when selecting a method or methods of giving notice

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> courts should consider the capacity and limits of current technology, including class members' likely access to such technology."

*Id*.  In this case, Class Members were required to have an email address to use Tinder services.  Virtually all, if not all Class Members own smart phones, since that is how people generally use Tinder.  Such devices will largely be connected to those same email addresses.  Email notice was the best notice practicable, because it was directed instantly to the hands, pockets or bedside tables of Class Members.  That process will happen twice more, in case anyone forgot about the first email they received.  Claims are easy to process, because they can be made through a website accessible from the same smart phone device.  For the foregoing reasons, among others, the terms of the Settlement are fair to the Class Members, who were adequately notified of their rights to participate or opt out, if they so choose.

### 4.    The Attorneys' Fees Sought Are Reasonable

Class Counsel is requesting fees completely separately from the recovery of Class Members, meaning that the only person or entity which would benefit from a reduction of such fees would be Defendants, the very parties who are alleged to have violated the law.  Class Members are not bearing the burden of paying the fees out of their settlement shares.  Moreover, the fees were not negotiated until after class members' recovery was negotiated fully in principle, meaning that there is not only no evidence of collusion, but there can be no evidence of collusion because Class Counsel put the interest of the Class Members first.  No matter how the objectors spin the circumstances, that reality is undeniable and irrefutable.

The fee amount itself is well within the range of reasonableness, as set forth in detail in the Motion for Attorneys' Fees and costs. Dkt. No. 63.[8]  Indeed, counsel have provided detailed time records of the time spent working on this matter, and the resulting lodestar multiplier is 2.3, which is well within the range of reasonableness, especially considering the risk of litigation[9] and that the amount

---

[8]    Also, an objection to the fee amount is improper because the final number will be determined by the Court.

[9] The Ninth Circuit has held it would be improper to ignore litigation risk when

sought represents only 5% of the robust benefits afforded to the Class.[10]

### 5.   The Proposal Treats Class Members Equitably Relative to Each Other.

Class Action settlements require parity amongst class members.  There cannot be unequal treatment of some over others based on arbitrary factors, just as there cannot be discrimination based on price based on arbitrary factors.  And yet, one of the biggest problems with the Candelore Objectors' position is that they throw this principle to the wind, asking the Court to treat Class Members who signed arbitration agreements differently than those who did not, and afford such Class Members preferential treatment from a monetary relief standpoint.  This is the very definition of irony.  Such an approach would violate F.R.C.P. 23(e)(2)(D).

### 6.   The Objections Lack Merit

No Class Members objected to the Settlement except those acting as agents for other law firms that are actively involved in litigation on similar claims.  Moreover, only one out of the over 240,000 Class Members who is not represented by these same counsel opted out.  These facts should resonate strongly with the Court, and reveal that the only resistance to the Settlement comes not from Class Members, but from competing lawyers, specifically Candelore's counsel, and Davis & Norris, LLP.

The Davis & Norris objections are frivolous.  First, three of the four objectors are not even Class Members, and so have no standing to object.[11]  Second, none of

---

considering whether and to what extent to grant a lodestar multiplier. *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

[10] "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

[11] Those individuals have nothing to gain or lose in these proceedings; they do not have standing to object to this Settlement and cannot be prejudiced by its ultimate resolution.  *See* Esslinger v. HSBC Bank Nevada, N.A., 2012 WL 5866074, at *7

the Davis & Norris objectors have provided declarations or other information describing in any meaningful way why they object to the terms of the settlement. Instead, their counsel drafted boilerplate identical one page forms that provided no information whatsoever.  *See* Dkt. No. 70-3 to 70-6.  This is despite the class notice expressly stating that in order to object to the settlement, a Class Member must include "an explanation of why you object to the settlement, including any supporting documentation."  Moreover, the amended Rule 23 specifies that an objection "must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection."  See Fed. R. Civ. P. 23(e)(5).  All of the objections advanced by Davis & Norris are defective because they fail to conform to the requirements of either Rule 23, or the Notice.  Third, Davis & Norris filed the objections late.  The Court's Standing Order expressly specifies a 4:00 p.m. filing cutoff.  See Dkt. No. 14 § 3(b).  This requirement is noted both on the docket and on the Court's website, which is publicly available.  Objectors' counsel, who are licensed in California, should know to familiarize themselves with the Standing Orders of the Court, but apparently did not do that before filing a late objection.

Finally, Davis & Norris has twisted Class Counsel's concerns regarding arbitration and presented them out of context.  While Davis & Norris may be content representing 200 consumers in arbitrations that they have solicited people to bring on the coattails of the *Warner* action, *Candelore* action and this action, the other more than 240,000 Class members are apparently content remaining in this Action, and being bound by this Settlement.  Class arbitration is not an option, given the Supreme Court recent decision in *Lamps Plus, Inc. v. Varela*, 2019 WL 1780275 (S.Ct. April 24, 2019.)  Defendants are certainly not going to waive that argument given the recent Supreme Court precedent, and it is foolish for Davis & Norris to

---

(E.D. Pa. Nov. 20, 2012) (stating that non-class members "do not have standing to object to the settlement").  Objectors Mojica and Johnson are not class members because they paid the under 29 age rate, and do not have standing to bring a claim. Objector Rodriguez lived outside of California at the time of purchase.

suggest that class arbitration is an option, especially given the language in the ruling with respect to the due process dangers to absent class members stemming from arbitration of claims in a forum with no right to appeals or other judicial oversight. It is not an option.  Moreover, the objectors ignore the injunction secured by this Settlement, which benefits Class Members and other members of the general public, as well as consumers generally by creating an even playing field.  Class Counsel have not prevented any Class members from opting out and pursuing their arbitrations with counsel of their choice.  Meaningful notice was provided, and the option was waived by all except those who were told to invoke it by attorneys who plainly care a great deal about securing legal fees, but appear to have ignored that their overzealous approach would subject Class Members to class-wide arbitration, irrespective of the warnings recently issued by the Supreme Court.[12]

The Candelore Objections are even more suspect.[13]  Candelore has twice chosen to not object via an intervention, and now seeks to exclude himself entirely from the settlement.  It is obvious why this decision has been made by his counsel, and why proxies of his counsel Al Rava were used in his place.  Rule 23(e)(5)(B)(i) requires court approval of any payment or other consideration in connection with withdrawing an objection. Indeed, this amendment was passed expressly because:

> "some objectors may be seeking only personal gain, and using objections to obtain benefits for themselves rather than assisting in the settlement-review process.  At least in some instances, it seems that objectors—or their counsel—have sought to obtain consideration for withdrawing their objections or dismissing appeals from judgments approving class settlements.  And class

---

[12] Davis & Norris would have the Court commit reversible error.

[13] For the record, *Kim* is not a copycat case of *Candelore*.  There is a clear record that Candelore's counsel stole the Unruh Act theory developed and filed first by undersigned counsel in the case of *Billy Warner v. Tinder*, Inc., Case No. 2:15-cv-01668-MMM-AJW, Central District Court of California.  Candelore's counsel intentionally and knowingly top-filed Class Counsel, not the other way around. This will be discussed in more detail in the response to Objectors' papers. Ultimately this debate is a distraction from the real issue, which is whether the Settlement passes muster under the Rule 23 factors.

> counsel sometimes may feel that avoiding the delay produced by an appeal justifies providing payment or other consideration to these objectors. Although the payment may advance class interests in a particular case, allowing payment perpetuates a system that can encourage objections advanced for improper purposes."

See Rule 23 Advisory Notes. Candelore cannot object and extort a large fee from Defendants (or Class Counsel) because he would have to first advise the Court and seek approval for such a ploy. However, if his counsel Al Rava gets his personal friends, who are already well known vexatious litigants themselves and longstanding clients of his, to object, Candelore and Objectors' Counsel can use those objections as leverage to hang over the heads of Class Counsel, Defendants, and the Class members like the Sword of Damocles, and refuse to withdraw the Objections unless Candelore and his Counsel are paid a large sum of money in a side deal, which they would not have to disclose to the Court since Candelore opted out the Settlement and did not object. Circumventing Rule 23 in this manner is their end game, and it needs to be called out for what it is. The timing of the purchase of Tinder services by Mr. Frye, Mr. Frye's and Allison's[14] litigation history with Mr. Rava, and the fact that Candelore has twice filed quasi-objections while staying on the sidelines and opting out of the settlement make it very clear what is really happening.

Mr. Frye is a known personal associate of his counsel Al Rava, a vexatious litigant, and member of the National Coalition for Men ("NCFM").[15] Rich Allison is likewise an associate of the NCFM, acquaintance and proxy for Al Rava,[16] as

---

[14] Depositions have been scheduled for Mr. Allison and Mr. Frye for May 16, 2019.
[15] Al Rava, his counsel, is the Secretary of the NCFM, and Mr. Frye is a member of the same organization, who has filed dozens of lawsuits represented by his counsel Mr. Rava. It is also worth noting that Mr. Frye was not a Tinder Plus sibscriber until a few days after the *Candelore* appellate decision. Obviously Mr. Rava solicited Mr. Frye to act as a backup proxy for Mr. Candelore for purposes of objecting to this settlement to skirt the requirements of the amended Rule 23. This will be explored and discussed in more detail in the response to his objection.
[16] Mr. Rava is known to file questionable cases. In *Love v. Mail on Sunday*, 2007 WL 2709975 (C.D. Cal. Sept.7, 2007), Mr. Rava filed a case alleging 18 causes of

well as also being a well-known vexatious litigant in his own right.  Mr. Frye once sued a golf course under the Unruh Act for offering a discount to women during breast cancer awareness month, lost his case on a motion for summary judgment, appealed, and had the decision affirmed.  *See Frye v. VH Property Corp.*, 2014 WL 69126 (Ct. of Appeal, 2nd Dist., Div. 2, Cal. Jan. 8, 2014).  Mr. Allison once sued AMC theaters, again through Al Rava, for offering federal employees a free small popcorn during the federal furlough.  *See Rich Allison et al. v AMC Entertainment, Inc.*, Case No. 37-2014-00021952-CU-CR-CTL (San Diego Superior Court).[17] Suffice it to say the case was dismissed.  He also sued a girl's empowerment camp, again through Rava, for not letting his son join the camp.  Apparently when Al Rava wants to pursue a grievance, he enlists his buddies Rich Allison and Steve Frye to carry the mantle.  These are not legitimate disputes, they are manufactured by Mr. Rava, just like the objection he filed here.

There are many problems with the Candelore objections on substantive grounds as well, for the same reasons as were described in the preliminary approval Reply papers, plus others.  These will be addressed in detail in the responsive papers that will be filed on June 3, 2019, but some of the arguments warrant a brief response here.  First, the record will show that Super Likes are highly valuable to Class Members, as demonstrated by the fact that they are a significant source of revenue on a stand-alone basis for Defendants.  The fact that some Class Members might not use Super Likes does not mean they will not benefit from the monetary relief or the injunction. They could also opt out if they believe the relief is

---

action.  Through a series of numerous motions, the claims were subject to dismissal until the final summary judgment motion, which not only dispensed with the remaining claim, but left Mr. Rava's client subject to a $518,859 judgment to pay the opposing counsel's fees.  There are too many meritless claims brought by Mr. Rava to fit within the page limits of this brief.

[17]Mr. Candelore was a plaintiff in that case as well.  Apparently he, Mr. Rava and Mr. Allison are acquaintances, who apparently went to a movie together on October 10, 2013 according to the Complaint - more evidence of the bad faith nature of Mr. Allison bringing this Objection as Mr. Candelore's and Mr. Rava's proxy.

insufficient, which essentially nobody did except Candelore and the 200 or so active litigants.   Second, the argument that the fees sought are excessive is undermined by Ms. Kralowec's blog The UCL Practitioner, where she champions decisions where lodestar multipliers have been granted.[18]   Third, the *Candelore* opinion has limited import for this case because it was merely a pleadings-stage reversal of a grant of a demurrer, and has nothing to do with whether this class settlement should be approved for the numerous reasons set forth herein.   Fourth, Candelore's jurisdictional argument is circular (and easily mooted should that become necessary) and makes no more sense now than it did when they raised it at preliminary approval.

Fifth, the objection to typicality raised by Candelore misses the point.   Ms. Kim is typical because she raised the same claims as everyone else in the Class, sought the same relief as everyone else in the Class, and falls within the definition of the Class.   The distinctions drawn by Candelore are legally meaningless.   Sixth, even members of the Class who do not submit claims will benefit from the automatic inclusion in receipt of Super Likes and from the injunction.   This will be provided to all of the over 240,000 Class Members.   The estimate of value of $18 million is guaranteed, not including the additional cash payments to claimants. This is not a coupon settlement.   Seventh, it is reasonable to require that Class Members provide additional information before receiving cash, especially since Defendants do not have their physical mailing addresses or even their names, which are necessary to 1) confirm class membership, and 2) mail them a check. Eighth, the fees requested are reasonable, as set forth in the Motion for Attorney's Fees and Costs, and moreover are discretionary and ultimately up to the Court. Ninth, Objectors completely misrepresent and misunderstand the value of the injunction, by incorrectly arguing that the Class will not benefit from it.   Class

---

[18] "Under well-established Ninth Circuit decisional law, multipliers may be approved" *See* https://www.uclpractitioner.com/2012/09/ninth-circuit-withdraws-and-issues-new-opinion-in-class-action-settlement-case-dennis-v-kellog-co.html

Members will benefit from the change in structure by no longer being discriminated against based on their age. Whether they currently use Tinder or not is not the appropriate benchmark, and it also ignores the important benefit to the rest of the general public.

It is not surprising that objectors' counsel have advised their clients to object to this robust settlement. They want to get paid. But the fact that the objectors' counsel would prefer a settlement that compensates them is not a basis for rejecting this favorable class settlement. The Court is obligated to ignore this consideration as a basis for objection, because it is not one of the enumerated Rule 23 factors. The Court and Class Counsel have a higher obligation to the 240,000 Class members.

## V.   <u>CONCLUSION</u>

The Parties have reached this Settlement following extensive arms' length negotiations with the assistance of Judge Meisinger. The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process. For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorney's Fees, Costs, and Incentive Payment;
- Enter the proposed Final Judgment and Order of Dismissal With Prejudice submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.

Dated:  May 13, 2019                     Respectfully submitted,


By:  /s/ Todd M. Friedman
_____

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

John P. Kristensen (SBN 224132)
David L. Weisberg (SBN 211675)
Christina M. Le (SBN 237697)
**KRISTENSEN WEISBERG, LLP**

*Attorneys for Plaintiff and all others similarly situated.*

## PROOF OF SERVICE

1

2      I am employed in the County of Los Angeles, State of California.  I am over
3  the age of 18 and not a party to the within action.  My business Address is 21550
   Oxnard St., Suite 780, Woodland Hills, CA 91367.

4

5      On May 13, 2019, I served the following document(s) described as:
   **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**,
6  on all interested parties in this action by placing:

7

8      [X]    a true copy
       [ ]    the original thereof enclosed in sealed envelope(s) addressed as
9  follows:

10 Alexandra Hill
   ahill@manatt.com
11 Donald R. Brown
   dbrown@manatt.com
12 Robert H. Platt
   rplatt@manatt.com
13
   Manatt Phelps and Phillips LLP
14 11355 West Olympic Boulevard
   Los Angeles, CA 90064-1614
15

16     [X]    **BY CM/ECF:** I transmitted the document(s) listed above
              electronically to the e-mail addresses listed above.  I am readily familiar with
17            the Court's CM/ECF system and the transmission was reported as complete,
18            without error.

19

20     [X]    STATE – I declare under penalty of perjury under the laws of the State
              of California that the above is true and correct.
21

22     Executed on May 13, 2019, at Woodland Hills, California.

23
                              By:   /s/ Todd M. Friedman
24                                  Todd M. Friedman

25

26

27

28