Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21031 Ventura Blvd, #340
Woodland Hills, CA 91364
Telephone: (877) 619-8966
Facsimile: (866) 633-0028
tfriedman@toddflaw.com
abacon@toddflaw.com

***Attorneys for Plaintiff and all others similarly situated***

John P. Kristensen (SBN 224132)
**KRISTENSEN, LLP**
12450 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
john@kristensenlaw.com

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LISA KIM, individually on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>TINDER, INC., a Delaware corporation; MATCH GROUP, LLC, a Delaware limited liability company; MATCH GROUP, INC., a Delaware corporation; and DOES 1 through 10, inclusive, and each of them,<br><br>        Defendants. | Case No.: 2:18-cv-3093- JFW-AS<br><br>**PLAINTIFF LISA KIM'S AMENDED NOTICE OF MOTION & MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:          November 1, 2021<br>Time:          1:30 p.m.<br>Courtroom:   7A<br>Hon. John F. Walter |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 1, 2021, at 1:30 p.m., in Department 7A of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, plaintiff Lisa Kim ("Plaintiff"), for herself and others similarly situated, will move for an order granting preliminary approval of the class action settlement and certification of the settlement class as detailed in Plaintiff's memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declaration and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated:  October 4, 2021                    Respectfully submitted,

                                   By:
                                        */s/ Todd M. Friedman*

                                        Todd M. Friedman (SBN 216752)
                                        Adrian R. Bacon (SBN 280332)
                                        **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

                                        John P. Kristensen (SBN 224132)
                                        **KRISTENSEN, LLP**

                                        ***Attorneys for Plaintiff and all other similarly situated.***

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiff's counsel certifies that prior to filing the instant motion, the parties, through counsel, met and conferred pertaining to the subject matter of the instant motion.  Plaintiff filed a joint notice of compliance.  See Dkt. No. 117.  Defendants do not oppose this motion.

Dated:  October 4, 2021                Respectfully submitted,


By:  */s/ Todd M. Friedman*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

John P. Kristensen (SBN 224132)
**KRISTENSEN, LLP**

***Attorneys for Plaintiff and all others situated.***

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS.......................................................................... 4

       A.    Factual Background ........................................................................ 4

       B.    Proceedings to Date ........................................................................ 5

III.   THE SETTLEMENT ................................................................................ 7

       A. The Settlement Class. ...................................................................... 7

       B. Settlement Benefits……………………………………………….7

       C. Scope of Release............................................................................. 9

       D. Opportunity to Opt Out and Object………………………………..9

       E.  Class Representatives' Application for Incentive Awards. ................ 10

       F. Class Counsel's Application for Fees, Costs, and Expenses. ............... 10

       G.  The Modifications To Prior Settlement Presented in the Proposed
       Settlement Address The Ninth Circuit Concerns…………………………11

IV.    ARGUMENT ........................................................................................ 11

       A.    Standard for Preliminary Approval of Class Action Settlement. .... 11

             1.    Liability is Highly Contested and Both Sides Face
                   Significant Challenges in Litigating this Case. .................... 14

             2.    Defendants' Agreement to Provide a Universal Participation
                   Benefit, Along with Additional Cash/Cash Equivalent
                   Payments to Class Members and Injunctive Relief, Provides a
                   Fair and Substantial Benefit to the Class…………………..15

             3.    The Settlement Was Reached As the Result of Arms-
                   Length Negotiation, Without Collusion, With the
                   Assistance of the Mediator. .................................................. 17

             4.    Experienced Counsel Have Determined That the
                   Settlement Is Appropriate and Fair to the Class................... 17

       B.    The Court Should Preliminarily Certify the Class for Purposes
             of Settlement. .................................................................................. 18

             1.    The Proposed Class Is Numerous........................................... 18

             2.    The Commonality Requirement Is Satisfied, Because
                   Common Questions of Law and Fact Exist............................ 18

             3.    The Typicality Requirement Is Met. ...................................... 19

4.  The Adequacy Requirement Is Satisfied. ............................. 19

5.  Common Questions Predominate, Sufficient to Certify a Class for Settlement Purposes Only. ................................... 20

6.  Class Treatment for Settlement Purposes is Superior to Individual Resolutions. ........................................... 21

C.  The Proposed Method of Class Notice Is Appropriate. ................... 22

D.  The Court Should Provisionally Appoint the Class Representative and Appoint Class Counsel. ..................... 24

E.  The Court Should Appoint Epiq as the Settlement Administrator. ........................................................ 25

F.  A Final Approval Hearing Should Be Scheduled. ........................... 25

V.  CONCLUSION ....................................................................... 25

TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620 (1997) ...........................21

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ........................13

*Briggs v. United States*, Case No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010)...................................................................................15

*Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014) ...............................17

*Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993)23

*Culinary/Bartenders Trust Fund*, 244 F.3d at 1163…………………………..20,21

*Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018)...........................6

*Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) ............................16

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ...........................16

*Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998) ...................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).12, 13, 18, 19, 22

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ..................................................................................................................18

*Hopson v. Hanesbrands Inc.*, Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009)....................................................................15

*In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013)..16

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ..................................................................................................................16

*In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000)...............17

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) .....16

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995)................................................................................................12

*In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008)………………………………………………………………17, 18, 20

*Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988).......................................13

*Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) .................................16

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).......24

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) ............14

*Lo v. Oxnard European Motors, LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012) ........................................................................23

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001)………………………………………..20

*Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) .............23

*McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017)........................................................6

*Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) ......................................16

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ........22

*Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ............................16

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)......................................................................................................................16

*O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018) ................14

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).12, 13

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970)...........................................................................13

*Schaffer v. Litton Loan Servicing, LP*, CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012) .................................................23

*Shames v. Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL 5392159 at *13 (S.D. Cal. Nov. 5, 2012)...........................................................15

*Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) .........................................22

*Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)....................................20

*Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005)..22

*Utility Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989)......................................................................................................................12

*Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ................21

*Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) ........................19

*West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971) ................13

*Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001) ....................20

**Statutes**

4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*")...............................................12

*Cal. Bus. & Prof. Code* §§ 17200, et seq. ...............................................................5

*Cal. Civ. Code* §§ 51, et seq……………………………………………5,16,17,19,20

*Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*")
  § 21.63, *et seq*.,……………………………………………………………11, 12, 13

*Moore's Federal Practice – Civil* § 23.165[3] (3d ed.) .......................................13

**Rules**

Fed. R. Civ. Proc. 23..........................................................................................11, 18

Fed R. Civ. Proc. 23(a)(1)…………………………………………………………18

Fed. R. Civ. Proc. 23 (a)(4)……………………………………………………19,20

Fed. R. Civ. Proc. 23(b)(3)………………………………………………18,20,21,22

Fed. R. Civ. Proc. 23(c) ..................................................................................20, 21

Fed. R. Civ. Proc, 23 (c)(2)(B)…………………………………………………….22

Fed. R. Civ. Proc. 23(e)(1)(B)…………………………………………….………22

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    INTRODUCTION

Plaintiff Lisa Kim ("Plaintiff"), individually and on behalf of the "Settlement Class" (as defined below), submits this amended motion for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation") and of certification of the proposed Settlement Class.  Defendants Tinder, Inc.,[1] Match Group, LLC, and Match Group, Inc. ("Defendants") do not oppose this motion. (Plaintiff and Defendants are collectively referred to as the "Parties").  The terms of the Settlement are set forth in the Amended Class Action Settlement Agreement (hereinafter the "Agreement").[2]  (*See* Declaration of Todd M. Friedman (*"Friedman Decl."*), Ex A.)

The Settlement resulted from the Parties' participation in a Second all-day mediation session before the Honorable Louis M. Meisinger (Ret.) of Signature Resolution and subsequent settlement discussions, after the Ninth Circuit rejected the parties' previous class action settlement approved by this Court. *See* Dkt. No. 109.  The Settlement provides for a substantial financial benefit to each Settlement Class Member ("Member").  The Settlement Class consists of:

> *Every person in California who subscribed to Tinder Plus or Tinder Gold during the Class Period and at the time of the subscription was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class.*[3] (Agreement § 2.21.)

---

[1]  Pursuant to a merger in 2017, Tinder, Inc.'s assets and liabilities were acquired by Match Group, LLC.

[2] Unless otherwise defined herein, capitalized terms used in this memorandum shall have the same meaning ascribed to them in the Agreement.

[3]  The Class Period is from March 2, 2015 through March 1, 2019. (Agreement § 2.6.)

1    The compromise Settlement reached with the guidance of Judge Meisinger
2  will create a Settlement Fund to be established by Defendants in the amount of
3  $5,200,000. (Agreement § 3.3.)  In addition to the common fund monetary relief,
4  Tinder will deposit (i) 50 free Super Likes (worth $79.50, with each Super Like
5  valued at its selling price of $1.59), and (ii) one Boost (worth $7, valued at its
6  selling price of $7) into the Tinder account of every Settlement Class Member who
7  at that time has a Tinder account, so long as the email address associated with the
8  account is the same as when the Member purchased Tinder Plus or Tinder Gold
9  during the Class Period.[4]  Defendants shall advise Settlement Class Members via
10  the Class Notice that they must have an account in place in order to receive the
11  deposit of Super Likes and Boost. (Agreement § 3.2.)

12    The Settlement requires Class Notice via email to each Member, explaining
13  key terms of the Settlement, including benefits under the Settlement and how to
14  opt out of or object to the Settlement.  (*See* Agreement Ex 2.)

15    The proposed Claim Form requires each Member to provide contact and
16  Tinder account information, an authorization for Defendants to obtain from Apple
17  or Google, as applicable, verification that the Member had purchased a
18  subscription to Tinder Plus or Tinder Gold and had not received a refund or
19  chargeback, and confirmation under penalty of perjury that the Member resided in
20  California when he or she purchased the subscription. (Agreement § 5.1 and Exs.
21  2 and 3.)

22    In February 2019, as envisioned under the Former Agreement, for new
23  subscriptions to Tinder Plus or Tinder Gold purchased in California, Tinder
24  stopped offering a discounted price to subscribers under the age of 29. While the
25  Former Agreement is no longer operable, Tinder agrees in the new Agreement to
26  continue not offering a discounted price to users under the age of 29 who purchase

27  _____
28  [4] Settlement Class members who no longer have active accounts will be able to
    activate their accounts and these benefits will be made available to them as well.

1  a new subscription to Tinder Plus or Tinder Gold in California, including through

2  and after the Benefit Deadline, subject to the following: (a) Tinder reserves the

3  right to offer a youth discount to subscribers age 21 or younger; and (b) in the event

4  of (i) the enactment of legislation in California subsequent to the date of this

5  Agreement that specifically addresses age-based pricing and, reasonably

6  interpreted, would permit age-based pricing by Tinder using other age cut-offs, (ii)

7  the issuance subsequent to the date of this Agreement of an appellate decision by

8  any court in California to the same effect, or (iii) the enactment of legislation in

9  California subsequent to the date of this Agreement expressing a public policy in

10  favor of or benefiting a particular age group, Tinder may implement age-based

11  pricing in California consistent with such legislation or case law. (Agreement §

12  3.4.)

13      Furthermore, Defendants have agreed to pay the costs of Notice and

14  Settlement administration out of the Settlement Fund, and, subject to Court

15  approval, a proposed award of attorneys' fees.  Class Counsel will be requesting

16  an award of $1,200,000 in fees plus a reasonable cost reimbursement, out of the

17  $5,200,000 Settlement Fund. (Agreement §§ 5.5, 7.1-7.4.)  However, the

18  Settlement agreement contains no clear sailing provision and is subject to Court

19  approval and the final approval stage.  Plaintiff's counsel will NOT be asking for

20  any additional fees beyond those which were requested under the prior Settlement,

21  despite additional benefits having been negotiated and additional work having been

22  performed.  (Agreement at §7.1.)

23      While Plaintiff is confident of a favorable determination on the merits, she

24  has determined that the Settlement provides significant benefits to the Class and is

25  in the best interests of the Class.  Plaintiff also believes that the Settlement is

26  appropriate because Plaintiff recognizes the expense and amount of time required

27  to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties

28  of proof inherent in prosecuting such claims.  Similarly, as evidenced by the

1   Agreement, Defendants believe that they have substantial and meritorious defenses
2   to Plaintiff's claims, but have determined that it is desirable to settle the Litigation
3   on the terms set forth in the Agreement.

4   Plaintiff believes that the Settlement satisfies all of the criteria for
5   preliminary approval.   Accordingly, Plaintiff moves this Court for an order
6   preliminarily approving the Settlement, provisionally certifying the Settlement
7   Class pursuant to Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") for
8   settlement purposes, directing dissemination of Class Notice, and scheduling a
9   Final Approval Hearing.

10  **II.**   **STATEMENT OF FACTS**

11  **A.**   **Factual Background**

12  Tinder is a smartphone-based dating application that is used by consumers
13  throughout the world, including California. The core functionality of the app
14  enables users to view profiles of other users in the same geographic locale and to
15  either indicate an interest in (i.e., to "like") another user or, alternatively, indicate
16  a lack of interest.  If two users indicate an interest in each other's profile, they can
17  then communicate with each other through the app.  The app also allows a user to
18  indicate a heightened degree of interest in another user through a feature known as
19  a "Super Like."  The app offers another premium feature called "Boost," which
20  allows a user to be one of the top profiles in their area for 30 minutes, increasing
21  their chances for a match.  Tinder has represented that approximately 35% of Class
22  Members still have an active Tinder account, which Class Counsel are verifying in
23  confirmatory discovery.

24  The app may be downloaded and used for free, but certain additional or
25  premium features can only be accessed by purchasing a subscription to Tinder Plus
26  or Tinder Gold.  Such features include, among other things, unlimited likes
27  (whereas the free version has a daily limit), no paid advertisements, the ability to
28  undo dislikes, the ability to view profiles in other locales, and to ability to exert

more control over other variables involved in using the app.  User of the app may purchase Super Likes for a typical price of $1.59 cents each, and may purchase a Boost for $7 each.

Plaintiff, a female user over the age of 29, alleges that when she and Class Members purchased Tinder premium services (Plus or Gold), Defendants discriminated against such consumers based on age, by charging more money for the same service for consumers age 29 and older.  Plaintiff claims that Defendants' widespread and uniform conduct is in direct violation of the Unruh Civil Rights Act, *Cal. Civ. Code* §§ 51, et seq. ("Unruh Act"), which generally outlaws age discrimination by businesses operating in California. In addition, Plaintiff alleges that Defendants' pricing scheme violates the Unfair Competition Law, *Cal. Bus. & Prof. Code* §§ 17200, et seq. ("UCL").  Plaintiff sought three categories of relief: 1) monetary relief under the Unruh Act in the form of statutory penalties; 2) restitutionary relief, i.e. a refund of the unlawful premiums charged to users age 29 or older ($10 per month per user); and 3) public injunctive relief putting a halt to Defendants' unlawful age-based price discrimination scheme.   Defendants vigorously dispute Plaintiff's claims, dispute that Plaintiff will prevail on her current appeal of the Court's Order granting Defendants' motion to compel arbitration, and deny all charges of wrongdoing or liability asserted against them in the Litigation.

### B.    Proceedings to Date

On April 12, 2018, Plaintiff filed her class action lawsuit against Defendants, alleging that Defendants violated the Unruh Act. Defendants responded on June 11, 2018 by filing filed a Motion to Compel Arbitration or Stay Under the *Colorado River* Abstention Doctrine. On June 22, 2018, Plaintiff filed her First Amended Complaint, adding the UCL cause of action for public injunctive relief. In their Motion, Defendants claimed that Plaintiff had entered into an arbitration agreement based on her alleged assent to the arbitration provision in Tinder app's

Term of Use through the use of "sign-up wrap" consent in order to access the app. Defendants' Motion to Compel Arbitration was granted on July 5, 2018, and the Court compelled Plaintiff's claims to arbitration.

On July 16, 2018, Plaintiff filed her appeal of the Court's decision on the Motion, based on her position that the Court did not appropriately consider California Supreme Court precedent interpreting substantive California law in *McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017), which states that claims for public injunctive relief, such as the one brought in Plaintiff's case under the UCL, cannot be compelled to arbitration.  In addition, Plaintiff would argue that the Court disregarded recent relevant appellate case law, *Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018), which bore directly on whether there was appropriate assent by Plaintiff and the Class Members to the Tinder app's Term of Use.[5]

A mediation was scheduled for November 29, 2018, and the Parties stipulated to continue the initial briefing deadlines in the appeal.  The Parties attended a mediation with Judge Meisinger on November 29, 2018.  The Parties did not resolve the case at the mediation but engaged in subsequent discussions with Judge Meisinger. With his guidance, this Settlement was reached on December 1, 2018.  (*See Friedman Decl.*, ¶¶ 12-14.) On March 1, 2019, this Honorable Court granted Plaintiff's Motion for Preliminary Approval of Class Settlement (Dkt. No. 60), and subsequently granted Final Approval on June 19, 2019, over an objection made by Rich Allison and Steve Frye (*see* Dkt. No.90), who subsequently appealed the decision.

On August 17, 2021, in a narrow 2-1 Decision with a strong and lengthy Dissent, the 9th Circuit Court of Appeals reversed the order granting Final Approval

---

[5] The *Cullinane* opinion was rendered the same day Plaintiff's opposition to Defendants' Motion was due, leaving Plaintiff no time to incorporate arguments and facts related to the on-point case into her opposition. The Court did not consider Plaintiff's Notice of the new case, and denied Plaintiff's Ex Parte Application to provide supplemental briefing as a result of the new opinion.

1   and For Attorneys' Fees, primarily taking issue with the clear sailing provision on
2   attorneys' fees, and the valuation method used to assess the fairness of the
3   Settlement as a whole. (*See* Dkt. No. 109.) Following remand to this Court, the
4   Parties attended another all-day mediation with Judge Meisinger on September 3,
5   2021, in order to improve upon the settlement. Although the case did not settle on
6   that day, after subsequent discussions, with the guidance of the mediator, the
7   Parties agreed to resolve this matter further and entered into a second settlement
8   agreement. (*Friedman Decl.*, Ex A.)

9        As set forth below, Plaintiff respectfully requests that the Court approve the
10   Settlement.

11   **III.   THE SETTLEMENT**

12        **A.   The Settlement Class.**

13   The "Settlement Class" is defined in the Agreement as follows:

14        *"Every California subscriber to Tinder Plus or Tinder Gold*
15        *during the Class Period who at the time of subscribing was at*
16        *least 29 years old and was charged a higher rate than*
17        *younger subscribers, except those who choose to opt out of*
18        *the Settlement Class."* (Agreement § 2.21.)

19   The Class Period is from March 2, 2015 through March 1, 2019.  (*Id.* § 2.6.)
20   Defendants maintain email addresses for the vast majority of users of the app, and
21   based on data provided by Defendants and their counsel, the Class contains
22   approximately 240,000 Members.  (*See Friedman Decl.*, ¶¶ 25.)

23        **B.   Settlement Benefits.**

24        Under the Settlement, Defendants agree to create a Settlement Fund in the
25   amount of $5,200,000. (Agreement § 3.3.)   In addition to the common fund
26   monetary relief, Defendant will deposit (i) 50 free Super Likes (worth $79.50, with
27   each Super Like valued at its selling price of $1.59), and (ii) one Boost (worth $7,
28   valued at its selling price of $7) into the Tinder account of every Settlement Class

Member who at that time has a Tinder account, so long as the email address associated with the account is the same as when the Member purchased Tinder Plus or Tinder Gold during the Class Period.  Defendants have represented that 35% of Class Members still have a Tinder account, and Class Counsel intends to serve an interrogatory on Defendants to confirm.  Class Members without active accounts will still be eligible for the automatic benefits, upon reactivation of their account. The proposed Class Notice advises Settlement Class Members that they must have an account in place in order to receive the deposit of Super Likes and Boost. (Agreement § 3.2.)

Pursuant to the Agreement, Class Notice will be sent via email to the approximately 240,000 persons in the Settlement Class. (Agreement § 1.4, 4.3-4.4; Ex A-2.)

The Class Notice will explain that every Settlement Class Member, in addition to receiving a deposit of Super Likes and Boost, is eligible to apply for a monetary payment by submitting a Claim Form. The payment will be in an amount equivalent to a pro rata share of the Settlement Fund, net of costs of administration, attorneys' fees, costs, and incentive award.  The Agreement provisionally sets the payment at $50 per valid claim, but that amount could increase pro rata, without limit, or decrease pro rata, to a floor of $30, depending on the number of Claim Forms submitted and the amount of net funds in the Settlement Fund.  Defendants have agreed to supplement the Settlement Fund if necessary to satisfy the $30 floor.[6]  Settlement payments will made in the form of a check that will be mailed by the Settlement Administrator. (Agreement § 3.3.)

Moreover, out of the common fund, Defendants have agreed to retain a

---

[6] Class Counsel anticipate that the claims' participation rate would have to exceed 50%, which is uncharacteristically high for settlements of this nature, in order for the floor to be triggered.  However, it was important to Class Counsel to guarantee that Class Members received equal if not greater financial incentive to participate in this settlement than in the prior settlement that was subject to the appeal.

Settlement Administrator and to pay for any and all costs associated with administering the Settlement, including Class and CAFA Notice, handling of claims and the distribution of monetary payments to Members who choose that option, and developing and maintaining the Settlement Website. (Agreement §§ 4.3-4.5, 5.4.)

CAFA notice will provided within 10 days after the filing of this motion. (Agreement § 4.1.)   The Settlement Administrator, by reason of the Former Agreement and settlement, already has information necessary to provide e-mail notice to the Class, which Defendants will update as appropriate.[7] (*Id.* §§ 4.3, 4.4). Similarly, there is already a Settlement Website by reason of the previous settlement, which the Settlement Administrator will update and ensure that it contains relevant documents pertaining to the Settlement including the Settlement Agreement, the Claim Form, the Class Notice, and the Preliminary Approval Order.  (Agreement § 4.5.)

**C.  <u>Scope of Release.</u>**

The Agreement provides that Members who do not request exclusion from the Settlement will release any and all claims, known or unknown, against the Releasees based in any manner on the allegation that subscribers to Tinder Plus or Tinder Gold were charged a higher price depending on their age.  (Agreement § 8.1.)

**D.  <u>Opportunity to Opt Out and Object.</u>**

Under the terms of the proposed Settlement, Members will have the right to opt out of the Settlement or object to its terms.  A Member who wishes to opt out of the Settlement must, no later than 30 days after the Class Notice Date, mail an

---

[7] Email is the best notice practicable because Defendants generally maintain email address data for Class Members but not physical addresses or other information (such as landline phone numbers) that would permit Class Counsel to efficiently conduct a reverse lookup and send mail notice.

opt-out request to counsel for the Parties. (Agreement § 4.8.) A Member who does not opt out and who wishes to object to the Settlement may do so by filing with the Court and mailing to counsel for the Parties, no later than 30 days after the Class Notice Date, a notice of objection and/or request to be heard at the Final Approval Hearing. (Agreement § 4.7.) Any such notice must include the case name and number, the Member's name and contact information and the email address or phone number associated with the Member's Tinder account, a statement of all grounds and legal support for the objection and copies of any supporting documentation, a list of other cases in which the Member has objected to a class action settlement, and an affirmation under penalty of perjury that the Member had purchased a subscription to Tinder Plus or Tinder Gold during the Class Period at a time when the Member was at least 29 years old and resided in California. (*Id.*)

### E.   Class Representative's Application for Incentive Awards.

Plaintiff may request an incentive award, which Defendants may oppose. (Agreement § 7.2.) If awarded, the payment will be made out of the Settlement Fund. (*Id.* § 2.22.)

### F. Class Counsel's Application for Fees, Costs, and Expenses.

Class Counsel may request an award of attorneys' fees plus reasonable costs, which Defendants may oppose—there is no so-called "clear-sailing" provision. (Agreement § 7.1.) If awarded, the payment will be made out of the Settlement Fund. (*Id.* § 2.22.)

Class Counsel intends to request fees in the amount of $1,200,000, under the lodestar and percentage of the fund methods. Class Counsel will not be asking for any additional fees for additional work performed on this Settlement, despite the increased value of the Settlement and additional hours spend since the Previous Order Granting Final Approval and Motion for Fees and Costs.

1      **G. <u>The Modifications To Prior Settlement Presented in the Proposed</u>**
2               **<u>Settlement Address The Ninth Circuit's Concerns</u>**

3         The Settlement reached by the Parties with the assistance of Judge Meisinger

4 addresses the concerns raised by the Ninth Circuit regarding the terms of the prior

5 Settlement approved by the Court.  The Ninth Circuit was concerned with the

6 appearance of possible collusion due to the presence of a clear sailing provision on

7 the separately-negotiated attorneys' fees provision. That provision has been

8 removed entirely.  The Ninth Circuit was also concerned with the valuation of the

9 settlement as presented by the Parties.  That too has been modified, with the

10 injunctive relief claims remaining the same (but not subject to valuation), the

11 automatic benefits having been improved (with an additional Boost feature being

12 added, and with existing benefits being of a now-higher expense due to the passage

13 of time), and with the monetary component being revised to a common fund, with

14 a floor of benefits to claimants, and a pro rata share of net benefits to valid

15 claimants.  The valuation of these claims are described herein.  It is important to

16 note that none of the concerns of the Ninth Circuit raised by its Order are present

17 in this proposed Settlement.

18 **IV. <u>ARGUMENT</u>**

19      **A. <u>Standard for Preliminary Approval of Class Action Settlement.</u>**

20         A class action may not be dismissed, compromised or settled without the

21 approval of the court. Fed. R. Civ. Proc. 23(e).  Judicial proceedings under Rule 23

22 have led to a defined procedure and specific criteria for settlement approval in class

23 action settlements, described in the *Manual for Complex Litigation* (Fourth) (Fed.

24 Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, including preliminary approval,

25 dissemination of notice to class members, and a fairness hearing.  *Manual*,

26 §§ 21.632, 21.633, 21.634.  The purpose of the Court's preliminary evaluation of

27 the settlement is to determine whether it is within the "range of reasonableness,"

28 and thus whether notice to the class of the terms and conditions of the settlement,

and the scheduling of a formal fairness hearing, are worthwhile.  *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq*., and § 13.64 (4th ed. 2002 and Supp. 2004) ("*Newberg*").  The Court is not required to undertake an in-depth consideration of the relevant factors for final approval.  Instead, the "judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Manual*, § 21.632 (4th ed. 2004).

As a matter of public policy, settlement is a strongly favored method for resolving disputes.  *See Utility Reform Project v. Bonneville Power Admin*., 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in class actions such as this. *See Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982).  As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."  *In re Prudential Sec. Inc. Ltd. Partnerships Litig*., 163 F.R.D. 200, 209 (S.D.N.Y. 1995). To make the preliminary fairness determination, courts may consider several relevant factors, including "the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; [and] the experience and views of counsel . . . ." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("*Hanlon*").  Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

1    Preliminary approval does not require the Court to make a final

2    determination that the settlement is fair, reasonable, and adequate.  Rather, that

3    decision is made only at the final approval stage, after notice of the settlement has

4    been given to the class members and they have had an opportunity to voice their

5    views of the settlement or to exclude themselves from the settlement.  *See* 5 James

6    Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.)  Thus, in

7    considering a potential settlement, the Court need not reach any ultimate

8    conclusions on the issues of fact and law which underlie the merits of the dispute,

9    *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not

10   engage in a trial on the merits, *Officers for Justice v. Civil Service Comm'n,* 688

11   F.2d at 625.  Preliminary approval is merely the prerequisite to giving notice so

12   that "the proposed settlement . . . may be submitted to members of the prospective

13   class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator*

14   *& Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

15   Preliminary approval of the settlement should be granted if, as here, there

16   are no "reservations about the settlement, such as unduly preferential treatment of

17   class representatives or segments of the class, inadequate compensation or harms

18   to the classes, the need for subclasses, or excessive compensation for attorneys."

19   *Manual for Complex Litigation* § 21.632, at 321 (4th ed. 2004).  Furthermore, the

20   opinion of experienced counsel supporting the settlement is entitled to considerable

21   weight. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion

22   of experienced counsel carries significant weight in the court's determination of

23   the reasonableness of the settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

24   622 (N.D. Cal. 1979). (Recommendations of plaintiffs' counsel should be given a

25   presumption of reasonableness).

26   The decision to approve or reject a proposed settlement "is committed to the

27   sound discretion of the trial judge[.]" *See Hanlon*, 150 F.3d at 1026.  This

28   discretion is to be exercised "in light of the strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned," which minimizes substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quotations omitted). Based on these standards, Plaintiff respectfully submits that, for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

### 1. Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case.

Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation. While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Litigation. (*See Friedman Decl*, ¶¶ 37-41.) If the Litigation were to continue, the primary initial challenge for Plaintiff would be overcoming the pending appeal. Defendants represented that over 95% of the Class Members entered into arbitration agreements such as the one entered into by Plaintiff. (*Id*. at ¶ 25.) The Ninth Circuit has recently held that such agreements can be a bar to class certification under the right circumstances. *See O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018).[8] Even if Plaintiff won her appeal, Defendants would likely challenge any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation. Also, additional substantive challenges to the claims might be raised, including a challenge on summary judgment. In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class. As a result, Class Counsel supports the Settlement and seek its Preliminary Approval. (*See Friedman Decl*, ¶¶ 37-55.)

---

[8] Notably, Class Counsel have a decorated history of successfully litigating class actions on appeal in federal court on motions to compel arbitration, and are eminently qualified to assess this risk.

Similarly, Defendants believe that they have strong and meritorious defenses not only in the Litigation as a whole, as well as on the appeal, but also as to class certification and the amount of damages sought.  However, Defendants recognize that if a class were certified, there is some risk of a damages award substantially higher than the value of the Settlement.  The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not recover.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.

> **2.    Defendants' Agreement to Provide a Common Fund Settlement, along with Universal Participation Benefit, and Injunctive Relief, Provides a Fair and Substantial Benefit to the Class.**

As set forth above, Defendants have agreed to create a $5,200,000, non-reversionary cash Settlement Fund, along with other substantial non-monetary and injunctive benefits to the Class Members after being sent email notice to the email address they used recently for their Tinder account.

As a result, it is anticipated that the vast majority of the Settlement will provide direct and meaningful benefits to the Settlement Class.  *See Shames v. Hertz Corp.*, Case No. 07-CV-2174-MMA WMC, 2012 WL 5392159 at *13 (S.D. Cal. Nov. 5, 2012) (settlement was fair where the parties "negotiated a settlement that provide[d] direct payment to class members"); *Hopson v. Hanesbrands Inc.*, Case No. CV-08-0844 EDL, 2009 WL 928133, at *11 (N.D. Cal. Apr. 3, 2009) ("the benefits can be accurately traced because they are monetary payments directly to Class Members"); *Briggs v. United States*, Case No. C 07-05760 WHA, 2010 WL 1759457 (N.D. Cal. Apr. 30, 2010) (settlement agreement was fair where it did not require class members to file claim forms).

This Settlement intentionally avoids providing significant benefits to a *cy pres* recipient at the expense of the class.  *See Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (9th Cir. 2012) (the amount of a *cy pres* award "must be examined with great care to eliminate the possibility that it serves only the 'self-interests' of the attorneys and the parties, and not the class"); *Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) ("We require district judges to be reasonably certain that class members will benefit before approving a cy pres settlement."); *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1049 (S.D. Cal. 2013).[9]

The settlement award that each Settlement Class Member will receive is fair, appropriate, and reasonable given the purposes of the Unruh Act and UCL and in light of the anticipated risk, expense, and uncertainty of continued litigation. Although the Unruh Act provides for statutory damages of $4,000 per violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to a percentage of the potential recovery that might be available to the class members at trial.  *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of the strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-

---

[9] Courts favor direct payment to class members over *cy pres* distributions.  *See Molski v. Gleich*, 318 F.3d 937, 954-55 (9th Cir. 2003) *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (*cy pres* provision is a disfavored substitute for distribution of benefits directly to class members); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("[T]he cy pres doctrine—unbridled by a driving nexus between the plaintiff class and the cy pres beneficiaries—poses many nascent dangers to the fairness of the distribution process.").

1   approved settlement amount that was small fraction of the maximum potential
2   recovery); *In re Mego Fin'l Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000).
3   California Appellate Courts have upheld the reasonableness of Unruh Act class
4   action settlements which provided for no monetary relief, but rather only injunctive
5   relief. *See Carter v. City of Los Angeles*, 224 Cal.App.4th 808 (2014) (injunction
6   only class settlement under Unruh Act upheld as fair and reasonable, however
7   overturning district court order based solely on the fact that non-opt out provision
8   violated due process).
9        Thus, the Settlement provides substantial benefit to the Class Members, as
10  they will receive meaningful monetary recovery with no burden and no expense.

11               **3.    The Settlement Was Reached As the Result of Arms-Length
12                      Negotiation, Without Collusion, With the Assistance of the
13                      Mediator.**
14        The Settlement is the result of intensive arms'-length negotiation, including
15  a second all-day mediation session before the Hon. Louis Meisinger. The Parties
16  also engaged in subsequent negotiations through Judge Meisinger by email and
17  phone.  With the guidance of Judge Meisinger, and working independently of the
18  Court, the Parties were able to reach a second proposed resolution of this case.
19  Class Counsel are satisfied that the information provided about the number of Class
20  Members is accurate.  The time and effort spent examining and investigating the
21  claims militate in favor of preliminary approval of the proposed Settlement, as the
22  process strongly indicates that there was no collusion.  *See In re Wireless Facilities,*
23  *Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow
24  sufficient discovery and genuine arms-length negotiation are presumed fair.").

25               **4.    Experienced Counsel Have Determined That the
26                      Settlement Is Appropriate and Fair to the Class.**
27        Plaintiff is represented by counsel experienced in complex class action
28  litigation.  Class Counsel have extensive experience in class actions, as well as

1   particular expertise in class actions relating to consumer protection.  (*See Friedman*
2   *Decl.*, ¶¶ 42-54.)  Class Counsel believe that the Settlement is fair, reasonable and
3   adequate.  Their opinions should be given deference by The Court.

4       **B.    The Court Should Preliminarily Certify the Class for Purposes**
5            **of Settlement.**

6       Courts have long acknowledged the propriety of class certification for
7   purposes of a class action settlement.  *See In re Wireless Facilities*, 253 F.R.D. at
8   610 ("Parties may settle a class action before class certification and stipulate that a
9   defined class be conditionally certified for settlement purposes"). Certification of
10  a class for settlement purposes requires a determination that certain requirements
11  of Rule 23 are met.  *Id.*  As explained below, class certification for settlement
12  purposes is appropriate here under Rule 23(a) and Rule 23(b)(3).

13          **1.    The Proposed Class Is Numerous.**

14      Class certification under Rule 23(a)(1) is appropriate where a class contains
15  so many members that joinder of all would be impracticable.  "Impracticability
16  does not mean 'impossibility,' but only the difficulty or inconvenience of joining
17  all members of the class.'"  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d
18  909, 913-14 (9th Cir. 1964) (citation omitted).  Here, the Settlement Class consists
19  of 230,000 Class Members who subscribed to Tinder Plus or Tinder Gold when
20  they were at least 29 years old and paid a higher price than subscribers under the
21  age of 29.  Thus, the proposed Class is sufficiently numerous for purposes of
22  certifying a settlement class.

23          **2.    The Commonality Requirement Is Satisfied, Because**
24              **Common Questions of Law and Fact Exist.**

25      The commonality requirement is met if there are questions of law and fact
26  common to the class.  *Hanlon*, 150 F.3d at 1019 ("The existence of shared legal
27  issues with divergent factual predicates is sufficient, as is a common core of salient
28  facts coupled with disparate legal remedies within the class.").  Here, for purposes

1    of settlement, the proposed Members' claims stem from the same factual
2    circumstances, that Members age 29 or older who subscribed to Tinder Plus or
3    Tinder Gold paid a higher price than those under the age of 29.

4        Plaintiff's claims also present questions of law that are common to all
5    members of the Class for settlement purposes, including: (1) whether Defendants
6    violated the Unruh Act; (2) whether Defendants willfully or knowingly violated
7    the UCL; and (3) whether the Member is subject to the arbitration agreement in the
8    Tinder Terms of Use.  The Members all seek the same remedy.  Under these
9    circumstances, the commonality requirement is satisfied for purposes of certifying
10   a settlement class.  *See Hanlon,* 150 F. 3d at 1019-20.

11                **3.    The Typicality Requirement Is Met.**

12       The typicality requirement is met if the claims of the named representatives
13   are typical of those of the class, though "they need not be substantially identical."
14   *Hanlon*, 150 F.3d at 1020.  For purposes of settlement, Plaintiff's claims are typical
15   of the class because they arise from the same factual basis – that Members age 29
16   or older who subscribed to Tinder Plus or Tinder Gold paid a higher price than
17   those under the age of 29.  *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D.
18   Cal. 1987).  The Class Representative claims that she was over the age of 29 when
19   she subscribed to Tinder Plus in California, paying a higher price for the service
20   than other Tinder subscribers under the age of 29.   Accordingly, the Class
21   Representative's claims are typical of those of the Settlement Class. Thus, the
22   typicality requirement is satisfied for purposes of certifying a settlement class.

23                **4.    The Adequacy Requirement Is Satisfied.**

24       Rule 23(a)(4) is satisfied if "the representative parties will fairly and
25   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court
26   must measure the adequacy of representation by two standards: "(1) Do the
27   representative plaintiffs and their counsel have any conflicts of interest with other
28   class members, and (2) will the representative plaintiffs and their counsel prosecute

1   the action vigorously on behalf of the class?"  *In re Wireless Facilities*, 253 F.R.D.

2   at 611 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

3         Plaintiff and Class Counsel have no conflicts of interest with other Class

4   Members because, for purposes of the Settlement, Plaintiff's claims are typical of

5   those of other Settlement Class Members.  In addition, Plaintiff and Class Counsel

6   have been prosecuting this Litigation vigorously on behalf of the Class.  Plaintiff

7   and Class Members share the common goal of protecting and improving consumer

8   and privacy rights throughout California, and there is no conflict among them.

9   Class Counsel have extensive experience in business and corporate litigation,

10  including the prosecution of class actions seeking to protect privacy and consumer

11  rights.  Class Counsel is qualified to represent the interests of the Class.  Rule

12  23(a)(4) is therefore satisfied for purposes of certifying a settlement class.

13                **5.       Common Questions Predominate, Sufficient to Certify a**

14                **Class for Settlement Purposes Only.**

15        Class certification under Rule 23(b)(3) is appropriate where "questions of

16  law or fact common to class members predominate over any questions affecting

17  only individual members."  Fed. R. Civ. P. 23(b)(3).  The inquiry focuses on

18  whether the class is "sufficiently cohesive to warrant adjudication by

19  representation."  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las

20  Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Central to this question

21  is "'the notion that the adjudication of common issues will help achieve judicial

22  economy.'"  *Zincser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th

23  Cir. 2001) (citation omitted), *amended*, 273 F. 3d 1266 (9th Cir. 2001).

24        Here the central inquiry for purposes of the proposed Settlement is whether

25  Defendants violated the Unruh Act and the UCL with their pricing scheme.  "When

26  common questions present a significant aspect of the case and they can be resolved

27  for all members of the class in a single adjudication, there is clear justification for

28

1   handling the dispute on a representative rather than on an individual basis."

2   *Hanlon*, 150 F.3d at 1022.

3         **6.**    **Class Treatment for Settlement Purposes is Superior to**

4              **Individual Resolutions.**

5         To determine whether the superiority requirements of Rule 23(b)(3) are

6   satisfied, a court must compare a class action with alternative methods for

7   adjudicating the parties' claims.  Lack of a viable alternative to a class action

8   necessarily means that a class action satisfies the superiority requirement.  "[I]f a

9   comparable evaluation of other procedures reveals no other realistic possibilities,

10  [the] superiority portion of Rule 23(b)(3) has been satisfied."  *Culinary/Bartenders*

11  *Trust Fund*, 244 F.3d at 1163.  *See also, Valentino v. Carter-Wallace*, 97 F.3d

12  1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing

13  litigation if no realistic alternative exists").

14        Consideration of the factors listed in Rule 23(b)(3) supports the conclusion

15  that, for purposes of a settlement class, certification is appropriate.  Ordinarily,

16  these factors are (A) the interest of members of the class in individually controlling

17  the prosecution or defense of separate actions; (B) the extent and nature of any

18  litigation concerning the controversy already commenced by or against members

19  of the class; (C) the desirability or undesirability of concentrating the litigation of

20  the claims in the particular forum; and (D) the difficulties likely to be encountered

21  in the management of a class action.  Fed. R. Civ. P. 23(b)(3).

22        However, when a court reviews a class action settlement, the fourth factor

23  does not apply.  In deciding whether to certify a settlement class action, a district

24  court "need not inquire whether the case, if tried, would present intractable

25  management problems."  *Amchem Prods. Inc. v. Woodward*, 521 U.S. 591, 620

26  (1997).  "With the settlement in hand, the desirability of concentrating the litigation

27  in one forum is obvious . . . ."  *Elkins v. Equitable Life Ins. of Iowa*, No. Civ A96-

28  296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998); *see also*

1   *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule

2   23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of

3   settlement'") (citation omitted).  Here, the Rule 23(b)(3)(A), (B) and (C) factors

4   all favor class certification.

5   **C.   <u>The Proposed Method of Class Notice Is Appropriate.</u>**

6   Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the

7   court must order the "best notice practicable" under the circumstances.  Rule

8   23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."

9   *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given

10   in a manner "reasonably calculated, under all the circumstances, to apprise

11   interested parties of the pendency of the action and afford them an opportunity to

12   present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

13   306, 314 (1950).  "Adequate notice is critical to court approval of a class settlement

14   under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

15   Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a

16   reasonable manner to all class members who would be bound by the proposal."

17   Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice.  The

18   notice must concisely and clearly state in plain, easily understood language: (i) the

19   nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or

20   defenses; (iv) that a class member may enter an appearance through counsel if the

21   member so desires; (v) that the court will exclude from the class any member who

22   requests exclusion, stating when and how members may elect to be excluded; (vi)

23   the time and manner for requesting exclusion; and (vii) the binding effect of a class

24   judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

25   The Settlement Administrator shall disseminate or arrange for the

26   dissemination of Class Notice sent via email is in a form materially consistent with

27   Exhibit 2 to the Agreement.   The Class Notice here satisfies each of the

28   requirements of Rule 23(c)(2)(B) above.  Further, direct notice has been held to be

1    adequate notice to a Settlement Class.  *See Schaffer v. Litton Loan Servicing, LP*,

2    CV 05-07673 MMM JCX, 2012 WL 10274679, at *8 (C.D. Cal. Nov. 13, 2012)

3    (approving notice plan where class members were sent direct notice informing

4    them and directing them to a settlement website); *Lo v. Oxnard European Motors,*

5    *LLC*, 11CV1009 JLS MDD, 2012 WL 1932283, at *1 (S.D. Cal. May 29, 2012)

6    (final approval of class settlement using direct notice and settlement website).

7        Defendants possess email addresses for users of the Tinder app in California

8    as well as information that indicates whether subscribers to Tinder Plus or Tinder

9    Gold were at least 29 years old and paid a higher price than younger subscribers.

10   Defendants do not possess physical addresses or landline phone numbers for such

11   individuals.  The Settlement Administrator will be able to send emails directly to

12   each of the Class Members at the address that they recently used in conjunction

13   with their Tinder account.

14       Further notice will be provided through the Settlement Website, which will

15   be accessible by the time of the email Class Notice and will post, among other

16   documents, the Agreement, a copy of the Notice (Ex. 2 to the Agreement), and the

17   Preliminary Approval Order.  Thus, through email Class Notice and the Settlement

18   Website, Members will have ample notice of the Settlement and its terms, and they

19   will have 30 days from the time of Class Notice to opt out of or object to the

20   Settlement.  *Cf. Torrisi v. Tucson Electric Power Co.*, 8 F.3d 1370, 1374-75 (9th

21   Cir. 1993) (31 days is more than sufficient, as Class as a whole had notice adequate

22   to flush out whatever objections might reasonably be related to the settlement)

23   *citing Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977)

24   (approving timing of notice which was mailed 26 days before the deadline for

25   opting out of the settlement).  Further, the Settlement Website shall be maintained

26   and accessible to Settlement Class Members during this time and through the

27   conclusion of the settlement proceedings in this case.

28       This notice program was designed to meaningfully reach the largest number

1   of Settlement Class Members possible by direct notice.  In this age, email is often
2   the best way to reach people, and is certainly the most cost-effective manner of
3   direct notice in the case at bar, given Defendants' data constraints.  Such direct
4   notice is likely to be very successful in reaching the Settlement Class, and it is also
5   the best practical notice under the circumstances since only email addresses are
6   known.  By emailing the Class Notice and making the Class Notice available on
7   the Settlement Website, the notice plan satisfies the requirements of due process
8   and constitutes the best notice practicable under the circumstances.

9       The Settlement Administrator shall prepare and file a declaration prior to the
10  Final Approval Hearing certifying that the notice program has been properly
11  administered in accordance with this Agreement, this Court's Orders, and as
12  described herein.

13      **D.**   **The Court Should Provisionally Appoint the Class**
14          **Representative and Appoint Class Counsel.**

15      "[T]wo criteria for determining the adequacy of representation have been
16  recognized.  First, the named representatives must appear able to prosecute the
17  action vigorously through qualified counsel, and second, the representatives must
18  not have antagonistic or conflicting interests with the unnamed members of the
19  class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).
20  The adequacy of representation requirement is met here.  For settlement purposes,
21  Class Counsel moves for Plaintiff Lisa Kim to be preliminarily appointed as the
22  Class Representative.  Class Counsel requests that the Law Offices of Todd M.
23  Friedman and Kristensen, LLP preliminarily be appointed as Class Counsel for
24  purposes of the Settlement.  Plaintiff's counsel has extensive experience sufficient
25  to be appointed as Class Counsel.  Plaintiff Lisa Kim understands the obligations
26  of serving as a class representative, has adequately represented the interests of the
27  putative class, and has retained experienced counsel.  Plaintiff has no antagonistic
28  or conflicting interests with the Settlement Class, and all members of the

1  Settlement Class are eligible to receive the same benefits.

2          **E.**     **The Court Should Appoint Epiq as the Settlement**

3                 **Administrator.**

4       Plaintiff proposes that the Court appoint Epiq Class Action & Claims

5  Solutions, Inc. ("Epiq,") to serve as the Settlement Administrator. Epiq specializes

6  in providing administrative services in class action litigation, and has extensive

7  experience in administering consumer protection and privacy class action

8  settlements. Defendants do not oppose this request.

9          **F.**     **A Final Approval Hearing Should Be Scheduled.**

10       The last step in the settlement approval process is the formal fairness or Final

11  Approval Hearing, at which time the Court will hear all evidence and argument,

12  for and against, the proposed Settlement. Plaintiff requests that the Court grant

13  preliminary approval of the Settlement and schedule a Final Approval Hearing to

14  be held not before 70 days after the date of entry of the Preliminary Approval

15  Order, in order to allow sufficient time for developing the Settlement Website and

16  providing Class Notice via email, and to allow Class Members time submit

17  exclusion requests and objections.

18  **V.**    **CONCLUSION**

19       For all the foregoing reasons, Plaintiff respectfully requests that the Court

20  enter an order preliminarily approving the Settlement and certifying a class for

21  settlement purposes.

22     Dated:  October 4, 2021           Respectfully submitted,

23

24

25                  By:  */s/ Todd M. Friedman*

26                     Todd M. Friedman (SBN 216752)

                    Adrian R. Bacon (SBN 280332)

27                      **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

28

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business Address is 21550 Oxnard St., Suite 780, Woodland Hills, CA 91367.

On October 4, 2021, I served the following document(s) described as: **MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**, on all interested parties in this action by placing:

[X]   a true copy
[  ]   the original thereof enclosed in sealed envelope(s) addressed as follows:

Alexandra Hill
ahill@manatt.com
Donald R. Brown
dbrown@manatt.com
Robert H. Platt
rplatt@manatt.com
Manatt Phelps and Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614

[X]   **BY CM/ECF:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the Court's CM/ECF system and the transmission was reported as complete, without error.

[X]   STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 4, 2021, at Woodland Hills, California.

By:   /s/ Todd M. Friedman

Todd M. Friedman