1  Todd M. Friedman (SBN 216752)
   Adrian R. Bacon (SBN 280332)
2  **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
3  21031 Ventura Blvd, #340
   Woodland Hills, CA 91364
4  Telephone: (877) 619-8966
5  Facsimile: (866) 633-0028
   tfriedman@toddflaw.com
6  abacon@toddflaw.com

7  *Attorneys for Plaintiff and all others similarly situated*
8  John P. Kristensen (SBN 224132)
9  **CARPENTER & ZUCKERMAN**
10 8827 W. Olympic Blvd.
   Beverly Hills, CA 90211
11 Telephone:  310-507-7924
   Fax:  310-507-7906
12 kristensen@cz.law

13
14 *Attorneys for Plaintiff and all others similarly situated*
15
                **THE UNITED STATES DISTRICT COURT**
16   **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

17 LISA KIM, individually on behalf of      ) Case No.: 2-18-cv-03093-JFW-AS
   herself and all others similarly          )
18 situated,                                  )
                                              ) **PLAINTIFF LISA KIM'S**
19                                            ) **AMENDED NOTICE OF**
              Plaintiff,                      ) **MOTION & MOTION FOR**
20                                            ) **FINAL APPROVAL OF CLASS**
                                              ) **SETTLEMENT**
21           vs.                              )
                                              )
22 TINDER, INC., a Delaware                   )
   corporation; MATCH GROUP, LLC,             ) Date:        January  10, 2022
23 a Delaware limited liability company;      ) Time:        1:30 p.m.
24 MATCH GROUP, INC., a Delaware              ) Courtroom:   7A
   corporation; and DOES 1 through 10,        ) Hon. John F. Walter
25 inclusive, and each of them,               )
                                              )
26                                            )
                                              )
27           Defendants.                      )

28

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 10, 2022, at 1:30 p.m., in Department 7A of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, plaintiff Lisa Kim ("Plaintiff"), for herself and others similarly situated, will move this Court for an order granting final approval of the class action settlement as detailed in Plaintiff's memorandum of points and authorities.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declaration and exhibits thereto, the Complaint, all other pleadings and papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated:  December 13, 2021

Respectfully submitted,

By:
*/s/ Todd M. Friedman*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

John P. Kristensen (SBN 224132))
**CARPENTER & ZUCKERMAN**

***Attorneys for Plaintiff and all other similarly situated.*LLP**

1

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3**

2      Plaintiff's counsel certifies that prior to filing the instant motion, the parties,

3  through counsel, met and conferred pertaining to the subject matter of the instant

4  motion.    Specifically, Plaintiff's counsel Todd M. Friedman and Defendant's

5  counsel Donald Brown met and conferred telephonically regarding the subject and

6  content of the Motion on December 3, 2021, in fulfillment of Local Rule 7-3.

7  Defendants do not oppose this motion.

8

9      Dated:  December 13, 2021          Respectfully submitted,

10

11                                   By:  */s/ Todd M. Friedman*

12                                        Todd M. Friedman (SBN 216752)
13                                        Adrian R. Bacon (SBN 280332)
                                          **LAW OFFICES OF TODD M. FRIEDMAN,**
14                                        **P.C**.
15
                                          John P. Kristensen (SBN 224132))
16                                        **CARPENTER & ZUCKERMAN**

17
                                          ***Attorneys for Plaintiff and all others***
18                                        ***similarly situated.***

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

I.      INTRODUCTION ................................................................................ 4

II.     STATEMENT OF FACTS .................................................................. 6

    A.      Factual Background ................................................................ 6

    B.      Proceedings to Date ............................................................... 7

    C.      Delivery of Class Notice ...................................................... 10

    D.      Reaction of Class Members to the Settlement ..................... 11

    E.      The Settlement Class ............................................................ 12

    F.      Settlement Benefits. ............................................................. 12

III. ARGUMENT ...................................................................................... 14

    A.      Final Approval of the Proposed Settlement is Warranted .............. 14

        1.      The Class Representative and Class Counsel Have Adequately Represented the Class ......................................... 16

        2.      The Proposal Was Negotiated at Arm's Length ................... 17

        3.      The Relief Provided for the Class is Adequate Considering  the Strength of the Lawsuit, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ............................................................................... 18

        4.      The Attorneys' Fees Sought Are Reasonable ...................... 20

III.    CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Cullinane v. Uber Technology, Inc.*
    893 F.3d 53 (1st Cir. 2018) ...................................................................8

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ....................................................16, 17

*Fischel v. Equit. Life Assurance Soc'y*,
    307 F.3d 997 (9th Cir. 2002) .............................................................21

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ..............................................................15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................14

*In re Beverly Hills Fire Litigation*,
    639 F. Supp. 915 (E.D. Ky. 1986) .....................................................20

*In re Warner Communications   Sec. Litig.*,
    618 F. Supp. 735 (S.D. N.Y. 1985) ...................................................15

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*),
    654 F.3d 935 (9th Cir. 2011) .............................................................16

*McGill v. Citibank, N.A*,
    2 Cal.5th 945 (2017) ............................................................................8

*O'Connor v. Uber Technologies, Inc.*,
    904 F.3d 1087 (9th Cir. 2018) ...........................................................18

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ......................................................14, 15

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .............................................................14

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370, 1375 (9th Cir. 1993) .....................................................15

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ....................................................20

**Statutes**

*Cal. Bus. & Prof. Code* §§ 17200, et seq. ...............................................7, 8

*Cal. Civ. Code* §§ 51, et seq. .................................................................7, 8

**Other Authorities**

2 Newberg on Class Actions (4th Ed. & Supp. 2002)..........................................19

Manual for Complex Lit., Fourth ..........................................................19

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff, Lisa Kim (hereinafter referred to as "Plaintiff" or "Class Representative"), individually and on behalf of the "Settlement Class" (as defined below), hereby submits her Motion for Final Approval of the proposed settlement (the "Settlement") of this action (the "Litigation").  Defendants Tinder, Inc., Match Group, LLC, and Match Group, Inc. ("Defendants") do not oppose Plaintiff's motion.  (Plaintiff and Defendants shall collectively be referred to as the "Parties.") The terms of the Settlement are set forth in the Amended Class Action Settlement Agreement (hereinafter the "Agreement").   (Dkt. No. 153-1, Ex A.)     The Settlement merits final approval by the Court.

The Settlement resulted from the Parties' participation in a second all-day mediation session before the Honorable Louis M. Meisinger (Ret.) of Signature Resolution and subsequent settlement discussions, after the Ninth Circuit rejected the parties' previous class action settlement approved by this Court. (*See* Dkt. No. 109.)  The Settlement provides for a substantial financial benefit to each Settlement Class Member.  The Settlement Class consists of:

> *Every person in California who subscribed to Tinder Plus or Tinder Gold during the Class Period and at the time of the subscription was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class.*[1] (Agreement § 2.21.)

The compromise Settlement reached with the guidance of Judge Meisinger will create a Settlement Fund to be established by Defendants in the amount of $5,200,000. (Agreement § 3.3.)  In addition to the common fund monetary relief,

---

[1]   The Class Period is from March 2, 2015 through March 1, 2019. (Agreement § 2.6.)

Tinder will deposit (i) 70 free Super Likes, and (ii) one Boost (together valued at $118.30 per Class Member) into the Tinder account of every Settlement Class Member who at that time has a Tinder account, so long as the email address associated with the account is the same as when the Member purchased Tinder Plus or Tinder Gold during the Class Period.[2]  Defendants have advised Settlement Class Members via the Class Notice that they must have an account in place in order to receive the deposit of Super Likes and Boost.  (Agreement § 3.2.)  This robust Settlement on behalf of hundreds of thousands of consumers was achieved after hard-fought litigation, arm's length negotiations, and the careful and skilled efforts of Class Counsel.

The Settlement also incorporates important changes in practice by Tinder in 2019, as part of the injunctive relief previously agreed to by the Parties and approved by this Court.  (*See* Dkt. No. 90; Agreement § 3.4.) As in the former agreement—which Tinder continued to honor even after the previous settlement was reversed—Tinder has agreed not to offer a discounted price to users under the age of 29 who purchase a new subscription to Tinder Plus or Tinder Gold in California (while reserving the right to offer a youth discount to subscribers age 21 or younger, or to offer other discounts depending on developments in applicable law).  (*Id* at § 3.4.)

While Plaintiff is confident of a favorable determination on the merits, she has determined that the Settlement provides significant benefits to the Class and is in the best interests of the Class.  Plaintiff also believes that the Settlement is appropriate because Plaintiff recognizes the expense and amount of time required to continue to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting such claims.  Similarly, as evidenced by the Agreement, Defendants believe that they have substantial and meritorious defenses

---

[2] Settlement Class members who no longer have active accounts will be able to activate their accounts and these benefits will be made available to them as well.

to Plaintiff's claims, but have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Plaintiff believes that the Settlement satisfies all of the criteria for Final Approval, as it provides for a considerable financial benefit to Class Members, valued up to $5.2 million in monetary relief, plus non-monetary relief with a collective value of $7.1 million for the 25% of Class Members who currently have a Tinder account (i.e., without factoring in the value to other Class Members who reactivate their accounts in order to receive the non-monetary benefits). Approximately 220,000 Class Members have received the Class Notice and will benefit either directly, indirectly, or both, as a direct result of this Settlement, not to mention the benefit to others in the general public in California achieved as a result of this robust Agreement.  The strength of this settlement is further evidenced by the fact that to date, zero objections have been made to the settlement. Moreover, there is only one independent optout to the settlement—the others have been submitted by attorneys representing Class Members who have filed their own claims against Defendants.  This is an outstanding settlement that should be given final approval.  There is no reason for any other result to be reached.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Tinder is a smartphone-based dating application that is used by consumers throughout the world, including California.  The core functionality of the app enables users to view profiles of other users in the same geographic locale and to either indicate an interest in (i.e., to "like") another user or, alternatively, indicate a lack of interest.  If two users indicate an interest in each other's profile, they can then communicate with each other through the app.  The app also allows a user to indicate a heightened degree of interest in another user through a feature known as a "Super Like."  The app offers another premium feature called "Boost," which allows a user to be one of the top profiles in their area for 30 minutes, increasing their chances for a match.

The app may be downloaded and used for free, but certain additional or premium features can only be accessed by purchasing a subscription to Tinder Plus or Tinder Gold.  Such features include, among other things, unlimited likes (whereas the free version has a daily limit), no paid advertisements, the ability to undo dislikes, the ability to view profiles in other locales, and the ability to exert more control over other variables involved in using the app.  Users of the app may purchase Super Likes for a typical price of $1.59 each, and may purchase a Boost for $7 each.

Plaintiff, a female user over the age of 29, alleges that when she and Class Members purchased Tinder premium services (Plus or Gold), Defendants discriminated against such consumers based on age, by charging more money for the same service for consumers age 29 and older.  Plaintiff claims that Defendants' widespread and uniform conduct is in direct violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.* ("Unruh Act"), which generally outlaws age discrimination by businesses operating in California.  In addition, Plaintiff alleges that Defendants' pricing scheme violates the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").  Plaintiff sought three categories of relief: 1) monetary relief under the Unruh Act in the form of statutory penalties; 2) restitution, i.e. a refund of the premiums charged to users age 29 or older; and 3) public injunctive relief putting a halt to Defendants' unlawful age-based price discrimination.  Defendants vigorously dispute Plaintiff's claims, dispute that Plaintiff will prevail on her current appeal of the Court's Order granting Defendants' motion to compel arbitration, and deny all charges of wrongdoing or liability asserted against them in the Litigation.

**B.   Proceedings to Date**

On April 12, 2018, Plaintiff filed her class action lawsuit against Defendants, alleging that Defendants violated the Unruh Act.  Defendants responded on June 11, 2018 by filing filed a Motion to Compel Arbitration or Stay Under the *Colorado River* Abstention Doctrine.  On June 22, 2018, Plaintiff filed her First

Amended Complaint, adding the UCL cause of action for public injunctive relief. In their Motion, Defendants claimed that Plaintiff had entered into an arbitration agreement based on her alleged assent to the arbitration provision in Tinder app's Term of Use through the use of "sign-up wrap" consent in order to access the app. Defendants' Motion to Compel Arbitration was granted on July 5, 2018, and the Court compelled Plaintiff's claims to arbitration.

On July 16, 2018, Plaintiff filed her appeal of the Court's decision on the motion to compel arbitration, based on her position that the Court did not appropriately consider California Supreme Court precedent interpreting substantive California law in *McGill v. Citibank, N.A,* 2 Cal.5th 945 (2017), which states that claims for public injunctive relief, such as the one brought in Plaintiff's case under the UCL, cannot be compelled to arbitration. In addition, Plaintiff would argue that the Court disregarded recent relevant appellate case law, *Cullinane v. Uber Technology, Inc.* 893 F.3d 53 (1st Cir. 2018), which bore directly on whether there was appropriate assent by Plaintiff and the Class Members to the Tinder app's Term of Use.

A mediation was scheduled for November 29, 2018, and the Parties stipulated to continue the initial briefing deadlines in the appeal. The Parties attended a mediation with Judge Meisinger on November 29, 2018. The Parties did not resolve the case at the mediation, but engaged in subsequent discussions with Judge Meisinger. With his guidance, this Settlement was reached on December 1, 2018. On March 1, 2019, the Court granted Plaintiff's Motion for Preliminary Approval, finding that the requirements of Rule 23(e) were preliminarily satisfied, and requesting that counsel file a revised proposed notice, and lodge a revised proposed order granting preliminary approval. (Dkt. No. 60 p. 13.) Counsel did so (Dkt. No. 61), and on March 12, 2019, the Court issued the preliminary approval order (Dkt. No. 62). Then, on June 19, 2019, the Court granted final approval of the settlement, over objections made by Rich Allison and

1    Steve Frye (*see* Dkt. No. 90), who subsequently appealed the decision.

2         On August 17, 2021, in a divided opinion with a strong and lengthy dissent,

3    the Ninth Circuit Court of Appeals reversed the order granting Final Approval and

4    For Attorneys' Fees, primarily taking issue with the clear sailing provision on the

5    latter. (*See* Dkt. No. 109.)  Following remand to this Court, the Parties attended

6    another all-day mediation with Judge Meisinger on September 3, 2021, in order to

7    improve upon the settlement, based on the concerns outlined by the Ninth Circuit.

8    Although the case did not settle on that day, after subsequent discussions, with the

9    guidance of the mediator, the Parties agreed to resolve this matter further and

10   entered into a second settlement agreement. (Friedman Decl., Ex A.)

11        Upon learning that the Kim case had again settled, but before knowing any

12   of the proposed settlement terms, Counsel for Frye, Allison and Allen Candelore

13   ("Candelore Objectors") indicated their intention to, yet again, intervene in this

14   matter.  Specifically, the sole purpose of Candelore Objectors' proposed

15   intervention was "protecting those of **his** interests that may be impaired or impeded

16   by disposition of the *Kim* action through any proposed class action settlement."

17   Friedman Decl., ¶ 18.

18        On October 4, 2021, Plaintiff filed her Amended Motion for Preliminary

19   Approval.  (*See* Dkt. No. 118.) Thereafter, Candelore Objectors filed three briefs

20   in another attempt to interfere with the settlement process: (1) an Ex Parte

21   Application to Continue Hearing on Motion for Preliminary Approval, to allow

22   time to file a motion to intervene (*see* Dkt. No. 119); (2) a Motion to Intervene, for

23   purposes of objecting to the Settlement (*see* Dkt. No. 128); and (3) an Opposition

24   to Motion for Preliminary Approval (*see* Dkt. No. 129).  Plaintiff's Counsel was

25   forced to spend substantial time responding to these attempts to interfere in the

26   Settlement, all of which the Court denied. (*See* Dkt. Nos. 127, 140, 143.)  On

27   November 3, 2021, the Court granted preliminary approval of the Settlement and

28   its terms enumerated above, observing that the Settlement appeared reasonable and

1   disclosed no grounds to doubt its fairness. (Dkt. No. 140.)  As provided in the
2   Court's Preliminary Approval Order, the Parties have executed an Addendum to
3   the Agreement confirming that Defendants will provide 70, rather than 50, Super
4   Likes (and one Boost) to each Class Member with an active Tinder account. (*See*
5   Friedman Decl., Ex B.) As set forth below, Plaintiff respectfully requests that the
6   Court finally approve the Settlement.

7              **C.    Delivery of Class Notice**

8        On November 15, 2021, the Settlement administrator, Epiq Class Action &
9   Claims Solutions, Inc. ("Epiq"), disseminated the Class Notice to Class Members
10  via email, which this Court had approved as the best and most practicable notice
11  method. (*See* Declaration of Brian Pinkerton ("Pinkerton Decl.") ¶ 9.) The email
12  campaign was highly successful at delivering targeted notice directly to the Class
13  Members, who almost certainly all used smartphone devices hooked to these same
14  email accounts as part of their everyday life.  (Friedman Decl. ¶¶ 30-32.)  The
15  emails were successfully delivered to approximately 90% of the Class Members for
16  whom Defendants had email addresses (220,332 out of 240,390), and notice
17  reached approximately 84% of the Class overall, factoring in Class Members for
18  whom Defendants lacked an email address. (Pinkerton Decl ¶¶ 9-10.)  These figures
19  far exceed the 70% threshold that the Rule 23 guidelines specify for due process
20  purposes.  Notice was also posted on the Settlement Website maintained by Epiq.
21  (Pinkerton Decl. ¶13.)[3]

22       Pursuant to the Settlement Agreement, and as specified in the Class Notice,
23  Class Members will be permitted to submit claims until 30 days after Final
24  Approval.  (Pinkerton Decl. ¶20.) The Parties have agreed that Class Members will
25  receive, in addition to the Notice already sent, Epiq will send two additional
26  reminder Notices, one to be sent this week (and, thus, a month after the initial
27
28  [3] Defendants sent CAFA Notice (28 U.S.C. § 1715) to the applicable authorities
    on October 13, 2021.

Notice), and another to be sent in mid-January (following the Final Approval ruling), reminding Class Members of the Settlement's benefits and of the deadline to submit Claim Forms for monetary benefits.  This additional Notice reminder protocol is being put in place to ensure the highest feasible participation rate.

### D.  Reaction of Class Members to the Settlement

The reaction of Class Members has been generally positive.  Because Class Members still have more than two months to submit Claim Forms, current claims data is provisional.  As of December 8, 2021, Epiq had received 3,227 Claim Forms. (Pinkerton Decl. ¶21.)   In addition, the Agreement states that Claim Forms submitted in relation to the previous settlement will be honored.  (Agreement § 5.2.) With 2,730 valid Claim Forms having been submitted for the previous settlement, the total number of Claim Forms as of December 8 was 5,957.  (Pinkerton Decl. ¶¶21-22.)

As to objections, the deadline for objecting expires two days after the filing of this motion, and so far no objections have been filed. (Pinkerton Decl. ¶19.) Similarly, the deadline for submitting optouts expires three days after the filing of this motion, and to date there has only been two independent optouts—other optouts are entirely attorney-driven.  Allen Candelore, who objected to the prior settlement in this matter, submitted an optout through his counsel on December 6, 2021. It is worth nothing that while Mr. Candelore is opting out of this settlement, his attorneys have filed a Motion for Attorneys' Fees and Costs, seeking 1/3 of this settlement's $5.2 million common fund (Dkt. No. 152). Plaintiff will file a response to that motion on or before December 20, 2021. (Friedman Decl. ¶34.)

Additionally, the  Swigart Law Group to date has submitted 391 optouts on behalf of Class Members who, represented by Swigart, have filed arbitration claims against Defendants. Combined with another mass optout batch submitted by Davis and Norris (same purpose), the total number of opt outs received today stand at approximately 896  (Friedman Decl. ¶35.)  Swigart and the Norris firm have been running  ad  campaigns  specifically  targeting  Class  Members  since  Preliminary

approval was granted, as a business strategy. (Friedman Decl. ¶35 and Ex. C Swigart and Norris  Ad Campaign).

Aside from the aforementioned optouts, there is virtually no resistance to or criticism of the Settlement from the Class, lending further credence to Plaintiff's argument that the settlement is fair and reasonable.

### E.    The Settlement Class.

The "Settlement Class" consists of "*[e]very person in California who subscribed to Tinder Plus or Tinder Gold during the Class Period and at the time of the subscription was at least 29 years old and was charged a higher rate than younger subscribers, except those who choose to opt out of the Settlement Class.* (Agreement § 2.21.)

The Class Period is from March 2, 2015 through March 1, 2019.  (*Id.* § 2.6.) Defendants maintain email addresses for the vast majority of users of the app. Based on data provided by Defendants and their counsel, Defendants had email address for approximately 220,000 Class Members.  (*See Friedman Decl.*, ¶¶ 22-23.)

### F.    Settlement Benefits.

Under the Settlement, Defendants agree to create a Settlement Fund in the amount of $5,200,000. (Agreement § 3.3.)   In addition to the common fund monetary relief, Defendant will deposit (i) 70 free Super Likes, and (ii) one Boost into the Tinder account of every Settlement Class Member who at that time has a Tinder account, so long as the email address associated with the account is the same as when the Member purchased Tinder Plus or Tinder Gold during the Class Period.[4]   Defendants have represented that 25% of Class Members still have a

---

[4] The value of these automatic benefits surpasses that of the previous settlement in 2019, not only because Class Members will receive more Super Likes along with a Boost, but because Tinder users receive fewer Super Likes in the normal course than they did in 2019.  Tinder users no longer receive one free Super Like per day, and subscribers to Tinder Plus and Tinder Gold no longer receive five free

Tinder account, and Class Counsel intends to serve an interrogatory on Defendants to confirm. The value of these automatic, non-monetary benefits is $118.30, and the collective value for the 25% of the Class who currently have a Tinder account is $7.1 Million. Class Members without active accounts will still be eligible for the automatic benefits, upon reactivation of their account. The Class Notice advises Class Members that they must have an account in place in order to receive the deposit of Super Likes and Boost. (Agreement § 3.2.)

Furthermore, Defendants have agreed to pay the costs of Notice and Settlement administration out of the Settlement Fund. (Agreement § 5.5.) Subject to Court approval, Defendants have also agreed to pay any award of attorneys' fees and costs, and any incentive award, out of the Settlement Fund. (Agreement §§ 7.1-7.4.) In that regard, Class Counsel intends to request an award of $1,200,000 in fees plus a reasonable cost reimbursement, and an Incentive Payment to the Plaintiff in the amount of $5,000. The Agreement contains no clear sailing provision, hence any such awards are subject to Court approval. Plaintiff's counsel will NOT be asking for any additional fees beyond those which were requested under the prior Settlement, despite additional benefits having been negotiated and substantial additional work having been performed. (Agreement §7.1.)

Finally, the Settlement reaffirms Tinder's previous agreement in 2019 (which Tinder continued to honor even after the previous settlement was vacated) to halt age-based pricing in California by no longer offering a discounted price to users under the age of 29 who purchase a new subscription to Tinder Plus or Tinder Gold in California. (*See* Agreement § 3.4.)

///

---

Super Likes per day. Rather, Gold subscribers receive only five Super Likes per week, which expire if not used during the week, and Plus subscribers receive none at all. *See* https://www.help.tinder.com/hc/en-us/articles/115004487406-Tinder-Subscriptions for current Tinder Plus and Tinder Gold features.

///

## III. ARGUMENT

### A.  <u>Final Approval of the Proposed Settlement is Warranted</u>

The Court has already preliminarily found the requirements of Fed. R. Civ. P. 23 are satisfied.  (*See generally* Preliminary Approval Order, Dkt. No. 140.)  The relevant factors demonstrate that the proposed Settlement should be finally approved as fair, reasonable and adequate.  Since preliminary approval, Plaintiff has continued to serve as an adequate Class Representative by reviewing documents and submitting declarations in support of motions, and Plaintiff supports final approval of the proposed settlement.  Moreover, Class Counsel have continued to adequately represent the interests of the Class Members and the named Plaintiff, including by, among other things, working with Epiq, the Settlement administrator, to ensure timely dissemination of Class Notice, communicating promptly with Class Members who contacted Class Counsel with questions, and assisting with settlement administration.

"Unlike the settlement of most private civil actions, class actions may be settled only with the approval of the district court."  *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982).  "The court may approve a settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: 'the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.'" *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The Court must balance against the continuing risks of litigation and the immediacy and certainty of a substantial recovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985). The recently amended F.R.C.P. 23 requires a straightforward four-factor analysis in determining whether a Court should grant approval of a class action settlement "only on finding that it is fair, reasonable, and adequate after considering whether . . . "

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[5] and
> (D) the proposal treats class members equitably relative to each other.

See F.R.C.P. 23(e)(2)(A)-(D). The Ninth Circuit has long supported settlements reached by capable opponents in arms' length negotiations. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressed the opinion that courts should defer to the "private consensual decision of the [settling]

---

[5] In this case, there are no such agreements except the class settlement agreement.

parties." *Id*. at 965 (citing *Hanlon*, 150 F.3d at 1027 (9th Cir. 1998)).  The district court must exercise "sound discretion" in approving a settlement.  *See Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1375 (9th Cir. 1993); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

Application of the relevant factors here confirms that the proposed settlement should be finally approved.  Notably, this Settlement was reached with the assistance of experienced mediator Hon. Louis M. Meisinger (Ret.), which shows a lack of collusion between the Parties.  *See Jones v. GN Netcom, Inc*. (*In re Bluetooth Headset Prods. Liab. Litig*.), 654 F.3d 935, 948 (9th Cir. 2011).  The result is just as fair to the Class Members now as it was when the Court granted Preliminary Approval, and equally as important, it is a result that puts Class Members on equal footing with one another, as required under Rule 23(e)(2)(D). Based on the facts of this case, Class Counsel and Plaintiff agree that this settlement is fair and reasonable; among other things, the settlement will avoid costly and time-consuming additional litigation and the need for trial.  (Friedman Decl., ¶¶38-42.)

### 1.    The Class Representative and Class Counsel Have Adequately Represented the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Plaintiff and Class Counsel have no conflicts of interest with other Class Members, and their interests are aligned.  Plaintiff has brought the same claims as the rest of the Class Members, is seeking the same remedy, and there is no evidence

of a conflict of interest.  As the Court found at preliminary approval, "Plaintiff and other Class Members share the common goal of protecting and improving consumer and privacy rights throughout California, and there is no conflict among them." (Dkt. No. 140.)  That has not changed since the preliminary approval phase.  Since that time, Plaintiff and her counsel have diligently continued to oversee administration of the settlement.  (Friedman Decl. at ¶ 52.)  Class Counsel have extensive experience in consumer protection and privacy class action litigation. (Friedman Decl. ¶¶ 43-51.)  Therefore, Rule 23(a)(4) is satisfied.

## 2.  The Proposal Was Negotiated at Arm's Length

The Settlement is the result of intensive arms'-length negotiation, including a second all-day mediation session before the Hon. Louis Meisinger.  The Parties also engaged in subsequent negotiations through Judge Meisinger.  With the guidance of Judge Meisinger, and working independently of the Court, the Parties were able to reach a proposed resolution of this case.  Class Counsel are satisfied that the information provided about the number of Class Members is accurate, as it was confirmed with additional confirmatory discovery during the Notice process. The time and effort spent examining and investigating the claims militate in favor of approval of the proposed Settlement, as the process strongly indicates that there was no collusion.  Plaintiff strongly believes in the fairness of this settlement because is the product of arm's-length negotiations conducted by capable, experienced counsel.  *See M. Berenson Co.*, 671 F. Supp. at 822; *Ellis*, 87 F.R.D. at 18 ("that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); 2 Newberg on Class Actions § 11.24 (4th Ed. & Supp. 2002); Manual for Complex Lit., Fourth § 30.42. Given their experience and expertise, Class Counsel are well-qualified to not only assess the prospects of a case, but also to negotiate a favorable resolution for the class.  (Friedman Decl., ¶¶ 43-51.)  Class Counsel have achieved such a result here in this class action, and unequivocally assert that the proposed Settlement should receive final approval.  (Friedman Decl., ¶¶ 41-42.)

### 3. The Relief Provided for the Class is Adequate Considering the Strength of the Lawsuit, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Defendants have vigorously contested the claims asserted by Plaintiff in this Litigation.  While both sides strongly believe in the merits of their respective cases, there are risks to both sides in continuing the Litigation.  *See Friedman Decl*, ¶¶ 38-41.  Defendants represented that over 95% of the Class Members entered into arbitration agreements such as the one entered into by Plaintiff.  *Id*.  The Ninth Circuit has recently held that such agreements can be a bar to class certification under the right circumstances.  *See O'Connor v. Uber Technologies, Inc.*, 904 F.3d 1087 (9th Cir. 2018).  If Plaintiff were to prevail on her appeal of the order compelling arbitration, Defendants would oppose any class certification motion made by Plaintiff, thereby placing in doubt whether certification of a class could be obtained and/or maintained in the Litigation.  Also, additional substantive challenges to the claims would be raised, including a challenge on summary judgment.  In considering the Settlement, Plaintiff and Class Counsel carefully balanced the risks of continuing to engage in protracted and contentious litigation, against the benefits to the Class.  As a result, Class Counsel supports the Settlement and seek its Preliminary Approval.  *Id*.

Similarly, Defendants believe that they have strong and meritorious defenses not only in the Litigation and pending appeal, but also as to class certification and the amount of damages sought.  However, Defendants recognize that if a class were certified, there is some risk of a damages award substantially higher than the value of the Settlement.  The negotiated Settlement reflects a compromise between avoiding that risk and the risk that the Class might not recover.  Because of the costs, risks to both sides, and delays of continued litigation, the Settlement presents a fair and reasonable alternative to continuing to pursue the Litigation.  As a result, Class Counsel supports the Settlement and seeks its Final Approval.  *Id*.  The negotiated Settlement is a compromise avoiding the risk that the Class might not recover and presents a fair and reasonable alternative to continuing to pursue the

1   Litigation as a class action.

2         The benefits to the Class are meaningful, robust, wide in scope, and
3   multifaceted.  The settlement secured by Plaintiff and Class Counsel provides an
4   excellent recovery for Class Members as compared to similar Unruh Act cases,
5   despite the uncertainty of recovery in class actions.  The Settlement Agreement
6   provides for $5,200,000 in Cash recovery for the Class, in addition to $7,100,000
7   in non-cash components (a figure that could increase depending on the number of
8   Class Members who reactivate their Tinder accounts insofar as they are not
9   currently active).  Every Class Member who submits a Valid Claim Form will be
10  entitled to a pro rata distribution of the Settlement Fund—there is no reversion to
11  Defendants of any funds.

12        Processing claims is straightforward and will continue until 30 days after the
13  Judgment confirming the Settlement becomes final.  Moreover, email notice is
14  certainly the best notice practicable under the circumstances.   The recent
15  amendments to Rule 23, specifically with respect to subdivision (c)(2), recognized
16  the importance of using "contemporary methods" of giving notice to class
17  members.  *See* Rule 23 advisory notes.

18        "[T]echnological change since 1974 has introduced other means of
19        communication that may sometimes provide a reliable additional or
            alternative method for giving notice. Although first class mail may
20        often be the preferred primary method of giving notice, courts and
            counsel have begun to employ new technology to make notice more
21        effective.  Because there is no reason to expect that technological
22        change will cease, when selecting a method or methods of giving notice
            courts should consider the capacity and limits of current technology,
23        including class members' likely access to such technology."

24  *Id*.  In this case, for much of the Class Period, Class Members were required to
25  have a Facebook account in order to sign up for Tinder services, which itself
26  requires an email address.  Most if not all Class Members own smartphones, since
27  that is how people generally use the Tinder App.  Such devices will largely be
28  connected to those same email addresses.  Email notice was the best notice

practicable, because it was directed instantly to the hands, pockets or bedside tables of Class Members.  Claims are easy to process, because they can be made through a website accessible from the same smartphone device.  For the foregoing reasons, among others, the terms of the Settlement are fair to the Class Members, who were adequately notified of their rights to participate or opt out, if they so choose.

### 4.   The Attorneys' Fees Sought Are Reasonable

The reasonableness of the requested fees is also supported by the "percentage of-the-fund" and "lodestar" approach.  The $1,200,000 in attorneys' fees sought equates to approximately 23% of the estimated $5,200,000 in the **cash** settlement benefit provided to the Class, alone.  Additionally, Defendants have agreed to provide a total of 70 Super likes and one Boost to each Member of the Settlement Class who meets the criteria for receiving automatic benefits.  The value of those benefits for each Member who qualifies is $118.30.  For the portion of the Settlement Class who already have an active Tinder account (25%), the collective value of those benefits would be $7.1M.  Accordingly, adding both the cash and non-monetary components together, the $1,200,000 in attorneys' fees sought would equate to **less than 10% of the total value of the settlement**.  Regardless, both are less than the Ninth Circuit's benchmark percentage of 25% for attorneys' fee awards.

The fee amount itself is well within the range of reasonableness, as set forth in detail in the Motion for Attorneys' Fees and Costs.  (Dkt. No. 153.)  Indeed, counsel have provided detailed time records of the time spent working on this matter, and the resulting lodestar multiplier which would well end up in the negative, which is well within the range of reasonableness,[6] especially considering

---

[6] "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *In re Beverly Hills Fire Litigation*, 639 F. Supp. 915 (E.D. Ky. 1986) (awarding multiplier of 5 for lead counsel); *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532 (S.D. Tex. Dec. 18, 2001) (approving 5.3 multiplier).

the risk of litigation.[7]

## III.   <u>CONCLUSION</u>

The Parties have reached this Settlement following a second round of extensive arms' length negotiations with the assistance of Judge Meisinger.  The Settlement is fair and reasonable to the Class Members who were afforded notice that complies with due process.  For the foregoing reasons, Plaintiff respectfully requests the Court:

- Grant final approval of the proposed settlement;
- Order payment from the settlement proceeds in compliance with the Court's Preliminary Approval Order and the Agreement;
- Grant the Motion for Attorney's Fees, Costs, and Incentive Payment;
- Enter the proposed Final Judgment and Order of Dismissal With Prejudice submitted herewith; and,
- Retain continuing jurisdiction over the implementation, interpretation administration and consummation of the Settlement.

Dated:  December 13, 2021              Respectfully submitted,


                                   By:  */s/ Todd M. Friedman*

                                        Todd M. Friedman (SBN 216752)
                                        Adrian R. Bacon (SBN 280332)
                                        **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

                                        John P. Kristensen (SBN 224132)
                                        **CARPENTER & ZUCKERMAN**

                                        ***Attorneys for Plaintiff and all others similarly situated.***

---

[7] The Ninth Circuit has held it would be improper to ignore litigation risk when considering whether and to what extent to grant a lodestar multiplier.  *Fischel v. Equit. Life Assurance Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business Address is 21031 Ventura Blvd., Suite 340, Woodland Hills, CA 91364.

On December 13, 2021, I served the following document(s) described as: **PLAINTIFF LISA KIM'S AMENDED NOTICE OF MOTION & MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; DECLARATION OF TODD M. FRIEDMAN IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; DECLARATION OF BRIAN PINKERTON RE NOTICE AND SETTLEMENT ADMINISTRATION; [PROPOSED] JUDGMENT** on all interested parties in this action by placing:

[X]     a true copy
[ ]     the original thereof enclosed in sealed envelope(s) addressed as follows:

Alexandra Hill
ahill@manatt.com
Donald R. Brown
dbrown@manatt.com
Robert H. Platt
rplatt@manatt.com
Manatt Phelps and Phillips LLP

[X]     **BY CM/ECF:** I transmitted the document(s) listed above electronically to the e-mail addresses listed above.  I am readily familiar with the Court's CM/ECF system and the transmission was reported as complete, without error.

[X]     STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 13, 2021, at Woodland Hills, California.

By:   /s/ Todd M. Friedman
         Todd M. Friedman